## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF VERMONT

JESSICA GINGRAS, *et. al*

                Plaintiffs,

                v.

JOEL ROSETTE, TED WHITFORD, and TIM
McINERNEY,

                Defendants.

Civil Action No.:  15-101

---

## DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS WITHOUT LEAVE TO AMEND, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION

Dated: July 14, 2015

*/s/ Andre D. Bouffard*
Andre D. Bouffard, Esq.
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
802.863.2375
*and*
Jay A. Dubow (PA No. 41741) (*pro hac vice* pending*)*
Richard J. Zack (PA No. 77142) (*pro hac vice* pending*)*
Matthew B. Homberger (PA No. 317064) (*pro hac vice* pending)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
215.981.4000
*Attorneys for Defendants.*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF VERMONT

| | |
|---|---|
| JESSICA GINGRAS, *et. al*<br><br>            Plaintiffs,<br><br>                  v.<br><br>JOEL ROSETTE, TED WHITFORD, and TIM McINERNEY,<br><br>            Defendants. | Civil Action No.:  15-101<br><br>**DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND, or, in the alternative, TO COMPEL ARBITRATION** |

Upon the accompanying Memorandum of Law, supporting documentation, and all pleadings herein, Defendants Joel Rosette, Ted Whitford, and Tim McInerney, through the undersigned counsel, hereby move this Court for an order, pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), 12(b)(7), and 8 of the Federal Rules of Civil Procedure, dismissing the Complaint in the above-referenced action in its entirety and with prejudice, or, in the alternative, compelling arbitration, and for other and further relief as this Court may deem just and proper.

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott v. Keen, Inc.*, Case No. 5:13-cv-267, 2014 U.S. Dist. LEXIS 166877, at *23 (D. Vt. May 7, 2014) ........................................................................................................21

*Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) ............................................7

*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013)........................................19

*Apostolidis v. JP Morgan Chase & Co.*, No 11-CV-5664 (JFB) (WDW), 2012 U.S. Dist. LEXIS 157733, at *15 (E.D.N.Y. Nov. 2, 2012) ....................................................................23

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)........................................................22, 23, 24, 29

*In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008), *aff'd sub nom*, *State Univs. Ret. Sys. v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009) .................14, 15

*Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994)....................................................................................23, 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)................................................................22

*Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*, 13 CV 6804 (VB), 2014 U.S. Dist. LEXIS 142256, at *3 n.2 (S.D.N.Y. Sept. 17, 2014) ..............................................2

*Burlington N. & Santa Fe Ry. v. Vaughn*, 509 F.3d 1085, 1093 (9th Cir. 2007) ........................10

*Bynon v. Mansfield*, CIVIL ACTION NO. 15-00206, 2015 U.S. Dist. LEXIS 66684, at *3 (E.D. Pa. May 21, 2015)...................................................................................................5

*Cayuga Indian Nation v. Seneca Cnty.*, 761 F.3d 218, 220 (2d Cir. 2014)....................................5

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)...........................................23

*Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) ...................................................................5

*Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 558-59 (E.D.N.Y. 2011)...............................................................................................................................22

*Cook v. AVI Casino Enters.*, 548 F.3d 718, 725 (9th Cir. 2008)..................................................5

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005)..................................21

*Dernier v. Mortg. Network, Inc.*, 87 A.3d 465, 481 (Vt. 2013) ............................................28, 29

Page(s)

*Dingler v. United States*, File No. 1:06-CV-181, 2008 U.S. Dist. LEXIS 72934, at *3 (D. Vt. Aug. 26, 2008) ............................................................................................ 2

*Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) ............................................ 20

*Dodge v. Cnty. of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004) ............................... 11

*Dumont v. Corr. Corp. of Am.*, Civil Action No. 2:14-cv-209, 2015 U.S. Dist. LEXIS 79032, at *7 (D. Vt. Apr. 29, 2015) .................................................... 13, 14

*Edelman v. Jordan*, 415 U.S. 651, 666 (1974) ............................................................... 7

*Edgar v. MITE Corp.*, 457 U.S. 624, 642-643 (1982) ................................................... 30

*Eric M. Berman, P.C. v. City of N.Y.*, 895 F. Supp. 2d 453, 474 (E.D.N.Y. 2012) ..................................................................................................................... 30

*Exch. Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976) ............. 4

*Fagioli S.p.A. v. GE*, 14-CV-7055 (MN), 2015 U.S. Dist. LEXIS 73219, at *8-9 (S.D.N.Y. June 5, 2015) ......................................................................................... 2

*Farmer v. Fed. Bureau of Prisons*, 13-CV-1255 (DLI)(CLP), 2015 U.S. Dist. LEXIS 39534, at *18 (E.D.N.Y. Mar. 27, 2015) ................................................... 2

*Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) ......... 16, 18

*Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 310-11 (N.D.N.Y. 2003) ............ 6, 7, 8, 9

*FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) ...................... 22

*Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 88 (2d Cir. 2001) .................. 6, 8, 23, 30

*Gellman v. Paul*, 85 F.R.D. 357, 358 (S.D.N.Y. 1980) ................................................ 17

*Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) ......................................... 4

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) .... 13

*Hall v. Marshall*, 479 F. Supp. 2d 304, 318 (E.D.N.Y. 2007) ...................................... 10

*Hardy v. Fischer*, 701 F. Supp. 2d 605, 611 n.5 (S.D.N.Y. 2010) ................................ 9

*Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) .............................................................. 30

*Howard ex rel. United States v. Shosone-Paiute Tribes of the Duck Valley Indian Reservation*, No. 13-16118, 2015 U.S. App. LEXIS 10040, at *2 (9th Cir. June 15, 2015) ...................................................................................................... 8

**Page(s)**

*Illinois v. CMK Invs., Inc.*, No. 14 C 2783, 2014 U.S. Dist. LEXIS 169920, at *26 n.5 (N.D. Ill. Dec. 9, 2014)..................................................................................26

*J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) .........................................4

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ...............................14

*Kemph v. Reddam*, No. 13 CV 6785, 2015 U.S. Dist. LEXIS 38861, *1 (N.D. Ill. Mar. 27, 2015)....................................................................................21

*Kermanshah v. Kermanshah*, 08-CV-409(BSJ)(AJP), 2010 U.S. Dist. LEXIS 45896, at *5 (S.D.N.Y. May 11, 2010) ......................................................15

*Kuck v. Danaher*, 822 F. Supp. 2d 109, 141 (D. Conn. 2011) .......................................10

*L.A. v. Lyons*, 461 U.S. 95, 105-106 (1983) ..........................................................11

*Levesque v. Vermont*, Case No. 5:12-cv-159, 2014 U.S. Dist. LEXIS 127916, at *6 (D. Vt. Sept. 12, 2014)..............................................................................4

*Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975).................................16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).........................................11

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ...........................10

*Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299 (1978).....................3, 30, 29

*Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014) ......................................21

*Montana v. United States*, 450 U.S. 544 (1981)..........................................................21

*Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978) .............................23

*Nguyen v. Ridgewood Sav. Bank*, No. 14-1058, 2015 U.S. Dist. LEXIS 64301, at *35 (E.D.N.Y. May 15, 2015) .................................................................8, 23

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991)............5

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) ...........................20

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).........................9

*Raines v. Byrd*, 521 U.S. 811, 818 (1997) ...........................................................10

*Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014)..........................................13

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)....................................21

**Page(s)**

*Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ....................................................23

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) ...................................5, 6, 7, 8

*Schroedel v. N.Y. Univ. Med. Ctr.*, 885 F. Supp. 594, 598 (S.D.N.Y. 1995) .........................11, 12

*Scott v. AOL Time Warner*, 109 F. App'x 480, 481 (2d Cir. 2004) ...........................................8

*Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany)*, 745 F.3d 30, 38 (2d Cir. 2014) ..................................................................13

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) .......................................11, 12

*Spinelli v. NFL*, 13 Civ. 7398 (RWS), 2015 U.S. Dist. LEXIS 40716, at *117-118 (S.D.N.Y. Mar. 27, 2015).......................................................................27

*Spiro v. Healthport Techs., LLC*, 14 Civ. 2921 (PAE), 2014 U.S. Dist. LEXIS 121346, at *22-23 (S.D.N.Y. Aug. 29, 2014) ...................................................12

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S. Ct. 1758, 1773 (2010) .....................................................................................20

*Stoner v. Santa Clara Cnty. Office of Ed.*, 502 F.3d 1116, 1122 (9th Cir. 2007)............................8

*Sylvester v. Pipino*, Docket No. 1:12-cv-00057, 2012 U.S. Dist. LEXIS 164944, at *4 (D. Vt. Nov. 19, 2012)..............................................................................12, 13

*Taylor v. Schaffer*, Case No. 1:14-cv-123-jgm, 2015 U.S. Dist. LEXIS 16119, at *6 (D. Vt. Feb. 10, 2015).................................................................................4

*Upshaw v. WMB Constr.*, Case No. 2:13-cv-76, 2013 U.S. Dist. LEXIS 130285, at *5 (D. Vt. Sept. 12, 2013)..............................................................................2

*Vaughn v. Consumer Home Mortg. Co.*, 297 F. App'x 23, 25 (2d Cir. 2008) ............................11

*Village of Hotvela Traditional Elders v. Indian Health Servs.*, 1 F. Supp. 2d 1022, 1026 (D. Ariz. 1997), *aff'd* 141 F.3d 1182 (9th Cir. 1998)...................................17

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000) ...............8

*Vt. Pure Holdings, Ltd. v. Descartes Sys. Grp., Inc.*, 140 F. Supp. 2d 331, 336 (D. Vt. 2001)....................................................................................................20

*W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)....................................................................................................10

*Warren v. United States*, 859 F. Supp. 2d 522, 542 (W.D.N.Y. 2012), *aff'd* 517 F. App'x 54 (2d Cir. 2013) ............................................................................6, 8

Page(s)

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980) ............................................29, 30

*Williams v. Lee*, 358 U.S. 217 (1959)..................................................................................21, 29

*World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271, 275 (N.D.N.Y. 2000)..........................................................................................................................3, 5, 17, 18

*Zorn v. New York*, Docket No. 1:03-cv-314, 2004 U.S. Dist. LEXIS 296, *3 (D. Vt. Jan. 9, 2004)........................................................................................................................21

**STATUTES**

*9 U.S.C. § 2*................................................................................................................20, 17

