UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 AUG -4  AM 9: 44

BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| JESSICA GINGRAS and<br>ANGELA C. GIVEN, on behalf of themselves<br>and all others similarly situated,<br>    Plaintiffs<br><br>          v.<br><br>JOEL ROSETTE, TED WHITFORD,<br>TIM MCINERNEY, THINK FINANCE, INC.,<br>TC LOAN SERVICE, LLC, KENNETH E.<br>REES, TC DECISION SCIENCES, LLC,<br>TAILWIND MARKETING, LLC, SEQUOIA<br>CAPITAL OPERATIONS, LLC and<br>TECHNOLOGY CROSSOVER VENTURES,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 1:15-cv-101<br><br><br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Nature of Action

1.      This is a class action for equitable relief against a payday lender that has taken

advantage of people who are struggling financially by charging extortionate interest rates and

engaging in illegal lending practices.  The First Amended Complaint adds two RICO claims for

racketeering and for collection of an unlawful debt and a claim for unjust enrichment.

2.      Plain Green, LLC ("Plain Green") purports to be a "tribal lending entity wholly

owned by the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation."

(https://www.plaingreenloans.com).  The officers and directors of Plain Green are sued in their

gravel &<br>shea | ATTORNEYS AT LAW<br>76 St. Paul Street<br>Post Office Box 369<br>Burlington, Vermont 05402-0369<br>A PROFESSIONAL CORPORATION

official capacity for equitable relief. *See Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024 (2014).

3.     Plain Green was created after existing payday lenders approached the Chippewa Cree Tribe of the Rocky Boy's Reservation (the "Tribe") and requested that the Tribe become involved in a payday lending scheme. In the United States, stringent laws have been enacted to prescribe how loans can be made and to prevent lenders from preying on indigent people. By involving the Tribe in the payday lending scheme, the lenders hoped to circumvent these laws and take advantage of legal doctrines, such as tribal immunity, to avoid liability for their actions. After its creation, Plain Green engaged in and continues to engage in a series of predatory loan practices that violate the law and that have injured numerous people who are struggling financially.

Parties

4.     Jessica Gingras is a citizen of Vermont who took out payday loans from Defendants.

5.     Angela Given is a citizen of Vermont who took out payday loans from Defendants.

6.     Defendant Joel Rosette is the Chief Executive Officer of Plain Green and is sued in his official capacity. Rosette is responsible for all operations of Plain Green. Article 7.6 of the current Articles of Organization of Plain Green, LLC grants Rosette the power "to manage the Company on a daily basis." Rosette also has the authority to "hire and terminate employees when necessary." *Id.* As a result, Rosette is responsible for and can stop the illegal activity described in this Complaint. In his position as Chief Executive Officer, Rosette has the authority



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

to prevent the credit reporting and illegal keeping of a loan balance for the Plaintiffs.  Rosette is a citizen of Montana and not a citizen of Vermont.

7.       Defendant Ted Whitford is a member of Plain Green's Board of Directors and is sued in his official capacity.  The Board of Directors has the power to fire the CEO of Plain Green and appoint a new CEO who will comply with the law.  Whitford is a citizen of Montana and not a citizen of Vermont.

8.       Defendant Tim McInerney is a member of Plain Green's Board of Directors and is sued in his official capacity.  The Board of Directors has the power to fire the CEO of Plain Green and appoint a new CEO who will comply with the law.  McInerney is a citizen of Montana and not a citizen of Vermont.

9.       Defendant Think Finance, Inc. ("Think Finance") is a Delaware corporation headquartered at 4150 International Plaza, Suite 400, Fort Worth, Texas 76109.  It formerly had the name ThinkCash, Inc.  Its principal place of business is outside the State of Vermont.

10.      Defendant Kenneth E. Rees is the former President and Chief Executive Officer and current Chairman of the Board of Think Finance.  He is currently the Chief Executive Officer of Elevate Credit, Inc.  Mr. Rees maintains a controlling interest and operational role in Think Finance.  He has personally designed and directed the business activity described in this Complaint.  He is a citizen of Texas and not a citizen of Vermont.

11.      Defendant TC Loan Service, LLC ("TC Loan") is a Delaware limited company located a 4150 International Plaza, Suite 400, Fort Worth, Texas 76109.  Its principal place of business is outside the State of Vermont.



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 3 -

12.     Defendant TC Decision Sciences, LLC ("TC Decision Sciences") is a Delaware limited liability company with offices at 4150 International Plaza, Suite 400, Fort Worth, Texas 76109.  Its principal place of business is outside the State of Vermont.

13.     Defendant Tailwind Marketing, LLC ("Tailwind Marketing") is a Delaware limited liability company with offices at 4150 International Plaza, Suite 400, Fort Worth, Texas 76109.  Its principal place of business is outside the State of Vermont.

14.     Defendant Sequoia Capital Operations, LLC ("Sequoia") is a Delaware limited liability company with its principal place of business at 3000 Sand Hill Road, Building 4, Suite 180, Menlo Park, California.  Its principal place of business is outside the State of Vermont.

15.     Defendant Technology Crossover Ventures ("Technology Crossover") is a Delaware corporation with offices at 528 Ramona Street, Palo Alto, California.  Its principal place of business is outside the State of Vermont.

Jurisdiction and Venue

16.     This Court has jurisdiction over this dispute pursuant to the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a), and the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act").  This Court has federal question jurisdiction under 28 U.S.C. § 1331.  The Court also has jurisdiction because this case is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1).   The Court has jurisdiction over this action pursuant to 18 U.S.C. § 1965.

17.     In addition, this Court has diversity jurisdiction because diversity of citizenship exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  Plain Green paid approximately $13 million to a loan servicer that participated in



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 4 -

its payday loan scheme.  These payments demonstrate that the amount of the payday loans is in excess of $13 million.

18.     Additionally, this Court also has jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

19.     This Court may enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202.

20.     Venue is proper in this Court under 18 U.S. C. § 1965 and 28 U.S.C. § 1391(b)(2).

<u>Facts</u>

21.     Plaintiffs Jessica Gingras and Angela Given fell victim to a sophisticated loan sharking operation that was specifically designed by the Defendants to ensnare unsuspecting victims.  Ms. Gingras and Ms. Given visited a bright and cheerful website, https://www.plaingreenloans.com, which promised to help them secure a loan.  This website informs visitors that with an easy online application, they can obtain an answer within a matter of seconds:



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 5 -

22.     The website proclaims that Plain Green is a better option than a payday loan:



23.     However, the cheerful cartoon characters do not tell the whole story. The reality
of Defendants' operation is far different than these shiny, innocent looking characters suggest.
The Plain Green enterprise was created when Kenneth Rees, the mastermind of this illegal
scheme, had his former business, ThinkCash, shut down by federal regulators. Rees was
undeterred by this setback and sought a new way to prey on unsuspecting people. Rees believed
that tribal immunity was the answer. So, Rees and his rebranded company, Think Finance,
approached the Chippewa Cree Tribe with a deal. Rees and Think Finance would provide
everything the Tribe needed to run a successful payday loan enterprise if the Tribe would let
them use the concept of tribal immunity to stymie state and federal regulators. In return, the
Tribe would receive 4.5% of the revenues.

### The Payday Lending Industry

24.     Payday lending takes advantage of people's need for money. While marketed as a
short term loan for emergency cash, the loans are usually not short term at all. A typical
borrower cannot repay the entire amount of the loan right away. Instead, to avoid default, the
borrower will often roll the loan over into another loan or take out a loan from an alternative



gravel &
shea    ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 6 -

lender. As interest continues to accrue on these loans, borrowers get stuck in a vicious debt trap from which they cannot escape. More of the borrowers' limited resources are diverted to interest on the payday loans, and borrowers struggle to meet their basic needs, such as food, shelter, and medical care.