*9 U.S.C. § 4*....................................................................................................................21

*12 U.S.C. § 5531*.....................................................................................................1, 23, 25

*12 U.S.C. § 5536*.....................................................................................................1, 23, 25

*12 U.S.C. § 5481(19)*..........................................................................................................8

*12 U.S.C. § 5517(o)*..........................................................................................................26

*12 U.S.C. § 5564(a)*............................................................................................................8

*15 U.S.C. 1639m(g)*..........................................................................................................23

*15 U.S.C. 1693a*................................................................................................................8

*15 U.S.C. 1693m(g)*............................................................................................................9

*15 U.S.C. § 44*..............................................................................................................8, 30

*15 U.S.C. § 45*.........................................................................................................1, 25, 30

*15 U.S.C. §1693k*................................................................................................................1

*15 U.S.C. §1693m(g)*..........................................................................................................7

*25 U.S.C. § 458cc(b)*..........................................................................................................2

*28 U.S.C. § 1391(b)(2)*......................................................................................................21

*8 V.S.A. § 2453(b)*............................................................................................................29

*9 V.S.A. §§ 2451, et seq.*....................................................................................................27

*9 V.S.A. § 2451a*................................................................................................................8

**Page(s)**

*9 V.S.A. §2453* ............................................................................................1, 28

*9 V.S.A. § 2453(a)* ...........................................................................................28

*9 V.S.A. § 2461(b)* ..........................................................................................28

*12 V.S.A. § 913(b)* ..........................................................................................12

**OTHER AUTHORITIES**

CFPB Supervision and Examination Manual (2d ed. 2012) . ......................................25

Cohen's Handbook of Federal Indian Law (2012 ed.) ...............................................5

Fed. R. Civ. P. 8 .........................................................................................23

Fed. R. Civ. P. 9(b) ....................................................................................22

Fed. R. Civ. P. 12(b)(1) ..........................................................................4, 10

Fed. R. Civ. P. 12(b)(2) ..........................................................................12, 15

Fed. R. Civ. P. 12(b)(3) ...............................................................18, 19, 21, 22

Fed. R. Civ. P. 12(b)(6) .............................................................................7, 22, 24

Fed. R. Civ. P. 12(b)(7) ...............................................................................2, 3, 15

Fed. R. Civ. P. 19 ...............................................................................15, 16, 17, 18

Restatement (Second) of Conflict of Laws. ..............................................................29

Vermont Consumer Protection Rule 104.05...............................................................29

Williston on Contracts (4th ed.) ...........................................................................29

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   PRELIMINARY STATEMENT ...................................................................1

II.  BACKGROUND ........................................................................................1

III. ARGUMENT .............................................................................................3

    A.  The Complaint Must Be Dismissed For Lack of Subject Matter
        Jurisdiction ...........................................................................................4

        1.  The Doctrine of Tribal Sovereign Immunity Bars This Action In Its
            Entirety ............................................................................................5

            a.  The Consumer Financial Protection Act of 2010 and the
                Federal Trade Commission Act Do Not Confer Private
                Rights of Action ......................................................................8

            b.  Plaintiffs' Claim Under The Electronic Funds Transfer Act
                Is Time-Barred.........................................................................9

            c.  The Ex parte Young Exception Applies Only to Violations
                of Federal Law........................................................................9

        2.  The Plaintiffs Lack Article III Standing................................................10

    B.  Alternatively, The Complaint Must Be Dismissed Under Fed. R. Civ. P.
        12(b)(2) for Lack of Personal Jurisdiction .........................................12

    C.  Alternatively, the Complaint Must Be Dismissed Because Plain Green and
        the Chippewa Cree Tribe of the Rocky Boy's Reservation are Necessary
        And Indispensable Parties .....................................................................15

    D.  Alternatively, the Court Should Dismiss this Matter in its Entirety, as
        Neither the Forum Nor Venue Are Proper ...........................................18

        1.  The Court Should Honor the Parties' Agreement to Arbitrate and
            Dismiss This Matter Pursuant to Fed. R. Civ. P. 12(b)(3) .......................18

            a.  The Arbitration Clause ...............................................................18

            b.  The Court Should Honor the Parties' Agreement to
                Arbitrate..................................................................................20

        2.  This Action Runs Afoul of the Venue Statute and Should be
            Dismissed Under Fed. R. Civ. P. 12(b)(3)................................................21

Page

    E.    Alternatively, the Court Should Dismiss this Action for Failure to State a
Claim Pursuant to Fed. R. Civ. P. 12(b)(6) ..........................................................22

        1.    The FTCA and CFPA Do Not Confer a Private Right of Action
and the EFTA Claims Are Time-Barred..................................................23

        2.    Plaintiffs Have Failed to Allege Any Statutory Violations ......................24

            a.    Plaintiffs Have Failed to Allege a Violation of the FTCA ............24

            b.    Plaintiffs Have Failed to Allege a Violation of the CFPA ............25

            c.    Plaintiffs Have Failed to Allege a Violation of the EFTA ............27

            d.    Plaintiffs Have Failed to Allege a Violation of the VCPA............27

IV.    CONCLUSION ........................................................................................................30

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**</u>

Defendants Joel Rosette, Ted Whitford, and Tim McInerney (collectively "Defendants"), by their undersigned attorneys, respectfully submit this Memorandum of Law in support of their Motion to Dismiss without Leave to Amend, or, in the alternative, to Compel Arbitration, of the Class Action "Complaint for Declaratory and Injunctive Relief" ("Complaint") of named-Plaintiffs Jessica Gingras and Angela Givens ("Plaintiffs").

## I.      PRELIMINARY STATEMENT

Plaintiffs have filed the underlying Complaint against three individual officers and directors of Plain Green, LLC ("Plain Green"), a lending entity entirely owned and operated by the Chippewa Cree Tribe of the Rocky Boy's Reservation, Montana ("Tribe"), claiming that these tribal officers, acting in their official capacities, violated the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a); the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"); the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693k; and the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A. §2453.

Plaintiffs' Complaint is without merit– not only does the Court lack subject matter jurisdiction over this entire matter, but half of Plaintiffs' claims are predicated on federal statutes that lack a private right of action, while Plaintiffs' remaining claims are either time-barred or simply inapplicable to the Defendants.  For these reasons, and on the basis of the additional grounds provided below, Plaintiffs' Complaint should be dismissed in its entirety.

## II.      BACKGROUND

This case concerns installment loans extended to two Vermont residents by non-party Plain Green, LLC ("Plain Green").  [Compl. ¶¶ 26-42.]  Plain Green is a lending entity wholly owned and operated by the Chippewa Cree Tribe of the Rocky Boy's Reservation,

Montana – a federally-recognized Native American tribe.  The Tribe is a sovereign nation located in the United States of America and, as such, is responsible for its own self-government.[1] The Tribe is governed by its Constitution and Law and Order Code, which detail the responsibilities and procedures for the "Business Committee" – the Tribe's governing body – as well as the Tribe's robust trial and appellate court system.  The Tribe's court system is overseen by six trial and appellate court judges, who manage an active docket including criminal, civil, and family law matters.  *See* Ex. A (Rosette Aff.); Ex. C (Plain Green Articles).[2]

Plain Green was chartered as an "online installment lending entity" by the Tribe's Business Committee in 2011 pursuant to the Committee's authority to promote the general welfare of the Tribe.  *Id.*  The Tribe intended Plain Green to operate as an economic "arm of the Tribe," and in that sense to serve as a means to increase Tribal revenues and support the social,

---

[1] The Tribe's jurisdiction was established by an Act of the United States Congress in 1916, 39 Stat. 739, and its government was organized consistent with the Indian Reorganization Act of 1934.  The Tribe is a self-governing tribe under the Tribal Self Governance Act, and as such, it is empowered to "plan, conduct, consolidate, and administer programs, services, functions, and activities, or portions thereof, administered by the Department of the Interior through the Bureau of Indian Affairs."  25 U.S.C. § 458cc(b).  Congress enacted the Tribal Self Governance Act in 1994 in response to its finding that "Federal bureaucracy, with its centralized rules and regulations, has eroded tribal self-government and dominates tribal affairs."  H. Rep. No. 103-653, at 1 (1994).  Indeed, the Tribe was one of the first American Indian tribes to enter the self-governance program and is the only compact tribe in the region.  *See, e.g.,* Bureau of Indian Affairs, Rocky Boy's Agency, *available at* http://www.bia.gov/ WhoWeAre/ RegionalOffices/Rocky Mountain/WeAre/RockyBoys/index.htm.

[2] For the purposes of this Motion to Dismiss, Defendants have attached the following: Defendants' affidavits, Plain Green's Articles of Organization, and the loan Agreements referenced in the Complaint.  The Court may properly consider these documents when assessing subject matter jurisdiction, *see Dingler v. United States*, File No. 1:06-CV-181, 2008 U.S. Dist. LEXIS 72934, at *3 (D. Vt. Aug. 26, 2008) ("When resolving a jurisdictional question, the Court may consider materials outside the pleadings"); personal jurisdiction, *see Upshaw v. WMB Constr.*, Case No. 2:13-cv-76, 2013 U.S. Dist. LEXIS 130285, at *5 (D. Vt. Sept. 12, 2013) ("When considering a motion to dismiss for lack of personal jurisdiction, a district court may consider matters outside the pleadings."); joinder, *see Fagioli S.p.A. v. GE*, 14-CV-7055 (MN), 2015 U.S. Dist. LEXIS 73219, at *8-9 (S.D.N.Y. June 5, 2015) (conducting thorough analysis of Second Circuit case law approving consideration of matters outside the pleadings when deciding a Rule 12(b)(7) motion, as it "would be very difficult in many instances for a movant under Rule 12(b)(7) to satisfy its burden if it were forced to rely solely on the allegations contained in the plaintiff's complaint," which "is made all the more obvious by the fact that the failure to name the required and indispensable party in the complaint is often by design"); venue, *see Farmer v. Fed. Bureau of Prisons*, 13-CV-1255 (DLI)(CLP), 2015 U.S. Dist. LEXIS 39534, at *18 (E.D.N.Y. Mar. 27, 2015) ("A court may also consider materials outside the pleadings" when resolving venue challenge); and arbitration clauses, *see Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*, 13 CV 6804 (VB), 2014 U.S. Dist. LEXIS 142256, at *3 n.2 (S.D.N.Y. Sept. 17, 2014) ("Courts may consider documents outside the pleadings when deciding a motion to compel arbitration.").

economic, educational, and health needs of the Tribe.  *See* Ex. A; Ex. C.  Significantly, as an

"arm of the Tribe," Plain Green and its officers and directors share the Tribe's sovereign status.