25.    A typical payday loan has an extortionate interest rate of 200% or more. For example, Plain Green's website states that it lends at rates of 299.17 to 378.95% for first time borrowers. This type of loan causes people who are struggling financially to pay more in interest within one year than they originally borrowed in principal.

26.    Payday lenders justify these exceptionally high interest rates by pointing to the allegedly short term nature of the loans and the supposedly higher risk profile of poor borrowers.

27.    However, payday lenders, like Plain Green, do not examine the borrower's ability to repay the loan in a short period of time.

28.    Instead, payday lenders, such as Plain Green, create a repayment plan that is designed to extend the repayment period so that the lender can obtain substantial amounts from the high interest payments.

29.    The risk to payday lenders, like Plain Green, has been exaggerated because payday lenders take advantage of a variety of techniques to insure that they are repaid.

30.    For example, Plain Green creates financial arrangements so that it has automatic access to a borrower's bank account and can withdraw money without further action from the borrower. Defendants require that borrowers agree to Automatic Clearing House ("ACH") withdrawals from their accounts before extending credit. This financial arrangement substantially reduces the risk of non-payment.



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

31.     Plain Green also lends to people who have established periodic payments that are deposited into bank accounts, such as social security, disability, and veterans' benefits. After Plain Green has access to a borrower's bank account, it can simply remove these deposits from the account and insure that it is paid.

32.     Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney use various contractual provisions to keep these usurious practices from review. These contract provisions include phony choice of law provisions and provisions claiming tribal immunity. These contractual provisions are unconscionable and unenforceable.

33.     In some cases, Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney have blocked borrowers' access to their Plain Green accounts so that the borrowers cannot determine what they have paid. In these cases, these Defendants have refused to allow the borrowers to have access to the documents that purportedly create a binding contractual relationship between the borrowers and Plain Green.

34.     Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney also misrepresent that their loans are intended to be short term loans. For example, the Defendants state that "Plain Green loans are designed to help you meet your emergency borrowing needs." Contrary to these representations, the loan repayment schedule is not designed to be a short term loan.

35.     Rees and Think Finance through their control over Rosette, Whitford, and McInerney also misrepresent that their loans are legitimate loans by reporting loan information to credit rating agencies. When certain borrowers fail to make payments, even on illegal loans,



gravel &
shea  |ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 8 -

these Defendants report the failure to make a payment as if it were a failure to make a payment on a legitimate loan.

### Defendants' Efforts to Avoid Liability

36.     Defendants have gone to great lengths to avoid any responsibility for their actions and have created structures to try to prevent the proper application of law.

37.     In fact, Plain Green's very existence is an effort to avoid liability. Plain Green's predecessors in interest were not tribal entities. ThinkCash, Inc. (n/k/a Think Finance, Inc.) is a Delaware corporation. ThinkCash was formed in or around 2001 as a payday lender that operated over the Internet.

38.     To avoid state limits on interest rates, ThinkCash used a lending model known in the money lending industry as "rent-a-bank." Payday lenders that were prohibited by state laws from making extortionate loans partnered with a bank so that the bank was the nominal lender. At the same time, the payday lender would market, fund, and collect the loan. The payday lender also performed other lending functions. Because the banks were insulated from state laws by federal bank preemption, the payday lenders were able to use the rent-a-bank scheme to avoid state laws.

39.     During this time, First Bank of Delaware ("FBD") developed a specialty in providing banking services to payday lenders. FBD developed a relationship with ThinkCash that enabled ThinkCash to offer high interest rate loans and represent itself as "ThinkCash by First Bank of Delaware."

40.     ThinkCash and FBD continued this relationship despite enforcement and regulatory efforts to stop the activity. The FDIC instituted an enforcement action in 2008 that



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 9 -

culminated in a consent order. That consent order required FBD to end its relationship with a number of entities that had used it in the rent-a-bank scheme, including ThinkCash.

41.     FBD is no longer in business. In 2012, its shareholders voted to dissolve the bank. Soon thereafter, the United States Department of Justice announced a $15 million civil penalty to be paid by FBD.

42.     After its "rent-a-bank" scheme ended, ThinkCash developed plans for another law avoidance scheme called "rent-a-tribe."

43.     The concept behind the "rent-a-tribe" scheme is to take advantage of tribal immunity in the same way that ThinkCash attempted to take advantage of federal bank preemption. Under the scheme, the loans are made in the name of a lender affiliated with the tribe, but ThinkCash provides the marketing, funding, underwriting, and collection of the loans.

44.     Using the "rent-a-tribe" scheme, ThinkCash exploits its customer base to generate future loans. The first "rent-a-tribe" scheme that ThinkCash started involved Plain Green. ThinkCash transferred the existing ThinkCash loans and the ThinkCash customer database to Plain Green. In addition, ThinkCash designed the web platform used by Plain Green so that existing ThinkCash customers visiting the ThinkCash website would be routed automatically to the Plain Green website.

<u>Jessica Gingras's Payday Loans from Plain Green</u>

45.     Jessica Gingras has taken out a number of payday loans, but has an incomplete record of those loans.

46.     Defendants Rosette, Whitford, and McInerney have blocked Jessica Gingras's access to her Plain Green account. The following descriptions are based on her reconstruction of the loans from other information that is available to her and recently filed loan documents.



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 10 -

47.     Jessica Gingras took out a payday loan from FBDLoans.com on March 16, 2000 in the amount of $1,200.  She made a total of 30 payments.  The payments were $97.09, except that the last payment was $137.15.  She paid a total of $2,952.76.  FBDLoans.com transferred her loan to ThinkCash.  ThinkCash transferred her loan again to Plain Green.

48.     Defendants Rosette, Whitford, and McInerney gave Jessica Gingras a payday loan on July 6, 2011 for $1,050.  She made a total of 13 payments in the amount of $110.31.  She paid a total of $1,434.03.  The loan documents indicate that these Defendants charged her an annual percentage interest rate of 198.17%.

49.     Defendants Rosette, Whitford, and McInerney gave Jessica Gingras a payday loan on July 24, 2012 for $500.  She made two payments for $92.25 before she took out an additional loan for $2,400.  She then made payments in the amount of $131.90.  She paid a total of $4,801.  The loan documents indicate that these Defendants charged her an annual percentage interest rate of 371.82%.

50.     An outstanding balance remains on Ms. Gingras's loan.  Ms. Gingras is suffering irreparable injury because if she pays off the loan, she is likely to never see her funds returned from Defendants because they have claimed and likely will claim tribal immunity.  Moreover, Ms. Gingras is suffering irreparable injury because her loan continues to be reported to credit rating agencies as a legitimate and open loan.  This reporting negatively impacts her ability to obtain financing from other lenders.

51.     Ms. Gingras has suffered these injuries due to the illegal conduct of the Defendants described in this Complaint.  A declaration that the loans are illegal and an injunction ordering Defendants to correct their statements concerning the legal nature of these loans and to stop defaming the credit of Ms. Gingras will alleviate the infliction of irreparable harm.



gravel & shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

52.     Defendants Rosette, Whitford, and McInerney required Jessica Gingras to agree to ACH withdrawals from her bank account before it would give her a loan. Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney had automatic access to her bank account and continued to withdraw money from her account even after they had recouped the principal and a reasonable amount of interest.

53.     Jessica Gingras has never been to the Rocky Boy's Reservation. She applied for the loans at her residence in Vermont. Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney wired the money into her account in Vermont.