*See, e.g., World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271, 275

(N.D.N.Y. 2000); Ex. C, at §§ 4.1, 4.2.

       As articulated in their Complaint, Plaintiffs are repeat customers of Plain Green.

[*See* Compl. ¶¶ 29-39.]  Indeed, since 2011, they have voluntarily taken out – and paid off – a

number of Plain Green installment loans.  [*Id.*]  Despite their apparent longstanding satisfaction

with Plain Green's loan products, Plaintiffs now bring the instant putative class action suit,

alleging that Plain Green's entire lending model is unlawful.  [*See generally* Compl.]  For the

reasons set forth below, however, Plaintiffs' allegations are insufficient as a matter of law and

their Complaint must be dismissed in its entirety.

## III.    ARGUMENT

       Although Plaintiffs purport to bring claims on behalf of an expansive multi-state

class, their entire action fails for the most fundamental of reasons:  ***First,*** the Court plainly lacks

subject matter jurisdiction over this entire matter because Defendants, as officers of a tribal

entity, share the Tribe's well-established right to immunity from suit, and because Plaintiffs lack

standing to bring their "Complaint for Declaratory and Injunctive Relief."  ***Second,*** the Court

lacks personal jurisdiction over the Defendants, as the Plaintiffs cannot demonstrate that the

Defendants have the requisite "minimum contacts" with Vermont.  ***Third,*** Fed. R. Civ. P.

12(b)(7) requires dismissal of this action, as it arises entirely out of the Consumer Loan

Agreements ("Agreements")[3] that Plaintiffs entered into with *Plain Green* and, by extension, the

*Chippewa Cree Tribe*, neither of whom were named in this suit.  Both Plain Green and the Tribe

---

[3] The Plain Green loan Agreements cited in the Complaint are materially identical and have all been attached hereto as Exhibit B.  For ease of reference, this memorandum refers to the Agreements collectively as "Exhibit B."

are necessary and indispensable parties to this action, but cannot be joined due to their inherent right to sovereign immunity.  **Fourth,** the United States District Court for the District of Vermont is neither the proper forum nor venue for resolving Plaintiffs' disputes, particularly in light of the parties' valid and binding agreement to arbitrate before neutral arbitrators any dispute related to their loans.  **Fifth,** Plaintiffs have wholly failed to state a claim under any of their four counts, especially given that neither the Federal Trade Commission Act nor the Consumer Financial Protection Act confer private rights of action, and Plaintiffs' Electronic Funds Transfer Act claim is time-barred.

A.   **The Complaint Must Be Dismissed For Lack of Subject Matter Jurisdiction**

An action must be dismissed when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  As the party asserting subject matter jurisdiction, the plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011).  Given this burden of proof, a plaintiff opposing a motion to dismiss "cannot rest on the mere assertion that factual issues may exist." *See Exch. Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976).  Indeed, while a court reviewing a Rule 12(b)(1) motion to dismiss "must accept as true all material factual allegations in the complaint, [] it is not to draw inferences from the complaint favorable to plaintiff." *Levesque v. Vermont*, Case No. 5:12-cv-159, 2014 U.S. Dist. LEXIS 127916, at *6 (D. Vt. Sept. 12, 2014) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (quotation marks and alterations omitted)).  "When a motion to dismiss cites Rule 12(b)(1) as a grounds for dismissal, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Taylor v. Schaffer*, Case No. 1:14-

cv-123-jgm, 2015 U.S. Dist. LEXIS 16119, at *6 (D. Vt. Feb. 10, 2015) (internal citation omitted).  For the reasons that follow, Plaintiffs' action should be dismissed.

      1.     ***The Doctrine of Tribal Sovereign Immunity Bars This Action In Its Entirety***

As sovereign governments, federally recognized tribes are entitled to the "common-law immunity from suit traditionally enjoyed by sovereign powers."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).  It is thus widely recognized that suits seeking either damages or equitable relief "against Indian tribes are . . . barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation."  *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991); *Cayuga Indian Nation v. Seneca Cnty.*, 761 F.3d 218, 220 (2d Cir. 2014); *Cohen's Handbook of Federal Indian Law* § 7.05[1][a] (2012 ed.).  A tribe's immunity extends to the entities that the tribe wholly owns and operates. *See, e.g., World Touch Gaming, Inc.*, 117 F. Supp. 2d at 275 (N.D.N.Y. 2000); *Cook v. AVI Casino Enters.*, 548 F.3d 718, 725 (9th Cir. 2008) (noting that "tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself").  The tribe's immunity also protects tribal officers and employees acting within the scope of their official authority from damages claims.  *See, e.g., Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) (Plaintiff "cannot circumvent tribal immunity by merely naming officers or employees of the Tribe when the complaint concerns actions taken in defendants' official or representative capacities and the complaint does not allege they acted outside the scope of their authority"); *see also, e.g. Bynon v. Mansfield*, CIVIL ACTION NO. 15-00206, 2015 U.S. Dist. LEXIS 66684, at *3 (E.D. Pa. May 21, 2015) (explaining that a tribe's immunity extends to its "subordinate economic entities and to tribal officials who are acting in their official capacity and within the scope of their authority,"

and dismissing entire consumer lending action seeking damages against the "manager" in charge of the "day-to-day operations" of a tribal lending entity).

By way of analogy to *Ex parte Young*, however, the United States Supreme Court has signaled that private plaintiffs may, in limited circumstances, seek equitable relief against tribal officers and employees to the extent that the individuals were acting in violation of *federal law*. *Santa Clara Pueblo*, 436 U.S. at 59 (in a claim for injunctive and declaratory relief under the federal Indian Civil Rights Act, noting that a tribal officer is not protected by the tribe's immunity from suit); *Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 310-11 (N.D.N.Y. 2003) ("Although *Ex Parte Young* offers a limited exception to the general principle of state sovereign immunity and has been extended to tribal officials acting in their official capacities, it only allows an official acting in his official capacity to be sued in a federal forum to enjoin conduct that violates **federal law**") (bold font in original).  The Second Circuit has expressly articulated two additional requirements for the application of this limited *Ex parte Young* exception in the tribal context:  "First, the law under which the plaintiff seeks injunctive relief must apply substantively to the tribe, agency, or corporation, and, second, the plaintiff must have a private cause of action to apply the substantive rule."  *Warren v. United States*, 859 F. Supp. 2d 522, 542 (W.D.N.Y. 2012), *aff'd* 517 F. App'x 54 (2d Cir. 2013) (citing *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 88 (2d Cir. 2001)).

Plaintiffs seemingly appreciate some of the principles laid out above, as their "Complaint for Declaratory and Injunctive Relief" largely[4] seeks equitable relief against

---

[4] Plaintiffs do make a veiled attempt to recover money damages from the tribal Defendants in the form of a request for an "[e]quitable surcharge seeking return of all interest charged above a reasonable rate and any financial charges associated with the loan," notwithstanding the characterization of the Complaint as one for only "Declaratory and Injunctive Relief." [*See* Compl., pp. 1, 19.].  None of the statutes cited in Plaintiffs' Complaint provides for the remedy of "equitable surcharge," itself a sufficient basis for denying the requested relief.  *See Santa Clara Pueblo*, 436 U.S. at 72 (refusing to imply a cause of action for injunctive relief against a tribal official where the statute in question made provision only for a cause of action for habeas corpus).  But, as already noted, money damages

individual tribal officers, and conspicuously fails to name either Plain Green – the entity that actually made the loans about which Plaintiffs now complain – or the Tribe, which owns and operates Plain Green.[5]  [*See generally* Compl.]  Ultimately, however, Plaintiffs do not meet *all* of the criteria for applying *Ex parte Young*, as each of the statutes on which they predicate their Complaint fail to meet one or more of the requirements necessary to invoke this limited exception.

Specifically, neither the FTCA nor the CFPA provides a private right of action, a threshold requirement for *Ex parte Young* suits against tribal officials.  *See Santa Clara Pueblo*, 436 U.S. at 72 (denying injunctive relief against a tribal official under the Indian Civil Rights Act because the ICRA does not provide a private cause of action for such relief).  And the EFTA, while providing a private right of action, requires a plaintiff to bring his or her claim within one year, which Plaintiffs have failed to do.  *See* 15 U.S.C. §1693m(g).[6]  Finally, as noted above, the *Ex parte Young* exception is applicable only to violations of *federal* – not state – law.  *See Frazier*, 254 F. Supp. 2d at 310-11 (holding *Ex parte Young* to be "inapplicable" to tribal official because "the amended complaint only asserts violations of state law").  Accordingly, Plaintiffs

---

against tribal officials operating within the scope of their authority are impermissible as a matter of law in light of such officials' immunity, given that such an award would run directly against the sovereign tribe. *See, e.g.,id.* at 59; *Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 310-11; *cf., e.g., Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (extending sovereign immunity to Tribe's casino, as tribal sovereign immunity protects the "sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general"). Moreover, Plaintiffs' efforts to characterize their request for money damages as "equitable" does not affect the analysis. *Edelman v. Jordan*, 415 U.S. 651, 666 (1974) (reversing a Court of Appeals' decision to award "equitable restitution" of unlawfully withheld state benefits: "We do not read *Ex parte Young* or subsequent holdings of this Court to indicate that any form of relief may be awarded … so long as the relief may be labeled 'equitable' in nature"). Indeed, the requested damages are doubly barred in the sense that Plaintiffs seek *retroactive* monetary relief; that is compensation for the interest and fees charged by Plain Green on loans taken out by Plaintiffs between 2000 and 2013. [Compl. ¶¶ 26-42.] The *Ex parte Young* doctrine applies only to prospective relief. *See Edelman*, 415 U.S. at . at 678  (*Ex parte Young* does not apply to suits for retroactive relief).

[5] As discussed in Section III.C., Plaintiffs' efforts to avoid naming the real parties in interest in this matter require the Complaint to be dismissed for failure to join necessary and indispensable parties.