54.     Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney withdrew money from her account in Vermont by ACH withdrawal.

55.     Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney negotiated the purported and fraudulent contract with Jessica Gingras in Vermont.

56.     Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney directed their fraudulent representations to Jessica Gingras in Vermont.

57.     None of Plain Green's loan activity actually occurs on the Rocky Boy's Reservation. Plain Green uses third parties to carry out all of the administrative tasks. The third party performs all of these tasks off of the reservation.

58.     Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney have extended similar loans to thousands of people.



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

<u>Angela Given's Payday Loans from Plain Green</u>

59.     Defendants Rosette, Whitford, and McInerney gave Angela Given a number of payday loans.  Because they have blocked access to her Plain Green account, the following descriptions are based on Ms. Given's reconstruction of the loans from other information that is available to her and recently filed loan documents.

60.     Defendants Rosette, Whitford, and McInerney gave Angela Given a payday loan on July 19, 2011 for $1,250.  She made payments every two weeks for 26 weeks.  She paid off the loan on July 19, 2012 with a final payment of $197.67.  She paid a total of $2,968.75.  The loan documents indicate that these Defendants charged her an annual percentage interest rate of 198.45%

61.     Defendants Rosette, Whitford, and McInerney gave Angela Given a payday loan on July 24, 2012 for $2,000.  The payments were $138.12 every two weeks.  She made 14 payments and paid one lump sum in the amount of $1,801.73 on July 20, 2013.  She paid a total of $3,735.41.  The loan documents indicate that these Defendants charged her an annual percentage interest rate of 159.46%.

62.     Defendants Rosette, Whitford, and McInerney gave Angela Given a payday loan on May 20, 2013 for $250.  The payments were $56.43 every two weeks.  She made three payments of $56.43.  She paid off the loan with a lump sum payment of $203.50.  She paid a total of $372.34.  The loan documents indicate these Defendants charged her an annual percentage interest rate of 376.13%.

63.     Defendants Rosette, Whitford, and McInerney gave Angela Given a payday loan on July 17, 2013 for $3,000.  The payments were $119.68.  She made 25 payments.  With the 15th payment, she included an extra $600 toward the principal.  She still had five payments


gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 13 -

remaining when she called Plain Green.  The loan documents indicate that these Defendants charged her an annual percentage interest rate of 59.83%

64.       Angela Given has taken out other loans from Defendants and their predecessors in interest.  A predecessor entity gave Angela Given's borrowing history and contact information to Plain Green for the purpose of evading the law.

65.       Defendants Rosette, Whitford, and McInerney required Angela Given to agree to ACH withdrawals from her bank account before they would give her a loan.  They had automatic access to Ms. Given's bank account and continued to withdraw money from her account even after they had recouped the principal and a reasonable amount of interest.

66.       An outstanding balance remains on Ms. Given's last loan.  Ms. Given is suffering irreparable injury because if she pays off the loan, she is likely to never see her funds returned from Defendants because they have claimed and will claim tribal immunity.  Moreover, Ms. Given is suffering irreparable injury because her loan continues to be reported to credit rating agencies as a legitimate and open loan.  This reporting negatively impacts her ability to obtain financing from other lenders.

67.       Ms. Given has suffered these injuries due to the illegal conduct of the Defendants described in this Complaint.  A declaration that the loans are illegal and an injunction ordering Defendants to correct their statements concerning the legal nature of these loans and to stop defaming the credit of Ms. Gingras will alleviate the infliction of irreparable harm.

68.       Angela Given has never been to the Rocky Boy's Reservation.  She applied for the loans at her residence in Vermont.  Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney wired the money into her account in Vermont.

gravel &
shea ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 14 -

69.     Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney withdrew money from Ms. Given's account in Vermont by ACH withdrawal.

70.     Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney negotiated the purported and fraudulent contract with Ms. Given in Vermont.

71.     Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney directed their fraudulent representations to Ms. Given in Vermont.

<u>Additional Loans</u>

72.     On July 24, 2013, Patricia Ann Booth of Garnet Valley, Pennsylvania took a loan from Plain Green.  The amount of the loan was $1,000.  The annual percentage rate was 299.17%.  In less than a year, Ms. Booth paid finance charges of $1,847.96.  Ms. Booth's transactions were by ACH transfer.

73.     On April 11, 2013, Christopher Anthony Grahm of Moodus, Connecticut took a loan from Plain Green.  The amount of the loan was $1,200.  The annual percentage rate was 277.20%.  In a little over a year, Mr. Graham paid finance charges of $2,953.26.  Mr. Graham's transactions were by ACH transfer.

74.     On March 18, 2013, Lisa Flagg of Decatur, Georgia took a loan from Plain Green. The amount of the loan was $1,600.  The annual percentage rate was 219.38%.  In approximately a year and a half, Ms. Flagg paid finance charges of $3,659.09.  Ms. Flagg's transactions were by ACH transfer.


gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 15 -

75.     On December 17, 2011, Jessica Parm of Lafayette, Georgia took a loan from Plain Green.  The amount of the loan was $800.  The annual percentage rate was 354.20%.  In less than a year, Ms. Parm paid finance charges of $1,693.97.  Ms. Parm's transactions were by ACH transfer.

## RICO

### The Enterprise

76.     Plain Green, Great Plains Lending, and Mobiloans are all enterprises within the meaning of 18 U.S.C. § 1961(4).  As described below, Great Plains Lending and Mobiloans are also schemes to defraud that attempt to take advantage of tribal immunity by associating with Native American tribes.

77.     In or around March 2001, Defendants Rees and Think Finance approached the Chippewa Cree Tribe of the Rocky Boy's Reservation about forming a tribal entity to conduct an illegal lending scheme over the Internet.

78.     As part of those negotiations, Defendants Rees and Think Finance prepared a term sheet that reflected the essentials of the transaction (the "Term Sheet").  (Exhibit A.)  The scope of the enterprise was to be "on a nationwide basis through the internet." *Id.* at 1.

79.     The Term Sheet required that the Tribe adopt new law that would be favorable to Defendants Rees and Think Finance and the practice of illegal payday lending.  The Term Sheet required that: "The Tribe will adopt a finance code that is acceptable to all parties and provide for the licensing of an arm of the tribe to engage in consumer lending." *Id.* at 1.

80.     Defendants Rees and Think Finance intentionally and willfully dominated and still dominate the operations of Plain Green.  Other than the sovereignty that they attempted to purchase, Rees and Think Finance provided everything that the enterprise needed to operate.


gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 16 -

They provided software to determine whether a particular loan would be profitable.  They provided "risk management, application processing, underwriting assistance, payment processing, and ongoing customer service support coterminous with the software license agreement and market[ing] and/or identif[ication of] access channels for consumer loans on the Tribe's behalf (jointly 'Services')".

81.    In his positions as Chief Executive Officer and Chairman of the Board of Think Finance, Defendant Kenneth Rees intentionally and willfully dominated and still dominates the operations of Plain Green.  He established the plan to create Plain Green.  Defendant Rees also established the web of different companies designed to insulate Think Finance and himself from liability.

82.    In public comments, Defendant Rees has stated that he closed his former company, ThinkCash, because of the burden of complying with various state laws regulating and banning payday lending.   Rees created the Plain Green enterprise to take advantage of the doctrine of tribal immunity for the express purpose of trying to avoid these various state law restrictions.

83.    Defendants Rees and Think Finance defined precisely the type of loan Plain Green would offer to customers and the terms on which the loan would be offered.  They required the loans to be an installment loan with a maximum amount of $2,500 and a minimum repayment period of two months and a maximum repayment period of two years.  *Id.* at 1.