[6] Plaintiffs' failure to comply with the statute of limitations provision of the EFTA, and the absence of private rights of action under the FTCA and the CFPA, also support dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *See infra* Section III.E.1.

may not seek their requested relief against Defendants for violation of the VCPA.  *Id.*  Given

these deficiencies, Plaintiffs' attempted *Ex parte Young* action must fail.[7]

<blockquote>

a.   *The Consumer Financial Protection Act of 2010 and the Federal Trade Commission Act Do Not Confer Private Rights of Action*

</blockquote>

It is well-settled that neither the CFPA nor the FTCA – the statutes underlying

Counts One and Two – provides a private right of action.  *See, e.g., Nguyen v. Ridgewood Sav.

Bank*, No. 14-1058, 2015 U.S. Dist. LEXIS 64301, at *35 (E.D.N.Y. May 15, 2015) (finding no

private right of action under the CFPA)[8]; *see also, e.g., Scott v. AOL Time Warner*, 109 F. App'x

480, 481 (2d Cir. 2004) (noting that the FTCA does not "provide for a private cause of action").

Accordingly, Counts One and Two plainly fail to support an *Ex parte Young* claim for injunctive

relief against the Defendants.  *See Santa Clara Pueblo*, 436 U.S. at 72 (a complaint seeking

injunctive relief against a tribal official on an *Ex parte Young* basis must be dismissed when the

federal statute allegedly violated by defendant does not confer a private right of action for

injunctive relief); *Warren*, 859 F. Supp. 2d at 542 (citing *Garcia v. Akwesasne Hous. Auth.*, 268

F.3d 76, 88 (2d Cir. 2001) (before plaintiff may seek injunctive relief against a tribal official,

plaintiff "must have a private cause of action…")).

---

[7] Additionally, Plaintiffs are unable to show that the statutes apply "substantively" to the Tribe such that they may be extended to the Defendants.  *See Warren v. United States*, 859 F. Supp. 2d at 542.  None of the statutes at issue are enforceable against tribal sovereigns, which are not expressly included among the "persons" or entities subject to these Acts.  *See* 15 U.S.C. § 44 (FTCA); 12 U.S.C. § 5481(19) (CFPA); 15 U.S.C. 1693a (EFTA); 9 V.S.A. § 2451a (VCPA).  There is a "longstanding interpretive presumption that 'person' does not include the sovereign."  *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000) (finding that the term "person" in the False Claims Act does not include states).  Plain Green – a sovereign arm of the Tribe – is similarly insulated from the statutes' reach.  *See Stoner v. Santa Clara Cnty. Office of Ed.*, 502 F.3d 1116, 1122 (9th Cir. 2007) (construing "person" under [the False Claims Act] in a way that "avoids suits against 'state instrumentalities' that are effectively arms of the state immune from suit").  *See also Howard ex rel. United States v. Shosone-Paiute Tribes of the Duck Valley Indian Reservation*, No. 13-16118, 2015 U.S. App. LEXIS 10040, at *2 (9th Cir. June 15, 2015) (explaining that "the Tribe, like a state, is a sovereign that does not fall within the definition of a 'person' under the [False Claims Act]").  Accordingly, these statutes are wholly inapplicable to the Tribe and thus, by extension, to the Defendants.  *Warren v. United States*, 859 F. Supp. 2d at 542.

[8] Indeed, the CFPA expressly provides that "[i]f any person violates a Federal consumer financial law, *the [Consumer Financial Protection] Bureau* may . . . commence a civil action against such person".  12 U.S.C. § 5564(a) (emphasis added).

   b.  *Plaintiffs' Claim Under The Electronic Funds Transfer Act Is Time-Barred*

  The EFTA dictates that any action must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. 1693m(g).  Plaintiffs' allegations involving the EFTA, however, clearly place any possible violation well outside this one-year limitations period.  The Complaint alleges that Defendants violated the EFTA by "conditioning the extension of credit on recurring preauthorized electronic fund transfers."  [Compl. ¶100.]  A plain reading of the Complaint reveals that the most recent alleged violation occurred no later than July 17, 2013, when Angela Given "took out a payday loan."  [*See* Compl. ¶ 39.]  Plaintiffs did not file the underlying Complaint until May 13, 2015 – well beyond the one-year limitations period imposed by the EFTA.  Accordingly, Plaintiffs' claim under the EFTA is indisputably time-barred[9] and Count Three of Plaintiffs' Complaint cannot support the imposition of injunctive relief against Defendants under an *Ex parte Young* theory.

   c.  *The* Ex parte Young *Exception Applies Only to Violations of Federal Law*

  It is long settled in this Circuit and elsewhere that the *Ex parte Young* doctrine may be applied to enjoin only violations of federal – not state – law.  Indeed, where a "complaint only asserts violations of state law … the *Ex parte Young* exception is inapplicable."  *Frazier*, 254 F. Supp. 2d at 310.  *See also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (concluding that *Ex parte Young* is inapplicable to state law claims).

---

[9] And it is of no moment that Plaintiffs purport to represent a class of hypothetical individuals, as at least one named plaintiff must adequately state a claim for relief to proceed in this litigation.  *See, e.g., Hardy v. Fischer*, 701 F. Supp. 2d 605, 611 n.5 (S.D.N.Y. 2010) (explaining that to survive motion to dismiss, "the allegations of at least one named plaintiff must state a claim for relief").

For the foregoing reasons, Plaintiffs have failed to properly invoke the limited *Ex parte Young* exception to Defendants' immunity, this Court is without subject matter jurisdiction over this case, and the action must be dismissed.[10]  *See* Fed. R. Civ. P. 12(b)(1).

### 2.      The Plaintiffs Lack Article III Standing

The Court should dismiss Plaintiffs' "Complaint for Declaratory and Injunctive Relief" in its entirety, as Plaintiffs plainly lack standing to bring the underlying lawsuit.  Article III of the United States Constitution limits the jurisdiction of this Court to the resolution of "cases" and "controversies."  U.S. Const. art. III.  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit."  *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim."  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).

The plaintiff bears the burden of demonstrating standing for each cause of action and form of relief sought.  *See id.* at 64.  To establish standing, a plaintiff must demonstrate: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural

---

[10] Even if Plaintiffs were otherwise able to find support for their ability to bring injunctive relief against Defendants on an *Ex parte Young* theory, their Complaint fails to establish that each Defendant has a connection to the allegedly unlawful acts and has the authority to perform the injunctive relief sought– this lapse is fatal to their action.  *See, e.g., Burlington N. & Santa Fe Ry. v. Vaughn*, 509 F.3d 1085, 1093 (9th Cir. 2007) (declining to apply *Ex parte Young* to tribal official, as plaintiff failed to allege that the tribal official was "in any way responsible for enforcing the [allegedly unlawful] tax"); *see also, e.g., Kuck v. Danaher*, 822 F. Supp. 2d 109, 141 (D. Conn. 2011) (finding that *Ex parte Young* only applies where the official sued has some connection with the enforcement of the [allegedly unconstitutional act]") (alterations in original; quotation marks omitted).  Here, Plaintiffs allege only that Defendants Ted Whitford and Tim McInerney are members of Plain Green's Board of Directors.  [*See* Compl. ¶¶ 7,8].  And with respect to Defendant Joel Rosette, Plaintiffs allege only that "Defendant Joel Rosette is the Chief Executive Officer of Plain Green" and "is responsible for all operations of Plain Green."  [*see* Compl. ¶ 6.]  These bare and conclusory allegations are patently insufficient to support injunctive relief.  *See, e.g., Burlington N.*, 509 F.3d at 1092.  Plaintiffs have not established that any of the Defendants are connected to the allegedly unlawful conduct or that they have authority to unilaterally remedy the allegedly unlawful conduct.  *See, e.g., Hall v. Marshall*, 479 F. Supp. 2d 304, 318 (E.D.N.Y. 2007) (declining to extend *Ex parte Young* where plaintiff failed to allege that defendants had "authority to unilaterally correct [the allegedly unlawful conduct]").

-10-

or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) redressability of the injury by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To demonstrate an "injury in fact" when seeking declaratory or injunctive relief – as is the case here – a plaintiff "must demonstrate that a defendant's conduct is causing irreparable harm." *Schroedel v. N.Y. Univ. Med. Ctr.*, 885 F. Supp. 594, 598 (S.D.N.Y. 1995). "This requirement cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again." *Id.* In this regard, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Vaughn v. Consumer Home Mortg. Co.*, 297 F. App'x 23, 25 (2d Cir. 2008) (quotation marks and citation omitted). *See also L.A. v. Lyons,* 461 U.S. 95, 105-106 (1983). Significantly, this standard applies equally to the named plaintiffs of class actions. *See Dodge v. Cnty. of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004) ("the named plaintiffs in this action must themselves have standing to seek injunctive relief").[11]

Plaintiffs have failed to demonstrate an irreparable or future "injury in fact" sufficient to establish their standing to bring the underlying "Complaint for Declaratory and Injunctive Relief." Rather, the Complaint alleges nothing more than purely past events: that named-Plaintiffs Jessica Gingras and Angela Given "took out" certain loans and then repaid them [*see* Compl. ¶¶ 28-30; 36-39]; that Plain Green allegedly "cancelled" one of named-Plaintiff Angela Given's loans [*see* Compl. ¶¶ 36-39]; and that Plain Green purportedly "required" named-Plaintiffs to agree to certain conditions prior to taking out these past loans [*see* Compl. ¶¶ 31, 41.] Indeed, the Complaint fails to articulate any irreparable or ongoing injury

---

[11] *See also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action [] adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted).

attributable to the named-Plaintiffs, as required to establish standing for this action, *see, e.g., Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n.20 (1976); instead, the Complaint makes the bare assertion that "Plaintiffs" – presumably everyone in the purported class – "*were* damaged." [*See* Compl. ¶¶ 85, 93, 103 (emphasis added).]

And it is of no moment that Plaintiffs purport to represent a class of similarly situated individuals, some of whom may hypothetically be harmed in the future; rather, the named-Plaintiffs *themselves* must demonstrate the irreparable and ongoing harm necessary to confer standing. *See Spiro v. Healthport Techs., LLC*, 14 Civ. 2921 (PAE), 2014 U.S. Dist. LEXIS 121346, at *22-23 (S.D.N.Y. Aug. 29, 2014). Because Plaintiffs have wholly failed to show that they are experiencing "irreparable harm" or that there is a "real or immediate threat" that they will be harmed again, *see Schroedel*, 885 F. Supp. at 598, their action must be dismissed for lack of standing. *See Spiro*, 2014 U.S. Dist. LEXIS 121346, at *23 (dismissing with prejudice plaintiffs' class action complaint where complaint "fail[ed] to plead a plausible claim that the named plaintiffs face a real or immediate threat of being wronged again") (quotation marks omitted).