84.    The Term Sheet created by Rees and Think Finance dictated that Plain Green would charge interests rates that were illegal and usurious.  The interest rates were to vary from an annual percentage rate of 60% to 360%.  *Id.* at 1.



gravel &
shea  ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

85.     Defendants Rees and Think Finance required that Plain Green enter into a relationship with a U.S. bank to process loan transactions using the ACH system.  In addition, they required that Plain Green develop the capacity to process remote checks.  *Id.*at 2.

86.     Defendants Rees and Think Finance also directed Plain Green to establish a reserve account to "deal with any regulatory issues, lawsuits or other controversies involving the Tribe or its lending activities."  *Id.*at 2.  Defendants Rees and Think Finance, however, did not allow Plain Green to control the account.  Instead, the account was under the control of Jones & Keller, PC, a law firm that the Term Sheet required Plain Green to use.  *Id.*  at 3.

87.     Defendants Rees and Think Finance also arranged for 99% of the loans made by Plain Green to be purchased within two days by a Cayman Islands loan servicing company, GPL Servicing, Ltd. ("GPL").  GPL was incorporated in February 2011, a month before Think Finance agreed to work with the Chippewa Cree Tribe.  *Id.*  at 2.

88.     Defendants Rees and Think Finance established GPL in the Cayman Islands as an offshore haven for funds generated from the RICO enterprise.  The Cayman Islands has a well-known reputation for being an offshore tax and financial haven.

89.     Plain Green pays $100 for every approved borrower that Defendant Tailwind Marketing provides.  Defendants Rees and Think Finance have said that Tailwind Marketing is one of their entities.  Defendants Rees and Think Finance control and dominate Tailwind Marketing.

90.     Plain Green pays $5 a month for each active account that TC Decision Sciences administers.  TC Decision Sciences provides services like customer service, verification, and collections of customer accounts for Plain Green.  Defendants Rees and Think Finance control and dominate TC Decision Sciences.


gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

91.     The Term Sheet created by Rees and Think Finance required that Plain Green enter into an attorney client relationship.  It stated that: "Pepper Hamilton, LLP ("Pepper") and Jones & Keller, PC ("J&K") shall be counsel to the Tribe." *Id.* at 3.

92.     Defendants Rosette, Whitford, and McInerney entered into payday lending relationships with banks to process ACH transactions.  Those bank relationships enabled Plain Green to process ACH transactions for Ms. Gingras and Ms. Given.  The ACH transactions involved interstate commerce because they flowed through Defendants Rosette, Whitford, and McInerney in Montana, Plaintiffs in Vermont, other targets of the illegal lending scheme in Pennsylvania, Connecticut, and Georgia, and different intermediaries in different parts of the United States.

93.     Plain Green operates a website at https://www.plaingreenloans.com.  The website furthers the illegal financial transactions.  The website allows individuals to enter information to execute ACH wire transfers to the individual and to debit the person's account in the purported repayment of the illegal debt.  The website involves transactions in interstate commerce.

94.     Defendants Rees and Think Finance have established relationships with other Native American Tribes, including the Otoe-Missouria Tribe of Indians located in Red Rock, Oklahoma and the Tunica-Biloxi Tribe of Louisiana.

95.     The Otoe-Missouria Tribe maintains a payday lending website at the web address:  www.greatplainslending.com.  The lending front company is known as Great Plain Lending ("Great Plains").

96.     The Tunica-Biloxi Tribe maintains a payday lending website at the web address: www.mobiloans.com.  The lending front company is known as Mobiloans.



gravel & shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

97.     Great Plains and Mobiloans offer payday loans and other loans at interest rates that are more than double the legal limits set by states.   For example, Great Plains states on its website, under the title "Easy, Affordable Payments":  "With a Great Plains loan, you'll repay your loan with easy, affordable installment payments!  Your terms can range from 4 to 15 months, depending on your loan amount, and there's no prepayment penalty.  For example, a $500 loan at 448.78% APR, will have 12 bi-weekly payments of $101.29."

98.     Mobiloans offers "lines of credit" that include fixed finance charges and transaction fees.  The effective annual percentage rate for these loans is in the hundreds of percent a year.

99.     Plain Green is distinct from Defendants Rees and Think Finance.  Despite their actual control of the Enterprise, Defendants Rees and Think Finance have attempted to create the appearance of separate corporate forms and attempted to distance themselves from the enterprise through the execution of various legal documents.  Defendants Rees and Think Finance have also created a number of different subsidiaries like Defendants Tailwind Marketing, TC Decision Sciences, and TC Loan, to isolate and decrease any legal liability they may face.

<u>Racketeering Activity</u>

100.     Defendants Rees and Think Finance intentionally and willfully committed mail fraud and wire fraud through the use of ACH transactions to put money into Plaintiffs' and putative class members' bank accounts, by withdrawing funds from the accounts of Plaintiffs and putative class members while maintaining that those withdrawals were legitimate, by using the Internet to obtain consent to a fraudulent lending agreement and arbitration agreement, and by using the mail to collect payments and communicate with other parts of the Plain Green enterprise.


gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 20 -

101.    Defendant Rees and Think Finance had a plan or scheme to defraud thousands of

people in a financially challenged position by extending loans at illegally high and extortionate

interest rates, while at the same time claiming that the business was legitimate and in compliance

with the law.  To advance this scheme, Defendants Rees and Think Finance established

intermediaries like the Plain Green enterprise and Defendants Rosette, Whitford, and McInerney

to initiate wire transfers and mailings and to operate the website through which information was

collected from the victims of the scheme and purported agreements were exchanged with targets

of the scheme.  Defendants Rees and Think Finance hoped to avoid liability by falsely claiming

that they only provided services to Plain Green, when in reality they created the whole enterprise

and ran its operation through an assortment of subsidiaries and affiliates like Defendants

Tailwind Marketing, TC Loan, and TC Decision Sciences.

102.    Defendants Rees and Think Finance intended to defraud the victims of the

scheme.

103.    The use of the mail and wires was reasonably foreseeable because the form

documents that Defendant Rees and Think Finance created specifically called for the use of ACH

transactions or mail to make payments on the illegal loans.

104.    The racketeering activity is related and continuous.  The thousands of ACH

transactions served and continue to serve the central scheme created by Defendants Rees and

Think Finance to make illegal loans at extortionate interest rates.   The thousands of ACH

transactions served the common scheme of evading state laws, defrauding people in financially

challenged positions, and making profits.  The scheme to evade state laws was carried out by

Defendants Rees and Think Finance through their control and domination of Plain Green and an



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

assortment of subsidiaries and affiliates like Defendants Tailwind Marketing, TC Loan, and TC Decision Sciences.

105.    The use of the Plain Green website is also related and continuous.  The website was used and is used to deceive the victims into believing that the transactions were and are legitimate and consistent with the law.  The website collects personal data that is then used to take money from individuals who have fallen victim to the fraudulent scheme.  The website transmits and transmitted the lending and arbitration agreements to potential victims through the wires.

106.    The website also makes a number of misrepresentations.  For example, the website creates the impression that the loans are a good option for short term financing by making the claim that the loans are "less expensive than a payday loan."

107.    The website also makes a deceptive comparison between the interest rates paid to the Defendants and the payment of various late fees, such as reconnect fees from utilities or overdraft fees from banks.  The website compares its loans, which have repayment periods of months or years, to the reconnect and overdraft fees, which Defendants arbitrarily state have a 14 day repayment period.  This is not an accurate comparison.  The comparison makes the misleading claim that the interest rates charged by the Defendants are actually cheap.  This is false and misleading.