## B. Alternatively, The Complaint Must Be Dismissed Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction

The Court does not have personal jurisdiction over the Defendants; as such, Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of establishing that the court can properly exercise personal jurisdiction over Defendants. *See Sylvester v. Pipino*, Docket No. 1:12-cv-00057 (jgm), 2012 U.S. Dist. LEXIS 164944, at *4 (D. Vt. Nov. 19, 2012). "A two-part inquiry governs personal jurisdiction determinations," as "[t]he courts first review the applicable long-arm statute and next consider whether jurisdiction violates due process." *Id*. "Because Vermont's long-arm statute, 12 V.S.A.

§ 913(b), extends personal jurisdiction to the full extent permitted by the Due Process Clause, the analysis in this case involves only a single step: whether personal jurisdiction comports with due process." *Dumont v. Corr. Corp. of Am.*, Civil Action No. 2:14-cv-209, 2015 U.S. Dist. LEXIS 79032, at *7 (D. Vt. Apr. 29, 2015), *report and recommendation adopted in its entirety by* 2015 U.S. Dist. LEXIS 78193 (D. Vt. June 17, 2015).  This due process analysis "requires courts to consider:  (1) whether the defendant has sufficient 'minimum contacts' with the forum state, and (2) if such contacts exist, whether jurisdiction based on such contacts is reasonable under the circumstances of the particular case." *Sylvester*, 2012 U.S. Dist. LEXIS 164944, at *4.[12]  In making its analysis, "the court need not draw argumentative inference in Plaintiff's favor, nor should the court accept as true a legal conclusion couched as a factual allegation." *Dumont*, 2015 U.S. Dist. LEXIS 79032 at *6 (quotation marks and citation omitted).

Here, Plaintiffs' Complaint fails to demonstrate that the Defendants have sufficient "minimum contacts" with Vermont to establish personal jurisdiction – indeed, the Complaint fails to allege *any* contact that Defendants Joel Rosette, Tim McInerney, and Ted Whitford *personally* had and/or have with Vermont.  [*See generally* Compl.]  Nor could it, as the Defendants in fact have no connection to the state.  None of the Defendants reside in Vermont, own property in Vermont, or, to their knowledge, ever have set foot in Vermont.  *See* Ex. A

---

[12] The "minimum contacts" inquiry contemplates two types of jurisdiction:  "specific" and "general."  General jurisdiction exists when the defendants' affiliations with the forum state are so "continuous and systematic as to render them essentially at home in the forum State.  *Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany)*, 745 F.3d 30, 38 (2d Cir. 2014) (quotation marks and citation omitted).  Here, there is no basis for asserting "general jurisdiction" over the Defendants, as none are domiciled in Vermont.  *See, e.g., Reich v. Lopez,* 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) ("Only on truly 'exceptional' occasions may general jurisdiction extend over individuals who are 'at home' in a state that is not otherwise their domicile.").  By contrast, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011), and requires a showing that "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Dumont*, 2015 U.S. Dist. LEXIS 79032, at *8-9 (internal citation omitted).  As described below, the Defendants have not "purposely availed" themselves of Vermont so as to establish the requisite "minimum contacts" in this case.

(Rosette Aff.; Whitford Aff.; McInerney Aff.).   Plaintiffs thus have failed to establish
Defendants' "minimum contacts" with Vermont, necessitating dismissal of the Complaint.  *See
Dumont*, 2015 U.S. Dist. LEXIS 79032 at *10 (finding corporate officers' contacts with the
forum to be "weak" when "[n]one of them live or have ever lived in Vermont" and "none own
property in Vermont," and granting motion to dismiss).

   The only allegations that even arguably tie the Defendants to Vermont are those
allegations related to their roles as officers and directors of non-party Plain Green, [*see* Compl.
¶¶ 6, 7, 8.], but these allegations are insufficient to confer personal jurisdiction.  Even if
Plaintiffs sufficiently alleged that non-party Plain Green has sufficient "minimum contacts" with
Vermont – which Plaintiffs have not – it is well settled that individual officers and employees of
a company are not automatically subject to the same personal jurisdiction as their employer.  *See
Dumont*, 2015 U.S. Dist. LEXIS 79032, at *10-11 (D. Vt. Apr. 29, 2015) (concluding that
"Defendants' status as 'high level managers' or 'officers' of [the company] . . . is therefore not a
sufficient basis for concluding that they are subject to the same personal jurisdiction as their
employer" and dismissing claims against these individuals).  *See also, e.g., Keeton v. Hustler
Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (noting that "jurisdiction over an employee does
not automatically follow from jurisdiction over the corporation which employs him").  Rather,
"[e]ach defendant's contacts with the forum State must be assessed individually."  *Keeton*, 465
U.S. at 781 n.13.

   In evaluating a corporate officer's *personal and individual* contacts with a forum
state, however, courts will not credit mere conclusory allegations seeking to extend personal
jurisdiction over the corporate officer simply by making reference to his position within the
corporation.  *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008), *aff'd sub*

*nom*, *State Univs. Ret. Sys. v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009) (concluding that plaintiffs failed to establish the court's personal jurisdiction over defendant board members where plaintiffs' complaint offered only conclusory allegations to the effect that defendants participated in the alleged fraud by virtue of their managerial status within the company). The present Complaint, like the one discussed in *In re AstraZeneca*, is bereft of a single meaningful allegation tying the Defendants to the alleged unlawful acts directed at the forum state. Indeed, unable to marshal such facts, Plaintiffs rely instead on conclusory statements such as "Rosette is responsible for all operations of Plain Green" and Ted Whitford and Tim McInerney are "member[s] of Plain Green's Board of Directors," [Compl., ¶¶ at 6, 7, 8], in an effort to connect the defendants to Plain Green's Vermont lending. But such "conclusory statements applicable to all individual defendants as a result of their positions within [a] [c]ompany" are deficient as "[a] person's status as a board member is not alone sufficient to establish jurisdiction." *Id.*

      Accordingly, Plaintiffs' Complaint fails to establish that any of the Defendants has "minimum contacts" with Vermont such that an exercise of jurisdiction over them would comport with the Due Process, and thus must be dismissed. Fed. R. Civ. P. 12(b)(2).

    **C.**    **Alternatively, the Complaint Must Be Dismissed Because Plain Green and the Tribe are Necessary And Indispensable Parties**

      The Complaint should also be dismissed for its failure to join Plain Green and the Tribe, both of which plainly are necessary and indispensable parties under Federal Rule of Civil Procedure 19. Fed. R. Civ. P. 12(b)(7), 19. Courts apply a two-step inquiry when determining whether to dismiss an action for failure to join a necessary and indispensable party under Fed. R. Civ. P. 19. *See Kermanshah v. Kermanshah*, 08-CV-409(BSJ)(AJP), 2010 U.S. Dist. LEXIS 45896, at *5 (S.D.N.Y. May 11, 2010). First, the court assesses whether the absent party belongs in the lawsuit – *i.e.* whether the absent party is "necessary." Fed. R. Civ. P. 19(a). Under Rule

19, a party is "necessary" when, for example, "that person claims an interest relating to the

subject of the action and is so situated that disposing of the action in the person's absence may[,]

as a practical matter[,] impair or impede the person's ability to protect the interest."  Fed. R. Civ.

P. 19(a).  If a party is "necessary," the court then determines whether joinder of the party is

feasible and, if not, whether the party is "indispensable" such that the action must be dismissed.

Fed. R. Civ. P. 19(b).

       Both Plain Green and the Tribe are "necessary" parties under Rule 19.  Plaintiffs

entered into the allegedly unlawful loan Agreements with *Plain Green* – not the named

Defendants*.  See* Exhibit B.  It is well established that in an action involving the validity of an

agreement, all parties who may be affected by the determination of the action hold such an

interest that they are necessary parties to the action under Fed. R. Civ. P. 19(a).  *See e.g., Fluent

v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) (concluding that Seneca

Nation was a necessary party because, "[a]s a party to an Agreement negotiated for over two

decades, the Nation's interest in the validity of the lease agreement is significant").[13]

       Plaintiffs purport to represent a class comprised of "[a]ll persons who took out

payday loans from Defendants."  [Compl. ¶ 43.]  In reality, however, the Plaintiffs entered into

the loan Agreements at issue with *Plain Green* – not the individual Defendants.  Moreover, at

heart, Plaintiffs' claims concern the content and validity of these Agreements, as well as *Plain

Green's* conduct in forming the Agreements with Plaintiffs.  [Compl. ¶41 ("*Plain Green* required

Angela Given to agree to ACH withdrawals from her bank account before it would give her a

loan.") (emphasis added).]  As the party to the very Agreements at the center of this matter, Plain

---

[13] *See also, e.g., Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) (noting that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable," and affirming dismissal of action where tribe was necessary but joinder was infeasible because of tribe's inherent sovereign immunity).

Green undoubtedly has an "an interest relating to the subject of the action" and accordingly is a necessary party under Rule 19.  *See, e.g. World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271, 277 (N.D.N.Y. 2000) (concluding that tribal Casino was necessary party to action concerning Casino's Lease and Sales Agreements).[14]

       Further, Plaintiffs' action threatens Plain Green's existence, which undoubtedly renders both Plain Green and the Tribe necessary parties to this action.  As described above, the Tribe wholly owns and operates Plain Green as an economic arm of the Tribe.  *See supra* Section II.  Plaintiffs contend that Plain Green's entire lending model is unlawful and seek various declarations to this effect, as well as an injunction preventing the named Officers and Directors of Plain Green from "providing, collecting on, and servicing" all of Plain Green's allegedly unlawful loans.  [*See* Compl. p. 19.]  In short, Plaintiffs seek to terminate Plain Green as a going concern, a result which would devastate not only Plain Green and its employees, but also the thousands of Chippewa Cree tribal members who depend on Plain Green's revenues.  Clearly then, Plain Green and the Tribe maintain a significant interest in this action.[15]

       Although both Plain Green and the Tribe are necessary parties to this action, joinder of these parties is infeasible under Fed. R. Civ. P. 19(b) due to their shared sovereign immunity, a fact which Plaintiffs tacitly acknowledge by failing to name them in the Complaint.  Indeed, absent a clear and unequivocal waiver of immunity from Congress or the Tribe itself, the

---

[14] *See also, e.g., Gellman v. Paul*, 85 F.R.D. 357, 358 (S.D.N.Y. 1980) (dismissing action against company's officer where company's absence from suit "may harm its ability to protect its contractual interests in the transactions" and would "be materially prejudicial to its legal rights").