108.    Defendants Rees and Think Finance exercise control over and operate all elements of the website.  Their software determines which loan requests generated through the website will be accepted by Plain Green and which loan requests will be declined.

109.    Defendants Rees and Think Finance also perform the function of customer service, verification of accounts, and collection of debt on behalf of Plain Green.


gravel &
shea  ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

110.    Defendants Rees and Think Finance exercised control over the drafting of the lending and arbitration agreements through their close association with the attorneys drafting the documents.  Defendants Rees and Think Finance did so in order to ensure that victims of Plain Green would opt for ACH transfers to accept money and then Defendants would be able to take money from the victims' bank accounts.  Directing the targets of the fraudulent scheme to choose ACH transfers increases the chances of being able to take money from the targets of the scheme on a regular basis.  With an authorization to take money from the bank accounts, Defendants Rees and Think Finance did not have to rely on the targets sending money to them.  In addition, by creating an ACH authorization, Defendants Rees and Think Finance forced the targets of the fraudulent scheme to take many actions to stop the transfers.  The additional time needed to complete these tasks meant that Defendants Rees and Think Finance could extract additional periodic payments before their authorization was revoked.

111.    The Term Sheet reflects the control that Defendants Rees and Think Finance had over the use of ACH transactions as part of the scheme to defraud and the control that they exercised over the process.

112.    Defendants Rees and Think Finance used a lending agreement and an arbitration agreement as tools to further deceive Plaintiffs.  They used both the website and the ACH transactions in conjunction with each other to further the enterprise and the fraudulent schemes.

113.    The illegal activity started in or around March 2011 and has continued to the present.  Plain Green has used the above described ACH system and website for over four years.

114.    Had Defendants Rees and Think Finance not established and ran the corrupt enterprise of Plain Green, they would not have ensnared Plaintiffs in the illegal scheme and



gravel &
shea ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 23 -

obtained Plaintiffs' personal information, including access to their bank accounts, through Plain Green's website.

115.    Plaintiffs would not have had their bank accounts debited with illegal ACH transactions in excess of any legal amount of interest but for Defendants Rees and Think Finance establishing and running the corrupt enterprise of Plain Green.

116.    Plaintiffs were injured when Defendants Rees and Think Finance chose to defraud them and collect extortionate and usurious interest rates far in excess of the legal limit.  The withdrawal of money by Defendants Rees and Think Finance, part of the Racketeering activity and itself a predicate act, caused Plaintiffs' injury.

117.    Defendants Rees and Think Finance chose Plaintiffs as the intended targets for the enterprise and the racketeering activity.  Defendants Rees and Think Finance targeted Plaintiffs because they met sophisticated underwriting criteria that showed they badly needed money in the short term, but could pay off small amounts over the long term.  Defendants Rees and Think Finance used sophisticated computer algorithms to make that determination.

<u>The Arbitration Agreement</u>

118.    Another device that Defendants Rees and Think Finance have employed to try to avoid legal liability is a purported arbitration agreement, *see* Exhibit B to Mot. to Dismiss, (the "Purported Arbitration Agreement").  To be clear, none of the Plaintiffs in this action can access any of the records relating to their loans from Plain Green, including any purported arbitration agreement with Defendants.

119.    That Purported Arbitration Agreement is unenforceable because it is unconscionable, its purpose has been frustrated, and it is fraudulent.


gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 24 -

120.    The Purported Arbitration Agreement does not waive and attempts to preserve tribal immunity, and it claims to give all Defendants the ability to void any arbitration award by simply asserting tribal immunity after the fact.  Thus, the Purported Arbitration Agreement provides a remedy that is entirely illusory.

121.    For this reason alone, the Purported Arbitration Agreement is unconscionable.  There are, however, several additional indications that the agreement is unconscionable, including the following:

a.    Because the monetary damages suffered by each Plaintiff and other members of the Class is small, the individual incentive to bring an action is extremely limited, particularly since payday loans target people who have few resources to bring a claim.

b.    The doctrine of tribal immunity is a complicated legal doctrine with which the vulnerable people in this Class are unfamiliar.

c.    The terms of the purported contract are not easily discovered on the Plain Green website.  The terms of the Purported Arbitration Agreement change from when a person applies for the loan to when the terms are presented after the application process.  The terms are presented on a take it or leave it basis with no possibility of negotiation.

d.    The parties also have a great imbalance in negotiating leverage. Defendants have highly paid attorneys from Pepper Hamilton LLP and Hogan Lovells US LLP representing them in litigation.  Plaintiffs lack the resources to hire such esteemed counsel.


gravel & shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

e.   When there is a hint of litigation, Plain Green cuts off access to the borrower's account, so that the borrower can no longer access the documents that purport to structure the relationship with Plain Green.

f.   The Purported Arbitration Agreement has a provision for shifting costs. That provision effectively prohibits borrowers from making low dollar claims.

g.   Defendants will only agree to have arbitration where the borrower resides if the borrower reaffirms that tribal immunity applies.

122.   A dispute about who is the appropriate chief judge of the Tribe will frustrate the intent of the Purported Arbitration Agreement for a swift resolution.  The Purported Arbitration Agreement states that arbitration procedures are simpler and more limited than court procedures. However, the Purported Arbitration Agreement requires that certain matters be resolved by tribal courts.  Due to the corruption described below, there is no guarantee that Plaintiffs will receive a fair, complete, simple, or final resolution from the tribal courts.

123.   The Purported Arbitration Agreement is fraudulent and an important part of the scheme to defraud because it aims to deter victims from filing claims and to prevent federal court review of the illegal practices of the enterprise.  The Purported Arbitration Agreements makes several material misstatements of fact.

124.   First, the Purported Arbitration Agreement states that the Lender was Plain Green, LLC.  The Term Sheet reveals that this statement is false.  Plain Green only received 4.5% of revenues from 99% of the loans.  Exhibit A at 2.  Plain Green also did not provide any of the actual money that was loaned: "Hayes will arrange to provide funding to the Tribe to enable it to make each of the Loans."  *Id.* at 1.



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

125.    Second, the Purported Arbitration Agreement represented that the agreement "shall be governed by the law of the Chippewa Cree Tribe." However, the Term Sheet reveals that "law of the Chippewa Cree Tribe" was bought and paid for by non-members of the Tribe and was not "law" at all. Under the Term Sheet, Chippewa Cree law became whatever Rees and Think Finance dictated. Specifically, the Term Sheet stated that: "The Tribe will adopt a finance code that is acceptable to all parties and provide for licensing of an arm of the tribe to engage in consumer lending." *Id.* at 1. The Term Sheet further provided that the Tribe must "[r]evise the Tribal Credit Transaction Code to provide for a broader array of lending products." *Id.* at 3.

126.    Third, the Purported Arbitration Agreement states that "[n]either this Agreement nor the Lender is subject to the laws of any state of the United States." This statement is false because the loans involve off reservation activity and are thus subject to state law.

127.    Defendants Rees and Think Finance required that Defendants Rosette, Whitford, and McInerney adopt laws that were favorable to the Defendants Rees and Think Finance and the fraudulent scheme that they sought to perpetrate. Defendants Rosette, Whitford, and McInerney did adopt those laws.

128.    Defendants Rosette, Whitford, and McInerney restricted access to the laws of the Chippewa Cree Tribe by not making the law available to the general public through the Internet or other means. Organizations – like law school libraries – will not provide a copy of the Chippewa Cree law by remote access because Defendants Rosette, Whitford, and McInerney have not granted them the right to do so.