[15] *See, e.g., Village of Hotvela Traditional Elders v. Indian Health Servs.*, 1 F. Supp. 2d 1022, 1026 (D. Ariz. 1997), *aff'd* 141 F.3d 1182 (9th Cir. 1998) (tribe was a necessary party to suit challenging water and sewer facilities, because as the "future owner of the completed water and sewer facilities the Tribe has an obvious legal interest in the action" and because the construction project bore on "the interest of the Tribe in providing for the general tribal welfare through receipt or generation of funds and the expenditure of funds for public purposes").

Tribe and its entities – here, Plain Green – are cloaked with immunity from suit.  *See, e.g., World Touch Gaming, Inc.*, 117 F. Supp. 2d at 275 (a tribe's immunity "extends to tribal enterprises").

In light of these entities' sovereign immunity, the Court should dismiss Plaintiffs' Complaint in its entirety.  Rule 19(b) directs that when it is infeasible to join a necessary party, the court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  Rule 19(b) lists certain factors for a court to consider when making this determination; however, the Second Circuit has explained that "when an indispensable party is immune from suit, there is very little room for balancing of other factors set out in rule 19(b), because immunity may be viewed as one of those interests compelling by themselves."  *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (internal citations and quotation marks omitted.  Indeed, cases involving tribal sovereign immunity do not pose a mere "procedural defect" requiring dismissal; rather, "the dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent."  *Id*.

Based on the foregoing, the Court should find that Plain Green and the Tribe are necessary and indispensable parties that cannot be joined, and dismiss this action in its entirety.

> **D.      Alternatively, the Court Should Dismiss this Matter in its Entirety, as Neither the Forum Nor Venue Are Proper**

>> **1.      *The Court Should Honor the Parties' Agreement to Arbitrate and Dismiss This Matter Pursuant to Fed. R. Civ. P. 12(b)(3)***

>>> a.      *The Arbitration Clause*

The Agreements at issue provide for binding arbitration of all disputes.  Indeed, the Agreements inform the consumer, in **BOLD AND CAPITALIZED** font, that they include a "**WAIVER OF JURY TRIAL AND ARBITRATION**" provision.  *See* Ex. B.  Before even detailing the arbitration provision, the Agreements inform borrowers, again in **BOLD AND**

**CAPITALIZED FONT**, that they have a **RIGHT TO OPT OUT** of arbitration, and describe the procedure by which a borrow may exercise her opt-out option.[16]  *Id.*  Here, neither named-Plaintiff elected to opt out of binding arbitration and Plaintiffs are therefore bound to arbitrate the present dispute.  *See* Ex. A (Rosette Aff.).

The Agreements' arbitration provision then proceeds to instruct borrowers to "**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY**" and explains that "[u]nless you exercise your right to opt-out of arbitration in the manner described above, any dispute you have with Lender or anyone else under this Agreement will be resolved by binding arbitration."  *See* Ex. B.[17]  The arbitration clause defines "dispute" as "any claim or controversy of any kind between you and us."  *Id.*  It defines "us" to mean "Lender . . . and [its] respective agents, representatives, *employees, officers, directors* . . .."  *Id.* (emphasis added).  And under the Agreement, "the term Dispute is to be given its broadest possible meaning," and covers disputes "based on any legal or equitable theory . . . regardless of the type of relief sought."  *Id.*  Here, the arbitration clause expressly covers Plaintiffs' purported declaratory and injunctive relief claims against the Defendants – who are all officers and directors of Plain Green.  [Compl. ¶¶ 6, 7, 8.]

Pursuant to the arbitration clause, the Plaintiffs may elect to arbitrate before the American Arbitration Association, JAMS, or before a mutually-agreed upon private party, and the arbitration "will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes."  *Id.*  When resolving the dispute, "[t]he arbitrator will apply

---

[16] Each of the arbitration clauses specify, in materially identical terms, that the borrower may opt out by: "**ADVIS[ING] US IN WRITING EITHER BY . . .  A LETTER . . . OR [] BY EMAIL**" no later than  "**60 DAYS FOLLOWING THE ORIGINATION DATE**"  *See* Ex. B.  The clauses specify that if borrowers opt out, "**ANY DISPUTES SHALL [] BE GOVERNED UNDER THE LAWS OF THE CHIPPEWA CREE TRIBE AND MUST BE BROUGHT WITHIN THE COURT SYSTEM THEREOF.**"  *Id.*

[17] Significantly, the Agreements contain a class action waiver, which Plaintiffs have violated by bringing this class action lawsuit.  Defendants reserve the right to enforce the class action waiver in any court or arbitration.  *See, e.g., Am. Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2309 (2013) (upholding class action waiver and instructing courts to "rigorously enforce arbitration agreements according to their terms") (internal quotation marks omitted).

the laws of the Chippewa Cree Tribe and the terms of this Agreement." *Id.* The arbitration

provision provides significant convenience for the Plaintiffs as it permits the Plaintiffs to choose

to arbitrate within thirty miles of their homes or on the Reservation. *Id.* And the provision

charges Plain Green with "pay[ing] the filing fee and any costs or fees charged by the arbitrator

regardless of which party initiates the arbitration." *See* Ex. B. Notably, this "Agreement to

Arbitrate survives any termination, amendment, expiration, or performance of any transaction

between you and us." *Id.*

> b.   *The Court Should Honor the Parties' Agreement to Arbitrate*

The Court should defer to the parties' binding arbitration clause, which mandates

arbitration of Plaintiffs' action. "There is a strong federal policy favoring arbitration as an

alternative means of dispute resolution." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d

Cir. 1998). The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate

"shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Indeed, the "central or primary

purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to

their terms." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S. Ct. 1758,

1773 (2010) (internal quotation marks and citation omitted).

Because Plaintiffs declined to opt out of the Agreements' arbitration provisions,

*see* Ex. A (Rosette Aff.), they are bound to arbitrate their disputes before a neutral arbitrator, as

provided in the Agreements.[18] Accordingly, the Court should dismiss the Complaint in its

entirety, thereby affording Plaintiffs the opportunity to pursue arbitration, *see, e.g., Vt. Pure*

*Holdings, Ltd. v. Descartes Sys. Grp., Inc.,* 140 F. Supp. 2d 331, 336 (D. Vt. 2001) (granting

Defendants' 12(b)(3) Motion to Dismiss for improper venue where the arbitration clause was

---

[18] Plaintiffs may avoid binding arbitration only by demonstrating that a valid contract law defense allows them to
bypass their obligation to arbitrate. *See, e.g., Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). No such
defense is available here.

"sufficiently broad" to cover all claims against Defendants),[19] or, alternatively, should compel

arbitration in accordance with the terms of the parties' arbitration agreement.  *See* 9 U.S.C. § 4;

*see also Abbott v. Keen, Inc.,* Case No. 5:13-cv-267, 2014 U.S. Dist. LEXIS 166877, at *23 (D.

Vt. May 7, 2014) (granting Defendants' Motion to Compel Arbitration pursuant to parties'

arbitration agreement and dismissing case).[20]

      **2.**      ***This Action Runs Afoul of the Venue Statute and Should be Dismissed Under Fed. R. Civ. P. 12(b)(3)***

"On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(3), a plaintiff bears

the burden of demonstrating proper venue." *Zorn v. New York*, Docket No. 1:03-cv-314, 2004

U.S. Dist. LEXIS 296, *3 (D. Vt. Jan. 9, 2004).  Here, however, Plaintiffs are unable to show

that "a substantial part of the events or omissions giving rise to the claim occurred" in this

judicial district, as required by 28 U.S.C. § 1391(b)(2).  [*See* Compl. ¶ 13 (asserting venue under

section 1391(b)(2)]  In the Second Circuit, venue inquiries under section 1391(b)(2) focus on

where the *Defendants'* acts took place, and not where a Plaintiff may have felt harm.  *See Daniel*

---

[19] And, in any event, the Agreements expressly delegate questions of arbitrability to the arbitrator.  It is well established that "parties can agree to arbitrate 'gateway' questions of arbitrability."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  Here, the Agreements expressly provide that "any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate" shall be submitted to arbitration.  *See* Ex. B.  Accordingly, as an initial matter, any questions regarding arbitrability are properly delegated to the *arbitrator* – not the Court – requiring this entire action to be dismissed in favor of arbitration.  *See, e.g., Kemph v. Reddam*, No. 13 CV 6785, 2015 U.S. Dist. LEXIS 38861, *1 (N.D. Ill. Mar. 27, 2015) (compelling arbitration of Plaintiffs' consumer lending claims and gateway questions of arbitrability before an arbitrator applying the law of the Cheyenne River Sioux Tribe, and dismissing Plaintiffs' putative class action lawsuit in its entirety).

[20] If the Court declines to enforce the binding arbitration agreement contained in the Plaintiffs' loan Agreements, the Defendants move the Court to enforce the Agreements' forum selection clause and dismiss this case on the basis of *forum non conveniens*.  Here, the Plaintiffs' Agreements expressly designate the Chippewa Cree Tribal Court as the appropriate forum for any in-court dispute resolution. *See* Ex. B.  There is a "strong federal public policy supporting the enforcement of forum selection clauses."  *Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014).  In this regard, the Tribe has a longstanding right to adjudicate civil disputes pursuant to the laws it has established for itself and it is well established that in doing so, it may exercise jurisdiction over non-members, as would be the case here. *See, e.g, Montana v. United States*, 450 U.S. 544 (1981); *Williams v. Lee*, 358 U.S. 217 (1959) (recognizing that tribal jurisdiction extended to a non-member based on an on-reservation transaction).  Thus, if the Court declines to enforce the parties' agreement to arbitrate, it should nonetheless enforce the Agreements' forum selection clause.