129.    Plaintiffs actually believed that the representations in the arbitration agreement and the lending agreement were true, including that their loans were legitimate "short term" loans, that Plain Green was the lender of the funds, and that Plain Green was a legitimate


gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 27 -

enterprise of the Chippewa Cree Tribe of the Rocky Boy's Reservation.  Plaintiffs also actually believed that their loans were legitimate and legal loans.

130.     Plaintiffs relied on these representations by failing to take legal action against the responsible parties and continuing to make payments on the illegal loans.

131.     The delegation provision of the Purported Arbitration Agreement is also fraudulent.  That provision attempts to include within the scope of the arbitration agreement "any issue concerning the validity, enforceability, or scope of this loan or the Agreement to Arbitrate." Defendants planned that delegation provision to shield Defendants' widespread fraudulent practices from federal court review.  Defendants furthered that plan by purporting to give the right to enforce an arbitration award to the tribal court.  The Purported Arbitration Agreement states that:  "The arbitrator will make written findings and the arbitrator's award may be filed with the tribal court.  The arbitration award . . . may be set aside by the tribal court upon judicial review."  By attempting to force any review of the arbitration into tribal court, Defendants Rees and Think Finance sought to prevent any federal court from reviewing any arbitration decision. By adding multiple steps prior to federal court review, Defendants Rees and Think Finance made any claim against them economically impossible to pursue and tried to ensure that no one could prevail against them.  Through the terms of their arrangement with Defendants Rosette, Whitford, and McInerney, Defendants Rees and Think Finance had the ability to control the Tribe's law and presumably could control actions taken by the tribal court.  As a result, any review by the tribal court would be nothing more than a sham.

### Governance of the Tribe and Plain Green

132.     The governance of the Tribe and Plain Green is in substantial flux and turmoil. Widespread corruption has gripped the Tribe.  There is a large federal investigation into bribery



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

at the Tribe, and several former tribal officials have been convicted of, or pled guilty to,
embezzlement and bribery.

133.    John Chance Houle (former Chairman of Plain Green), Tony James Belcourt,
Tammy Kay Leischner, James Howard Eastlick, Mark Craig Leischner, and Haily Lee Belcourt
were indicted in a 17 count indictment on April 18, 2013.  The indictment relates to the spending
of federal funds from the stimulus bill or the American Recovery and Reinvestment Act of 2009
("ARRA").  At the time, Houle was also a member of the Chippewa Cree Business Committee,
which purportedly runs the Tribe.  Houle was recently sentenced to five and a half years in prison
for his corruption.

134.    In connection with that case, Tony James Belacourt, as an agent of the tribal
government (CEO of the Chippewa Cree Construction Company), pled guilty to embezzlement
of federal funds, Tammy Kay Leischner pled guilty to theft from an Indian Tribal Government
receiving federal funds, and James Howard Easterlick pled guilty to the same offense.

135.    In a separate case, John Chance Houle pled guilty to embezzling funds from the
Chippewa Cree Rodeo Association.  In yet another case, John Chance Houle pled guilty to theft
from an Indian tribal organization, obstruction of justice, and impeding a grand jury investigation
related to embezzlement and kickback schemes involving the ARRA and Chippewa Cree Rodeo
Association funds.  Finally, in a different case, John Chance Houle pled guilty to income tax
evasion related to the illegal money that he received from his various embezzlement and bribery
schemes.

136.    Interestingly, John Chance Houle signed the Term Sheet with Think Finance that
established the Plain Green criminal enterprise.

137.    The federal investigation is continuing.



gravel & shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

138.     The corruption extends to Plain Green.  In an arbitration involving Plain Green, an arbitrator found that its former Chief Executive Officer, Neal Rosette, and its former Chief Operating Officer, Billi Anne Morsette, were involved in a fraudulent kick-back scheme with an entity called Encore Services, LLC ("Encore").  Encore manages payday lending business for the Tribe.

139.     In the scheme, Encore charged a 15% management fee of all gross revenues of the tribal online lending business, but immediately sent 5% of those revenues to Rosette and Morsette.  The purpose of the structure was to conceal the payments to Rosette or Morsette.

140.     It is presently uncertain who is actually the head of both the Tribe and the Tribal Judiciary.  Ken Blatt-St. Marks had been elected Chairman until the Business Committee dismissed him.  Before he was removed, Blatt-St. Marks fired the acting Chief Judge Micelle Ereaux and unilaterally appointed Duane Gopher.  In addition, Blatt-St. Marks also apparently terminated several other judges of the tribal courts.

141.     Based on the actions with respect to the Chief Judge and other serious charges of embezzlement, the Business Committee removed Blatt-St. Marks on March 2, 2015.

142.     Blatt-St. Marks won election for a fourth time on June 30, 2015, but it remains unclear if the Business Committee will attempt to remove him again.

143.     The Tribe has apparently tried to remove Blatt-St. Marks in the past.  In March 2013, the Business Committee fired him, but the United States Department of the Interior said that the Tribe had to reinstate him because he was protected by federal whistleblower statutes.

144.     The question of who is actually running the Tribe and its judicial system is in flux and is not likely to be resolved in the near future.



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

Unlawful Debt

145.    The debts incurred by Ms. Given and Ms. Gingras are unenforceable under Vermont law.  The interest rates on the debt that they incurred exceed the Vermont limit under 9 V.S.A. § 41a.  In fact, the interest charged was more than twice the interest rate allowed under Vermont law.

146.    Other jurisdictions have limits on the amount of interest that a lender may charge. *See, e.g.*, Conn. Gen. Stat. § 36a-563; Md. Code Ann. Com. Law§ 12-306; 209 Mass. Code Regs. § 26.01; N.C. Gen. Stat. § 53-173; N.H. Rev. Stat. Ann. § 399-A:12.

147.    The interest rates charged to class members exceed the rate caps in these states by more than twice the legal limit.

148.    Plain Green is in the business of lending money at a usurious rate.  The Term Sheet demonstrates that Plain Green's entire existence is for the purpose of lending at usurious rates with the goal of avoiding state laws related to usury.  Plain Green's website demonstrates that it is continuing in the business of lending at usurious rates.  The website states that Plain Green lends at rates of 299.17 to 378.95% for first time borrowers.  The Plain Green website details how its other loans range from 60% to 378.95% based on the amount of money taken out.

149.    Ms. Given and Ms. Gingras were injured in their property by the collection of unlawful debt in violation of 18 U.S.C. § 1962(c) in that Defendants took their money from them through ACH transactions to pay loans that were illegal under Vermont law.

150.    Each of the Defendants was associated with the enterprise through the collection of unlawful debt as described below.

151.    Think Finance created the entire enterprise and continues to run all aspects of the enterprise through a number of shell companies, including the companies listed below.



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 31 -

152.    At the direction of Think Finance and Rees, TC Decision Sciences provides customer service, verification, and collections of customer accounts.

153.    At the direction of Think Finance and Rees, Tailwind Marketing provides information on potential targets for the illegal lending scheme.  As discussed above, Defendants Rosette, Whitford, and McInerney pay Tailwind Marketing a fee for each of the targets it provides to the enterprise.

154.    Defendants Sequoia and Technology Crossover provide money that is used to start the illegal lending process.  They reap rewards through obtaining significant returns on the investment of their funds in the enterprise.  Sequoia and Technology Crossover were fully aware of the practices of the enterprise and knew that the practices violated the law.  Sequoia and Technology Crossover do not make investments without substantial due diligence into their investments, including legal review of the activities of their investment vehicle.