*v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005); *see also Cold Spring Harbor*

*Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 558-59 (E.D.N.Y. 2011).

       Applying this principle to this matter, venue plainly does not lie in the District of

Vermont, as no "significant events" underlying Plaintiffs' claims occurred in Vermont.  The

Complaint fails to allege that any of the Defendants did anything in this district, and alleges only

that Defendants are officers and directors of Plain Green, which is located on the Reservation of

the Chippewa Cree Tribe of the Rocky Boy's Reservation in Montana, not in Vermont.  [Compl.,

¶¶ 2, 6, 7, 8.]  And while Plaintiffs' Complaint arises out of the loan Agreements that Plaintiffs

entered into with *non-party* Plain Green, these loan Agreements were formed on the Chippewa

Cree Tribe's Reservation – not in Vermont.  *See* Ex. A (Rosette Aff.); *see also infra* note 30.

Accordingly, Vermont is not the site of "a substantial part of the events" underlying Plaintiffs'

action against these Defendants, warranting dismissal of this action. Fed. R. Civ. P. 12(b)(3).

    **E.**    **Alternatively, the Court Should Dismiss this Action for Failure to State a
Claim Pursuant to Fed. R. Civ. P. 12(b)(6)**

       Even if Plaintiffs were able to overcome the jurisdictional deficiencies with their

action – which, as described above, they cannot – Plaintiffs' Complaint must nevertheless be

dismissed in its entirety under Fed. R. Civ. P. 12(b)(6), as they have failed to state a claim as to

any of the four counts in their Complaint.  In order to survive a motion to dismiss under Fed. R.

Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[21]  Thus, "threadbare recitals of the

---

[21]  As all four of Plaintiffs' causes of action sound in fraud, they should be analyzed under the heightened pleading
standard established by Federal Rule of Civil Procedure 9(b).  *See, e.g., FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d
848, 853 (C.D. Cal. 2010) (applying the heightened pleading standard to a claim brought by the FTC which "sounds
in fraud because it alleges a unified course of conduct and relies entirely on that course of conduct as the basis of its
claims").  Claims evaluated under this standard must be dismissed where they "fail[] to allege the 'who, what, when,
where, and how' of the Defendants' course of conduct." *Id.* at 854.  This Rule 9 pleading standard should apply to

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  For

the purposes of a 12(b)(6) motion to dismiss, a Complaint includes "any statements or

documents incorporated in it by reference . . .and documents that the plaintiffs either possessed

or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d

81, 88 (2d Cir. 2000); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.

2002).  Relevant here, if "the allegations of a complaint are contradicted by documents made a

part thereof, the document controls and the court need not accept as true the allegations of the

complaint." *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y.

1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994).[22]

### 1.   *The FTCA and CFPA Do Not Confer a Private Right of Action and the EFTA Claims Are Time-Barred*

As described at length above, Plaintiffs' Complaint plainly fails to state a claim

under the FTCA, CFPA, and EFTA.  Neither the FTCA nor the CFTA provides a private right of

action.  *See, e.g., Nguyen*, 2015 U.S. Dist. LEXIS 64301, at *35 (finding no private right of

action under Sections 5531 and 5536 of the CFPA and dismissing with prejudice Plaintiffs'

CFPA claims regarding alleged unfair and abusive practices); *see also, e.g., Naylor v. Case &

McGrath, Inc.*, 585 F.2d 557, 561 (2d Cir. 1978) ("it is clear that no private right of action arises

under [the Federal Trade Commission Act]").  Further, Plaintiffs' allegations involving the

EFTA are plainly time-barred, as the most recent alleged violation occurred in 2013 [*see* Compl.

¶ 39], placing Plaintiffs, who filed their Complaint on filed May 13, 2015, well outside the one-

year limitations period imposed by statute.  *See* 15 U.S.C. 1639m(g); *see also Apostolidis v. JP

---

Plaintiffs' allegations; yet, as described herein, Plaintiffs cannot survive even the more forgiving Rule 8 standard. As such, Plaintiffs have undoubtedly failed to state a claim for relief, necessitating dismissal of the Complaint.

[22] Each of the arguments under this section separately serves to defeat subject matter jurisdiction under the Plaintiffs' *Ex parte Young* theory.  *See* supra Section III.A.1; *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 88 (2d Cir. 2001) (noting that injunctive relief against a tribal official is available only when the "law under which [plaintiff] seeks injunctive relief …appl[ies] substantively to the [tribal] agency").

*Morgan Chase & Co.*, No 11-CV-5664 (JFB) (WDW), 2012 U.S. Dist. LEXIS 157733, at *15

(E.D.N.Y. Nov. 2, 2012) (applying one-year limitations period and dismissing EFTA claim with

prejudice).  For these reasons alone, Plaintiffs cannot state a claim under these statutes and these

claims – Counts One, Two, and Three of Plaintiffs' Complaint – should be dismissed in their

entirety under Rule 12(b)(6).

>    **2.**    ***Plaintiffs Have Failed to Allege Any Statutory Violations***

Even if the statutes identified in Plaintiffs' Complaint provided private rights of

actions, did not impose a fatal time limitation, and applied to the sovereign tribal Defendants,

Plaintiffs have nonetheless failed to allege the statutory violations necessary to articulate a claim

for relief under Rule 12(b)(6).  As an initial matter, Plaintiffs bring only general allegations

against the "Defendants," relying on perfunctory, conclusory statements in an effort to tie the

individual Defendants *en masse* to Plain Green's alleged misconduct.  [*See, e.g.,* Compl. ¶ 110

("Defendants' lending practices also violate the [VCPA's] bar on deceptive and unfair business

practices.").]  The Complaint thus wholly fails to offer "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged," as

required to properly state a claim.  *Iqbal*, 556 U.S. at 678.  Instead, Plaintiffs' statements amount

to nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.*

Compounding matters, as explained below, Plaintiffs' conclusory allegations fail

to articulate violations of any of the statutes cited in the Complaint.

>    a.    *Plaintiffs Have Failed to Allege a Violation of the FTCA*

Plaintiffs allege in their Complaint that the FTCA "bars the use of unfair methods

of competition" [*see* Compl. ¶ 87] and contend that Defendants violated the "unfair methods of

competition" prong of the FTCA in a variety of ways.  [*See* Compl. ¶¶ 88-91.][23]  However,

Plaintiffs have not alleged any concerns remotely related to *competition* that would give rise to

liability under this prong.  [*See generally* Compl.]  Indeed, Plaintiffs are not *competitors* of the

Defendants or non-party Plain Green; rather, they are *borrowers*.  Accordingly, Plaintiffs have

wholly failed to allege that Defendants have engaged in "unfair methods of competition" so as to

violate the FTCA.[24]

> b.     *Plaintiffs Have Failed to Allege a Violation of the CFPA*

Plaintiffs likewise have failed to allege a violation of the Consumer Financial

Protection Act ("CFPA").  Plaintiffs allege that Defendants engaged in certain conduct

constituting an "unfair, deceptive, or abusive act or practice," in violation of Sections 5531(a)

and 5536(a) of the CFPA.  [*See* Compl. ¶¶ 79, 80, 82, 83.]  However, a careful review of the

Complaint reveals that Plaintiffs have wholly failed to state a violation in this case:

- **_Compl. ¶ 79:_**  Plaintiffs' allegation that Defendants extended credit without examining

  the Plaintiffs' ability to repay fails to state a violation of the CFPA, as the Consumer

  Financial Protection Bureau ("CFPB") does not impose any requirement that lenders

  examine a borrower's ability to repay that would be applicable to this case.

---

[23] The FTCA provides:  "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45.  In this regard, there are two distinct prongs of the FTCA – the "unfair methods of competition" prong related to the Federal Trade Commission's enforcement of antitrust laws through its Bureau of Competition and the "unfair or deceptive acts or practices" prong related to consumers.  *See, e.g.,* Federal Trade Commission, *A Brief Overview of the Federal Trade Commission's Investigative and Law Enforcement Authority* (July 2008), *available at* https://www.ftc.gov/about-ftc/what-we-do/enforcement-authority.

[24] Plaintiffs also make two claims under the FTCA that Defendants' conduct is "deceptive" under the statute.  [*See* Compl. ¶¶ 90, 91.]  Plaintiffs make identical claims under the CFPA.  [*See* Compl. ¶¶ 82, 83.]  Because the CFPA borrowed from the FTCA, the standards for evaluating allegedly "deceptive" conduct are analogous under both statutes.  *See, e.g.,* CFPB Supervision and Examination Manual at 174 n.2 (2d ed. 2012), *available at* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.   As such, for the sake of brevity, the alleged "deceptive" behavior under the FTCA and CFPA are assessed together under the CFPA analysis below.

- ***Compl. ¶ 80:*** Plaintiffs' allegation that the loans' interest rates *combined with* Plain Green's purported "automatic access" to the consumer's bank account does not state a violation. As to the first allegation, it is well established that the CFPA does not extend to claims regarding allegedly usurious interest rates, as the CFPB has no authority to "establish a usury limit applicable to an extension of credit." 12 U.S.C. § 5517(o); *see also Illinois v. CMK Invs., Inc.*, No. 14 C 2783, 2014 U.S. Dist. LEXIS 169920, at *26 n.5 (N.D. Ill. Dec. 9, 2014) (finding that plaintiff could not bring a usury challenge because the CFPB has no authority in that area). And, as described more fully below, the plain language of the Agreements cited in the Complaint demonstrates that Plain Green does not have "automatic" access to the consumer's bank account; as such, this allegation should be disregarded. *See, e.g., Barnum,* 850 F. Supp. at 1232-33 (if "the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint").

- ***Compl. ¶¶ 82, 90:*** Plaintiffs' claim that "Defendants' representations of the loans as short term emergency loans is deceptive and false" is likewise contradicted by the loan Agreements themselves, which demonstrate that Plain Green provided extensive details about the loans, including a detailed loan repayment schedule. *See id.*; Ex. B.