155.    Defendants Sequoia and Technology Crossover executed a series of agreements that documented their relationship with Defendants Rees and Think Finance.  They have concealed these arrangements through confidentiality clauses in the agreements.  Sequoia and Technology Crossover have refused to comment on their role in the RICO enterprise when people have asked questions about it.

<u>Class Allegations</u>

156.    Plaintiffs bring this action on behalf of themselves and as a class action under Fed. R. Civ. P. 23(a) and 23(b)(1), (b)(2), and (b)(3) on behalf of all members of the following Class:

All persons who took out payday loans from Defendants.



gravel & shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

157.     Plaintiffs do not know the exact number of class members because such information is in the exclusive control of Defendants.  Based on information and belief and information obtained from publicly available sources, Plaintiffs believe that there are thousands of members of the Class as a whole.  The exact number of class members and their identities is known or may be ascertained by Defendants.

158.     The Class is so numerous that joinder of all members is impracticable.

159.     There are questions of law and fact common to the Class, including:

a.     Whether Defendants have a practice of investigating a borrower's ability to repay a loan before extending credit;

b.     Whether Defendants set the periodic repayment amounts to maximize collection of interest on loans;

c.     Whether the interest rates charged by Defendants violate the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or practice[s]";

d.     Whether Defendants' other payday lending practices violated the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or practice[s]";

e.     Whether Plain Green, LLC is an enterprise;

f.     Whether Defendants Rees and Think Finance engaged and/or are engaging in a pattern of racketeering in violation of 18 U.S.C. § 1962(c);

g.     Whether Defendants Rees, Think Finance, TC Loan, TC Decision Sciences, Tailwind Marketing, Sequoia, and Technology Crossover engaged and/or are engaging in the collection of an unlawful debt in violation of 18 U.S.C. § 1962;



gravel & shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

  h. Whether Defendants are liable to Plaintiffs and other class members for disgorgement or other equitable remedies and, if so, in what amount; and

  i. Whether Defendants are liable to Plaintiffs and other class members for reasonable attorney's fees.

160. Plaintiffs are members of the Class.  Their claims are typical of the claims of the Class, and they will fairly and adequately protect the interests of the Class.

161. Plaintiffs are represented by counsel who is competent and experienced in handling *Ex Parte Young* cases, financial actions, and class action litigation.

162. The prosecution of separate actions by individual members of the Class would create a risk that adjudications with respect to individual members would, as a practical matter, be dispositive of the interests of the other members who are not parties to the individual adjudications, or it would substantially impair or impede the class members' ability to protect their interests.

163. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

164. A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records should exist. Prosecution of class member claims as a class action will eliminate the possibility of repetitious litigation.  Treatment of the controversy as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.



gravel & shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

This class action presents no difficulties in management that would preclude maintenance as a class action.

## COUNT ONE
### Consumer Financial Protection Act of 2010

165.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

166.    Defendants' extension of credit under the terms provided without examining the ability to repay is a violation of the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or practice[s]."

167.    The exorbitant interest rates charged by Defendants combined with automatic access to and deduction from a consumer's bank account are a violation of the CFPA's prohibition on "unfair, deceptive, or abusive act[s] or practice[s]."

168.    Defendants have falsely reported the status of consumer's illegal debts to credit rating agencies as if they were legitimate debts.

169.    Defendants' representation of the loans as short term emergency loans is deceptive and false.

170.    Defendants' representation of the loans as legitimate loans to credit rating agencies is deceptive.

171.    Defendants' violations of the CPFA are ongoing.

172.    As a result of Defendants' violations of the CFPA, Plaintiffs were damaged.

## COUNT TWO
### Federal Trade Commission Act

173.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

174.    The FTC Act bars the use of "unfair methods of competition."



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

175.    Defendants' extension of credit under the terms provided without examining the ability of borrowers to repay is a violation of the FTC Act's prohibition on unfair methods of competition.

176.    The exorbitant interest rates charged by Defendants combined with automatic access to a consumer's bank account are a violation of the FTC Act's prohibition on unfair methods of competition.

177.    Defendants' representation of the loans as short term emergency loans is deceptive and an unfair method of competition.

178.    Defendants' representation of the loans as legitimate loans to credit rating agencies is deceptive and an unfair method of competition.

179.    Defendants' violations of the FTC Act are ongoing.

180.    As a result of Defendants' violations of the FTC Act, Plaintiffs were damaged.

COUNT THREE
Electronic Funds Transfer Act

181.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

182.    Defendants are "persons" as this term is defined in Section 1005.2(j) of Regulation E, 12 C.F.R. § 1005.2(j).

183.    Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

184.    Section 1005.10(e)(1) of Regulation E, 12 C.F.R. § 1005.10(e)(1), provides that "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 36 -

under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account."

185.    The Official Interpretation of Regulation E, Section 1005.10(e)(1), 12 C.F.R § 1005.10(e)(1)-1, Supp. I, provides that creditors may not require repayment of loans by electronic means on a preauthorized recurring basis.

186.    Under Section 918(c) of EFTA, 15 U.S.C. § 1693o(c), every violation of EFTA and Regulation E constitutes a violation of the FTC Act.

187.    In numerous instances, in connection with offering payday loans to consumers, Defendants have conditioned the extension of credit on recurring preauthorized electronic fund transfers, thereby violating Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), and Section 1005.10(e)(1) of Regulation E, 12 C.F.R § 1005.10(e)(1).

188.    Defendants' violations of the EFTA are ongoing.

189.    The Defendants conditioned the loans on the acceptance of ACH as the transaction method.  If the loan recipient requested a paper check, the loan documents required the recipients to make a payment on the principal before receiving the principal.

190.    One example from the loan documents shows how the economic disincentives worked.  One loan was originated on July 16, 2013.  Under the purported loan documents, the lender did not send the funds until after the "Right of Recission" expired five days later.  Thus, the lender would have sent the check on July 24.  The lending documents state that the borrower should allow 7 to 10 business days for delivery of the check.  Thus, the check might arrive on August 5, 2013.



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

191.    The borrower, on the other hand, was required to make the first payment on August 2, 2013.  Allowing the same ten days for delivery, the borrower would have to send the check on July 23, 2013, about two weeks before the borrower received the principal.

192.    The purported lending documents also create significant penalties for a late payment.  If the borrower misses a single payment under the documents, the borrower owes the entire balance.  In addition, Defendants can take that entire balance immediately from a borrower's bank account by ACH transaction.  Thus, under the lending documents, the borrower must pay Defendants a payment before he or she receives the loan principal or Defendants can take the entire amount of the loan from the borrower's bank account even before the borrower receives the funds that are purportedly being lent.

193.    The choice is a false choice and in any event, the agreement conditions the borrower to accept transfers by ACH transfer, which is prohibited by the EFTA.

194.    By engaging in the violations of EFTA and Regulation E set forth in this Complaint, Defendants have violated the FTC Act.

195.    As a result of Defendants' violations of the EFTA, Plaintiffs were damaged.


COUNT FOUR
Vermont Consumer Fraud Act

196.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

197.    Under section 2481w of the Consumer Fraud Act, "it is an unfair and deceptive act and practice in commerce" for any lender to make a loan to a consumer unless that lender is in compliance with all provisions of 8 V.S.A. Chapter 73 (Licensed Lenders laws).  In relevant part, 8 V.S.A. § 2201 requires that all lenders obtain a license from the Vermont Department of


gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 38 -

Financial Regulation before loaning any money in Vermont. Any unlicensed lender providing payday loans to Vermont consumers is in violation of the CFA.