- ***Compl. ¶¶ 83, 91:*** Plaintiffs' claim that "Defendants' representation of the loans as legitimate loans to credit rating agencies is deceptive" wholly fails to establish a violation. Indeed, this claim alleges that *the credit rating agencies* – and not the Plaintiffs/consumers – were deceived; however, a "deceptive" representation under the

CFPA is one that "misleads or is likely to mislead *the consumer*."  *See* CFPB Supervision and Examination Manual at 178 (2d ed. 2012).[25]

In light of the foregoing, Plaintiffs have wholly failed to articulate a violation of the Consumer Financial Protection Act.

      c.     *Plaintiffs Have Failed to Allege a Violation of the EFTA*

Plaintiffs claim that Defendants violated the EFTA when, "in connection with offering payday loans to consumers, Defendants [] conditioned the extension of credit on recurring preauthorized electronic fund transfers."  [Compl. ¶ 100.]  However, this allegation is plainly untrue.  The Agreements afford borrowers the option of authorizing electronic withdrawals *or* "mail[ing] to us a check or money order as payment for this Loan."  *See* Ex. B. Indeed, to complete the loan application process, the borrower must affirmatively request the option of repaying the loan electronically rather than by postal mail.  *See* Ex. B.  Thus, Plaintiffs' allegations that Plain Green "required" the borrowers to agree to electronic transfers, [*see* Compl. ¶¶ 20, 31, 41, 100], are entirely contradicted by the plain text of the loan Agreement, requiring dismissal of the EFTA claim in its entirety.  *See, e.g., Spinelli v. NFL*, 13 Civ. 7398 (RWS), 2015 U.S. Dist. LEXIS 40716, at *117-118 (S.D.N.Y. Mar. 27, 2015) (dismissing Plaintiffs' breach of contract claim when Plaintiffs' "conclusory allegations as to the terms of the contracts" were "contradicted by the plain language of their own [Agreements]").

      d.     *Plaintiffs Have Failed to Allege a Violation of the VCPA*

Plaintiffs assert only bare allegations that do not amount to a cognizable claim under the VCPA, 9 V.S.A. §§ 2451, *et seq*.  The VCPA prohibits "[u]nfair methods of

---

[25] A practice is "deceptive" if: "(1) The representation, omission, act, or practice misleads or is likely to mislead the consumer; (2) The consumer's interpretation of the representation, omission, act, or practice is reasonable under the circumstances; and (3) The misleading representation, omission, act, or practice is material."  CFPB Supervision and Examination Manual at 178 (2d ed. 2012).

competition in commerce and unfair or deceptive acts or practices in commerce," 9 V.S.A. § 2453(a), and provides a private right of action to consumers who show "either (1) reliance on a deceptive act in contracting for goods or services or (2) damages or injury from an unfair or deceptive act." *Dernier v. Mortg. Network, Inc.*, 87 A.3d 465, 481 (Vt. 2013) (citing 9 V.S.A. § 2461(b)). Under Vermont law, if a plaintiff "either fails to allege facts that meet the definitions of an unfair or deceptive act under 9 V.S.A. § 2453 or fails to demonstrate the prerequisites to a private action . . . under 9 V.S.A. § 2461(b), the case is properly dismissed." *Id.* (finding that Plaintiffs failed to establish the prerequisites for a private action and affirming dismissal of VCPA claim). Here, the Plaintiffs have wholly failed to meet either of these requirements.

Indeed, the Plaintiffs allege VCPA violations by stating merely that "Defendants are not licensed lenders in Vermont," that "Defendants charge interest in excess of the statutory maximum," and that "Defendants' lending practices also violate the [VCPA's] bar on deceptive and unfair business practices." [*See* Compl. ¶¶ 106, 109, 110.] However, these allegations do not suffice, as Plaintiffs wholly fail to articulate the extent to which either of them relied on these allegedly "unfair or deceptive acts" or that they suffered any injury as a result of these purportedly unlawful practices. [*See generally* Compl.][26]

Further, Plaintiffs have not sufficiently alleged facts demonstrating Defendants' "unfair" or "deceptive" acts. Plaintiffs cannot support a VCPA violation with the vague assertion that "Defendants' lending practices also violate the [VCPA's] bar on deceptive and unfair business practices" [*See* Compl. ¶ 110.] Plaintiffs do not identify the "lending practices" at issue or how they amount to "deceptive and unfair business practices" that purportedly violate

---

[26] For example, even if Plain Green were required to be licensed in Vermont in order to extend loans from the Tribe's Reservation, the Complaint contains no allegation that (i) Plaintiffs were aware of that licensing obligation, (ii) believed Plain Green to be so licensed and (iii) relied on that licensure in entering into a loan with the company. Similarly, there is no allegation that Plain Green's lack of licensure caused Plaintiffs any injury or damages.

the VCPA.  [*See generally* Compl.]  *Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Moreover, to the extent the contested lending practices referenced in the VCPA count mirror those described in the FTCA count, they similarly fail to state a claim.  The Vermont Legislature, in enacting the VCPA, expressly instructed courts to interpret the VCPA consistent with the manner in which federal courts construe the FTCA.  *See* 8 V.S.A. § 2453(b)("It is the intent of the Legislature that in construing subsection (a) of this section, the courts of this State will be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States").  Accordingly, the FTCA/VCPA claims rise – and in this case fall – together.

Finally, Plaintiffs' claim that Defendants charged interest in excess of Vermont's "statutory maximum" similarly fails to establish a violation of Consumer Protection Rule 104.05, [*see* Compl. ¶107], given that the Rule actually approves the collection of interest that is "expressly authorized by the agreement creating the obligation and is legally chargeable to the debtor" regardless of whether it is "legally chargeable under state law."  Rule CP 104.05.  Here, the loan Agreements expressly detail and authorize the collection of interest, *see* Ex. B, and these loans are entirely legal under Tribal law.

As such, Plaintiffs have failed to "demonstrate the prerequisites to a private action," necessitating dismissal of the VCPA count.  *See Dernier*, 87 A.3d at 481.[27]

---

[27] Defendants further preserve the following arguments.  *First,* the VCPA cannot be enforced against Defendants, as doing so would amount to an improper state regulation of on-reservation activity in contravention of well-established preemption and infringement principles.  *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980); *Williams*, 358 U.S. 217.  Here, Plaintiffs' action arises out of their loan Agreements, all of which formed on the Tribe's Reservation.  Indeed, is hornbook law that the "place of contracting is the place where occurred the last act necessary . . . to give the contract binding effect."  Restatement (Second) of Conflict of Laws, § 188 cmt. e (1971); 2 Williston on Contracts § 6:62 (4th ed.) ("[T]he place of the contract is the place where the last act

-29-

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully urge the Court to dismiss the

Plaintiffs' Complaint in its entirety.

Respectfully Submitted,

/s/ Andre D. Bouffard
Andre D. Bouffard, Esq.                    Jay A. Dubow (PA No. 41741) (*pro hac vice* pending)
Downs Rachlin Martin PLLC                  Richard J. Zack (PA No. 77142) (*pro hac vice* pending)
199 Main Street                            Matthew B. Homberger (PA No. 317064) (*pro hac vice* pending)
P.O. Box 190                               PEPPER HAMILTON LLP
Burlington, VT 05402-0190                  3000 Two Logan Square
802.863.2375                               Eighteenth & Arch Streets
                                           Philadelphia, PA  19103-2799
                                           215.981.4000

July 14, 2015                              *Attorneys for Defendants*

---

necessary to the completion of the contract was done."). In signing their Agreements, the Plaintiffs acknowledged that their loans formed on the Reservation, as Plain Green "do[es] not have a presence in Montana or any other state of the United States of America." *See* Ex. B. *Cf. Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299 (1978) (in considering whether a national bank could charge its out-of-state customers an interest rate permitted by the bank's home state, but higher than that sanctioned by the borrowers' state, rejecting the argument that the location of the bank should depend on the location of the borrower, for "[i]f the location of the bank were to depend on the whereabouts of each … transaction, the meaning of the term 'located' would be so stretched as to throw into confusion the complex system of modern interstate banking," noting that the Minnesota borrowers "were always free to visit Nebraska and receive loans in that State," and ultimately finding the bank to be "located" in Nebraska, where it makes its credit and finance charge assessments, such that Nebraska's usury law should govern). Thus, application of the VCPA to this on-reservation matter would be an affront to the "tradition of Indian sovereignty over the reservation" that is "reflected and encouraged in a number of congressional enactments demonstrating a firm federal policy of promoting tribal self-sufficiency and economic development." *See Bracker*, 448 U.S. at 143. In a similar vein, the "Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642-643 (1982)). *See also, e.g., Eric M. Berman, P.C. v. City of N.Y.*, 895 F. Supp. 2d 453, 474 (E.D.N.Y. 2012) (explaining that "a statute will be invalid per se if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question") (quotation marks and citation omitted). Relevant here, "if the transaction is consummated out of state, a state may not regulate it without violating the dormant Commerce Clause." *Id.* at 483. Accordingly, application of the VCPA to this matter – which arises from purely on-reservation conduct – would contravene long-established preemption / infringement principles and violate the Commerce Clause.

*Second*, the FTCA is inapplicable to Defendants in light of the fact that Plaintiffs have sought to sue them in their *official* capacity – *i.e.*, as officers of and directors of Plain Green – for equitable relief intended to run as a functional matter against Plain Green. [Compl., ¶2.] Plain Green, however, is a not-for-profit tribal corporation created exclusively for the purpose of generating funds for the Chippewa Cree people and, as such, is not subject to the FTCA. *See* 15 U.S.C. § 45 (empowering the Federal Trade Commission to bring FTCA actions against "corporations"); § 44 (deeming a corporation to include a "company … which is organized to carry on business for its own profit or that of its members"). Because the FTCA does not apply to Plain Green, it cannot be the basis for injunctive relief against Defendants. *See Garcia*, 268 F.3d at 88.

## CERTIFICATE OF SERVICE

I, Andre D. Bouffard, hereby certify that a true and correct copy of the foregoing was served with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Matthew B. Byrne
Gravel & Shea PC
76 St. Paul Street, 7th Floor
P.O. Box 369
Burlington, VT 05402-0369
(802) 658-0220
*Attorney for Plaintiffs*

Respectfully Submitted,

*/s/ Andre D. Bouffard*
Andre D. Bouffard , Esq.
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
Dated: July 14, 2015    802.863.2375
*and*
Jay A. Dubow (PA No. 41741) (*pro hac vice* pending)
Richard J. Zack (PA No. 77142) (*pro hac vice* pending)
Matthew B. Homberger (PA No. 317064) (*pro hac vice* pending)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
215.981.4000
*Attorneys for Defendants.*