198. Defendants are not licensed lenders in Vermont.

199. It is a violation of the CFA to charge interest in excess of the legal rates set under 9 V.S.A. § 41a (generally 18-21% for the type of loan at issue here). *See* Consumer Protection Rule 104.05 (making any collection or attempt to collect interest in excess of the legally chargeable rate an unfair and deceptive act under section 2453(a) of the CPA).

200. Defendants' violations of the Vermont Consumer Fraud Act are ongoing.

201. Defendants charge interest in excess of the statutory maximum.

202. Defendants have falsely reported the status of consumers' illegal debts to credit rating agencies as if the debts were legitimate debts.

203. Defendants' representation of the loans as short term emergency loans is deceptive and false.

204. Defendants' representation of the loans as legitimate loans to credit rating agencies is deceptive and false.

205. Defendants' lending practices also violate the CFA's bar on deceptive and unfair business practices, including without limitation the mail and wire fraud described above, the creation of an enterprise to avoid the application of state law, the use of a front company to shield the true managers of the enterprise from liability, the use of economic incentives to force people to use ACH transactions to accept cash, the automatic deductions of funds from a personal account to make illegal and excessive interest deduction, and the use of sophisticated data mining to find targets for the illegal schemes.



gravel &
shea ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 39 -

COUNT FIVE
RICO § 1962(c)

206.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

207.    This Count is against Defendants Rees and Think Finance for damages and against Defendants Rosette, Whitford, and McInerney for equitable relief.

208.    Plain Green is an enterprise engaged in and whose activities affect interstate commerce.  Defendants Rees and Think Finance and Defendants Rosette, Whitford, and McInerney are associated with the enterprise.

209.    Defendants Rees and Think Finance agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs.  Defendant Rees and Think Finance agreed with the predecessors of Rosette, Whitford, and McInerney, official representatives of Plain Green and the Chippewa Cree Tribe.

210.    Pursuant to and in furtherance of their fraudulent scheme, Defendants Rees and Think Finance and Defendants Rosette, Whitford, and McInerney committed multiple acts of wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violations of 18 U.S.C § 1341.  These acts of wire fraud include the wires made into and out of the accounts of Plaintiffs in Vermont described in paragraphs 45 to 71, 85, and 92.  The wire fraud occurred thousands of additional times on a nationwide basis to other borrowers around the country.  The acts of wire fraud include the use of the Internet to transmit the lending agreement and the arbitration agreements as described in paragraphs 105, 110, 112, and 118 to 131.

211.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).


gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

212.     Defendants Rees and Think Finance and Defendants Rosette, Whitford, and McInerney have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity describe above, in violation of 18 U.S.C. § 1962(c).

213.     As a direct and proximate result of Defendants Rees and Think Finance and Defendants Rosette, Whitford, and McInerney's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their property in that they paid extortionate and illegal interest rates.  Plaintiffs have also been injured in that their credit ratings have been damaged and their ability to obtain credit has been damaged.

COUNT SIX
RICO (Illegal Debt)

214.     Plaintiffs reassert and incorporate by reference each of the above paragraphs.

215.     This Count is against Defendants Rees, Think Finance, TC Loan, TC Decision Sciences, Tailwind Marketing, Sequoia, and Technology Crossover for damages and against Defendants Rosette, Whitford, and McInerney for equitable relief.

216.     Defendants Rees, Think Finance, TC Loan, TC Decision Sciences, Tailwind Marketing, Sequoia, and Technology Crossover, as well as Defendants Rosette, Whitford, and McInerney, have collected an unlawful debt as that term is defined in 18 U.S.C. § 1961(6).

217.     Defendants Rees, Think Finance, TC Loan, TC Decision Sciences, Tailwind Marketing, Sequoia, and Technology Crossover, as well as Defendants Rosette, Whitford, and McInerney, are associated with the enterprise.

218.     Defendants Rees, Think Finance, TC Loan, TC Decision Sciences, Tailwind Marketing, Sequoia, and Technology Crossover, as well as Defendants Rosette, Whitford, and



gravel &
shea ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

McInerney, knowingly and willfully participated in the conduct of the affairs of the enterprise through the collection of unlawful debt.

219.    The debts incurred by Plaintiffs and other class members are unenforceable.

220.    Plain Green is engaged in the business of lending money at usurious rates of more than twice the legal limit in several states, including without limitation the State of Vermont.

221.    The usurious rates charged by Rees, Think Finance, TC Loan, TC Decision Sciences, Tailwind Marketing, Sequoia, and Technology Crossover, as well as Defendants Rosette, Whitford, and McInerney, were more than twice the enforceable limit.

222.    As a result of the unlawful collection of illegal debt, Plaintiffs have been injured. Plaintiffs have been injured in their property in that they paid extortionate and illegal interest rates.  Plaintiffs have also been injured in that their credit ratings have been damaged and their ability to obtain credit has been damaged.

COUNT SEVEN
Unjust Enrichment

223.    Plaintiffs reassert and incorporate by reference each of the above paragraphs.

224.    Defendants have been unjustly enriched by their continued possession of funds illegally taken from people in financially challenged positions.

225.    In equity and good conscience, those funds should be returned to the people who fell victim to Defendants' illegal scheme.



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

Claims for Relief

WHEREFORE, Plaintiffs respectfully seek the following relief:

A.  A declaration that Defendants have violated the Consumer Financial Protection Act of 2010;

B.  A declaration that Defendants have violated the Federal Trade Commission Act;

C.  A declaration that Defendants have violated the Vermont Consumer Fraud Act;

D.  A declaration that Defendants have violated the Electronic Funds Transfer Act;

E.  A permanent injunction barring Defendants from providing, collecting on, and servicing illegal loans;

F.  A permanent injunction barring Defendants from conditioning loans on agreeing to ACH withdrawals;

G.  Preliminary and temporary injunctive relief as the Court deems appropriate;

H.  Equitable surcharge seeking return of all interest charged above a reasonable rate and any financial charges associated with the loan;

I.  A constructive trust over funds obtained illegally;

J.  For Defendants other than Rosette, Whitford, and McInerney, actual damages;

K.  For Defendants other than Rosette, Whitford, and McInerney, tremble damages under 18 U.S.C. § 1964;

L.  An order awarding attorneys' fees and costs; and

M.  Any other relief the Court deems just and proper.


gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 43 -

## JURY DEMAND

**Plaintiffs demand trial by jury of all issues so triable.**

Dated:          Burlington, Vermont
                August 4, 2015

_____
Matthew B. Byrne, Esq.
Gravel & Shea PC
76 St. Paul Street, 7th Floor, P. O. Box 369
Burlington, VT  05402-0369
(802) 658-0220
mbyrne@gravelshea.com
For Plaintiff



gravel &
shea | ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

<1009858v3/MBB>

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

JESSICA GINGRAS and )
ANGELA C. GIVEN, on behalf of themselves )
and all others similarly situated, )
    Plaintiffs )
 )
           v. )    Docket No. 1:15-cv-101
 )
JOEL ROSETTE, TED WHITFORD, )
TIM MCINERNEY, )
    Defendants )

## CERTIFICATE OF SERVICE

    I, Matthew B. Byrne, Esq., attorney for Plaintiffs, certify that, on August 4, 2015, I

served Plaintiffs' Amended Complaint electronically by e-mail on Andre D. Bouffard, Esq.,

abouffard@drm.com.

    Dated:        Burlington, Vermont
                August 4, 2015

                             Matthew B. Byrne, Esq.
                             Gravel & Shea PC
                             76 St. Paul Street, 7th Floor, P. O. Box 369
                             Burlington, VT  05402-0369
                             (802) 658-0220
                             mbyrne@gravelshea.com
                             For Plaintiffs

gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION