# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF VERMONT

JESSICA GINGRAS and ANGELA C. GIVEN,
on behalf of themselves and all others similarly
situated,

                Plaintiffs,

     v.

JOEL ROSETTE, TED WHITFORD, TIM
MCINERNEY, THINK FINANCE, INC., TC
LOAN SERVICE, LLC, KENNETH E. REES,
TC DECISION SCIENCES, LLC, TAILWIND
MARKETING, LLC, SEQUOIA CAPTIAL
OPERATIONS, LLC and TECHNOLOGY
CROSSOVER VENTURES,

                Defendants.

Docket No. 1:15-cv-101

## DEFENDANTS THINK FINANCE, INC., TC LOAN SERVICE, LLC, TC DECISION SCIENCES, LLC, AND TAILWIND MARKETING, LLC'S MOTION TO DISMISS, FILED IN THE ALTERNATIVE TO THEIR MOTION TO COMPEL ARBITRATION

Defendants Think Finance, Inc., TC Loan Service, LLC, TC Decision Sciences, LLC, and Tailwind Marketing, LLC, by and through counsel of record, hereby move this Court for an order, pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(7), and 19 of the Federal Rules of Civil Procedure, dismissing the First Amended Complaint in the above-referenced action in its entirety and with prejudice, and for other and further relief as this Court may deem just and proper. In support of this motion, the Think Defendants submit the following Memorandum of Law.

<u>**MEMORANDUM OF LAW**</u>

## I.      INTRODUCTION

Plaintiffs Jessica Gingras and Angela C. Given entered into agreements for short-term loans with Plain Green, LLC ("Plain Green"), a lender wholly owned and operated by a federally recognized Indian tribe, the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation ("Chippewa Cree Tribe").  Plaintiffs bring this putative class action alleging that the loans they obtained were illegal under the laws of several states, including their home state, Vermont. However, instead of suing Plain Green directly, Plaintiffs have brought suit against Think Finance, Inc. ("Think Finance"), TC Loan Service, LLC ("TC Loan Service"), TC Decision Sciences, LLC ("TC Decision Sciences"), and Tailwind Marketing, LLC ("Tailwind Marketing") (collectively, the "Think Defendants"), companies that provided various services to Plain Green.

The Think Defendants have moved to compel arbitration because Plaintiffs' loan agreements require them to arbitrate claims not only against their lender, but also against their lender's servicers and agents.  The Think Defendants respectfully request that the Court first decide their motion to compel arbitration.  However, they recognize that several other Defendants in this action are bringing motions to dismiss and that, should the Court elect to reach those motions, it may be more efficient for the Court to consider all Defendants' motions to dismiss at once.[1]  Accordingly, the Think Defendants submit this motion to dismiss to the First Amended Complaint ("FAC"), in the alternative, for the reasons explained below.

First, Plaintiffs have failed to plausibly allege that the Think Defendants have engaged in unlawful conduct.  Second, Plaintiffs' group pleading allegations are insufficient to state any claim against TC Loan Service, TC Decision Sciences, and Tailwind Marketing.  Third, Plaintiffs fail state to a claim under the Racketeer Influenced and Corrupt Organizations Act. Fourth, Plaintiffs' claims should be dismissed on the grounds set forth in Defendants Joel

---

[1] Moving to dismiss does not result in a waiver of the right to arbitrate. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888 (2d Cir. 1985) ("Rather than immediately seeking arbitration in response to [Plaintiff's] complaint, defendants moved to dismiss.  Such a motion alone, however, does not waive the right to arbitrate.").

Rosette, Ted Whitford, and Tim McInerney's Memorandum of Law in Support of their Motion to Dismiss (the "Plain Green Defendants' Motion to Dismiss"), including deficiencies in Plaintiffs' pleading of their state and federal claims, failure to join an indispensable party, and lack of standing to obtain injunctive and declaratory relief.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts demonstrating a plausible claim for relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  In analyzing the complaint, a court is first required to "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (citation omitted).  The remaining factual allegations must "provide the grounds of [the] entitle[ment] to relief," and this "requires more than labels and conclusions. . . .  Factual allegations must be enough to raise a right to relief above the speculative level . . . [.]" *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

"[A]ll claims sounding in fraud—including those under RICO—must comply with Rule 9(b)'s heightened pleading standard."  *Boritzer v. Calloway*, No. 10 Civ. 6264(JPO), 2013 WL 311013, at *4 (S.D.N.Y. Jan. 24, 2013).  That standard requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197-98 (2d Cir. 2013) (internal quotation marks and citations omitted).  As Plaintiffs' claims under the Consumer Financial Protection Act ("CFPA"), Federal Trade Commission Act ("FTCA"), Vermont

Consumer Fraud Act ("VCFA"), and Racketeer Influenced and Corrupt Organizations Act ("RICO"), sound in fraud, they should be analyzed under Rule 9(b).[2]

## III.  ARGUMENT

### A.    Plaintiffs Do Not Plead A Plausible Claim as to the Think Defendants.

Plaintiffs' core theory—that defendants Kenneth Rees and Think Finance partnered with the Chippewa Cree Tribe and Plain Green to create a "scheme" to evade state usury law—does not demonstrate a plausible claim for relief.  The facts pleaded instead lead to a more mundane conclusion, entirely consistent with lawful conduct:  the Think Defendants' provision of services to Plain Green is explained by the usual relationship between a lender and its service providers.

Factual allegations that are consistent with, and better explained by, lawful conduct fail to state a plausible claim.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.  Thus, in *Twombly*, a conspiracy to restrain trade was not plausible because the companies' "parallel conduct" was readily explained by natural market forces.  *Twombly*, 550 U.S. at 569.  And in *Iqbal*, allegations that government officials detained thousands of Arab Muslim men did not plausibly establish discrimination in light of the "more likely explanation[]" that a lawful policy directing the arrest and detention of individuals connected to the September 11 attacks would have a disparate impact on Arab Muslims.  *Iqbal*, 556 U.S. at 681-82.  As the Supreme Court explained in both cases, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

To assess plausibility, a court must first set aside conclusory statements and rhetoric.  *Bigio*, 675 F.3d at 173.  Here, this requires scrubbing the FAC of the self-serving sinister gloss Plaintiffs have applied to it.  Plaintiffs allege that Rees and Think Finance partnered with the Chippewa Cree Tribe to create a "scheme" to circumvent state usury laws.  (FAC ¶¶ 23, 37, 43.)  Plaintiffs allege that as part of the "scheme," "loans are made in the name of a lender affiliated

---

[2] Plaintiffs also assert claims against the Think Defendants for violation of the Electronic Funds Transfer Act ("EFTA") and unjust enrichment.

with the tribe," but Think Finance actually provides the marketing, funding, underwriting, and collection of loans to that lender, Plain Green. (*Id.* ¶ 43; *see id.* ¶ 101 ("Defendants Rees and Think Finance had a plan or scheme to defraud thousands of people in a financially challenged position by extending loans at illegally high and extortionate interest rates, while at the same time claiming that the business was legitimate and in compliance with the law.").) As a result, they assert that the loans made to consumers by the "corrupt enterprise" of Plain Green are "illegal" and "usurious." (*Id.* ¶¶ 51, 67, 84, 114.)

In support of their theory, Plaintiffs allege that Rees and Think Finance came to "control" and "dominate" Plain Green. (*Id.* ¶¶ 52, 80.) The FAC is replete with allegations of Think Finance's control over Mr. Rosette, Mr. Whitford, and Mr. McInerney—who are sued in their official capacities—as well as Plain Green. (*See id.* ¶¶ 31-35, 52-56, 58, 68-71, 80, 99, 104, 108, 110, 152-153.) Plaintiffs assert, for example, that Rees and Think Finance obtained automatic access to Ms. Gingras's bank account through their "control over" Rosette, Whitford, and McInerney. (*Id.* ¶ 52.)

Plaintiffs' characterization of the business relationship between Think Finance on the one hand, and Plain Green and the Chippewa Cree Tribe on the other, as an illicit "scheme" is no more than a conclusory allegation and rhetorical embellishment. Plaintiffs' allegations of control, made in an attempt to bolster their characterization, are similarly conclusory. Under the required analysis for a motion to dismiss, such allegations must be set aside in the Court's consideration of the FAC. *See Bigio*, 675 F.3d at 173. Additionally, courts routinely hold that unembellished allegations of control do not plausibly state a claim. *See, e.g.*, *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410 (MKB), 2014 WL 4677120, at *18-19 (E.D.N.Y. Sept. 19, 2014) (concluding that plaintiff failed to allege any claims against parent corporation defendant where it was only alleged to have "through its subsidiaries, engage[d] in the servicing and origination of mortgage loans"); *Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677-ER-LMS, 2014 WL 815244, at *18-19, 24 (S.D.N.Y. Mar. 3, 2014) (finding that plaintiffs' conclusory allegations

that defendant directed, controlled, and formulated the alleged misconduct did not amount to a viable claim).

A court must next consider whether the remaining factual allegations state a claim. The thrust of Plaintiffs' allegations as to the Think Defendants are that Plain Green paid fees to Tailwind Marketing to identify potential borrowers and to TC Decision Sciences for account administration services. (FAC ¶¶ 89-90, 152-153.) The FAC is silent as to any role played by TC Loan Service. Think Finance is alleged to operate Plain Green's website and provide underwriting software, risk management, application processing, underwriting assistance, payment processing, marketing, customer service, verification of account, and collection of debt. (*Id.* ¶¶ 80, 108-09.)

These remaining allegations show that when Plaintiffs' labels and conclusions are set aside, the FAC alleges that Plain Green is the lender of the challenged loans and that the Think Defendants are mere service providers. Plaintiffs' claims are thus implausible because their allegations of the Think Defendants' provision of services demonstrate nothing more than that the Think Defendants engaged in perfectly lawful acts. Supplying marketing services or designing or hosting a website are routine commercial activities, not intrinsically culpable conduct. The Think Defendants merely provide to Plain Green certain services that many other lenders routinely outsource.

For example, the term sheet that Plaintiffs attach to the FAC, far from demonstrating a plan to engage in unlawful conduct, simply confirms that the relationship between Think Finance and the Chippewa Cree Tribe was a traditional and lawful commercial agreement. (*See* FAC Ex. A.) Contrary to the FAC's characterization of the obligations in the term sheet as conditions and requirements set by Think Finance, (*see* FAC ¶¶ 83-88), the term sheet reveals nothing more than a standard, arms-length business transaction between Think Finance and the Chippewa Cree Tribe.[3] (*Id.* Ex. A.) The term sheet sets out the parameters for a formal agreement between the

---

[3] Allegations that are belied by a document attached to the complaint are not to be credited. *See Burwell v. Peyton*, No. 5:12-CV-166, 2013 WL 1386290, at *3 (D. Vt. Apr. 4, 2013) (allegations

(Footnote continues on next page.)

sf-3572638

two parties in which Think Finance provides services to the Tribe's entity—Plain Green—and the Tribe undertakes various obligations in return. (*Id.*)

The market for consumer financial services is filled with additional examples in which various aspects of a transaction are performed by different parties who specialize in providing that particular function. That is simply how the industry (like many other industries) works. As one example, in *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1360-61 (D. Utah 2014), the plaintiff challenged an agreement between two banks and a third party to provide financing for consumer purchases in which the banks funded the loans, held the receivables for two days, and then sold them to the same third party, which also facilitated the loans for the banks. Although the plaintiff, like the Plaintiffs here, derided the parties' arrangement as a "rent-a-charter agreement," *id.* at 1363 n.2, the court concluded that it more closely resembled legitimate credit card programs supervised by the FDIC, *id.* at 1367. The FDIC explains that in such programs a third party will generally solicit prospective credit card customers and provide approved applicants with a credit card. FDIC Credit Card Activities Manual, Ch. XIV, https://www.fdic.gov/regulations/examinations/credit_card/ch14.html. The bank may hold or securitize the receivables, but the third party often holds them. *Id.* In addition to solicitation, underwriting, and administration of the program, the third party may also provide such services as collections, customer service, and processing. *Id.* ("[T]he bank sheds itself of a majority of the day-to-day operational duties associated with operating the program in most cases."). As the *Sawyer* court rightly recognized, a bank's shifting of services to third parties is contemplated by the FDIC and is not illegal merely because a plaintiff characterizes it as such.

Plaintiffs' remaining factual allegations go no further in suggesting that the FAC describes anything other than lawful conduct. First, Plaintiffs attempt to cast the legitimacy of

_____

(Footnote continued from previous page.)

contradicted by materials attached to the complaint are not to be credited); *IBEW Local 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*, No. 11-CV-222, 2012 WL 928402, at *8 (D. Vt. Mar. 19, 2012) (allegations contradicted by documentary evidence not entitled to assumption of truth).

the Think Defendants' provision of services to Plain Green into doubt by suggesting that the Chippewa Cree Tribe does not have the right to lend at rates above Vermont's usury cap. (*See, e.g.*, FAC ¶ 3 ("By involving the Tribe in the payday lending scheme the lenders hoped to circumvent these laws and take advantage of . . . tribal immunity[] to avoid liability for their actions.").) Crucially, however, there are no allegations in the FAC that it was actually unlawful for the Chippewa Cree Tribe to make loans at the interest rates it did. Plaintiffs' attempt to portray the Think Defendants as service providers to an unlawful lender thus fails.

Second, Plaintiffs allege that Think Finance uses various practices to evade the law, including providing consumers with the option to use electronic transfers to receive loan funds and make payments on loans, (*id.* ¶ 110), incorporating an arbitration provision into the loan agreements (from which customers could opt out), (*id.* ¶ 118), and using separate entities to provide services to the Tribe, (*id.* ¶ 99). The option to use ACH transactions is a customer friendly business practice, and arbitration provisions are ubiquitous in consumer contracts. The fact that the Think Defendants provide—and receive fees for—services through several separate entities is also perfectly consistent with lawful conduct. Businesses often divide their operations into separate entities for a host of legitimate business reasons. Plaintiffs have not alleged facts excluding these explanations as a basis for the practices cast as suspicious in the FAC.

The normal relationship between lenders and service providers, driven by lender demand, thus provides an "obvious alternative explanation" that more likely explains the conduct alleged in the FAC than the Plaintiffs' assertion of a conspiracy to evade state law. *Iqbal*, 556 U.S. at 682. As "[a]ll of the facts Plaintiffs have presented are consistent with both their theory of liability and this innocent alternative . . . the Plaintiffs have not met their burden to do '[s]omething more' to 'render their allegations plausible within the meaning of *Iqbal* and *Twombly*.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998-99 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).

Indeed, courts regularly conclude that complaints similarly predicated upon regular, lawful business activity are not plausible. For example, the plaintiffs in *Eclectic Properties*

brought RICO and RICO conspiracy claims after franchise businesses, owned by the defendants, stopped paying rent on the numerous properties the plaintiffs had purchased from the defendants. 751 F.3d at 993-95. The plaintiffs contended that the defendants conspired to have the franchises pay inflated rents so that the properties would appear far more valuable to third parties. *Id*. at 994.

The Ninth Circuit first explained that "[w]hen companies engage in sale-leaseback transactions that are facially legitimate, pay rent and operate legitimate businesses for years thereafter, and otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Id*. at 997-98. In support of their claims of fraud, the plaintiffs had alleged that the properties had significantly increased in value from their true value at the time the defendants originally purchased them, but the plaintiffs could not, in turn, sell the properties at that increased value. *See id*. at 998. The court concluded that this and other allegations failed to meet the required level of specificity, as they did nothing "to exclude a plausible and innocuous alternative explanation" that properties tend to increase in value over time and that the plaintiffs tried to sell the properties during a national recession. *Id*. at 998.

As in *Eclectic Properties*, Plaintiffs here fail to allege facts "tending to exclude the possibility that the alternative explanation is true," *id*. at 997; that is, that the FAC demonstrates a normal set of relationships among a lender and its service providers, which the parties set up precisely for the purpose of complying with the law. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108.[4] Although Plaintiffs allege a "scheme" and a "corrupt enterprise," these mere labels and conclusions do not transform their allegations of lawful conduct into plausibly illegal

---

[4] *See also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) (concluding that plaintiffs failed to plead plausible RICO conspiracy claims where the defendants' conduct was "equally indicative of rational independent action as it is concerted, illegitimate conduct"); *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013) ("Where, as here, the complaint alleges facts that are merely consistent with liability . . . as opposed to facts that demonstrate discriminatory intent . . . , the existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made.").

conduct. Plaintiffs need facts suggesting illegality and they offers none. The FAC therefore "stops short of the line between possibility and plausibility" and should be dismissed. *Twombly*, 550 U.S. at 567.

**B.      Plaintiffs Fail to State a Claim Against TC Loan Service, TC Decision Sciences, and Tailwind Marketing.**

Plaintiffs' claims against TC Loan Service, TC Decision Sciences, and Tailwind Marketing fail for the additional reason that Plaintiffs fail to meet basic pleading requirements.

The allegations in the FAC related to these entities are largely allegations of the conduct of all the Defendants collectively, including four individuals and three additional entities. Plaintiffs assert this generic group pleading in their allegations of the basis for every claim:

- CFPA and FTCA: Plaintiffs allege that "Defendants" have extended credit to consumers without examining the ability to repay, charged exorbitant interest rates combined with automatic access to and deduction from a consumer's bank account, falsely reported the status of consumers' debts, and made false representations regarding the loans at issue. (FAC ¶¶ 166-170, 175-178.)

- EFTA: "Defendants" allegedly conditioned the issuance of loans on acceptance of ACH as the transaction method. (*Id.* ¶ 189.)

- VCFA: Plaintiffs allege that "Defendants" violated the VCFA by lending without licenses above the legal rates set by Vermont law. (*Id.* ¶¶ 197-199, 201.) "Defendants" are again alleged to have falsely reported the status of consumers' debts, and made false representations regarding the loans. (*Id.* ¶¶ 202-204.) Finally, "Defendants" are also alleged to have committed numerous deceptive and unfair business practices, including mail and wire fraud, creation of an enterprise to avoid the application of state law, the use of a front company to "shield" the "true managers of the enterprise from liability," the use of economic incentives to "force" people to use ACH transactions to accept cash, the automatic deduction of funds from

borrowers' accounts to make "illegal and excessive interest deduction," and "the use of sophisticated data mining to find targets for the illegal schemes." (*Id.* ¶ 205.)

- RICO (Illegal Debt): Defendants allegedly "collected an unlawful debt" and charged "usurious [interest] rates." (*Id.* ¶¶ 216, 221.)

- Unjust enrichment: "Defendants" are alleged to have been "unjustly enriched by their continued possession of funds illegally taken from people in financially challenged positions." (*Id.* ¶ 224.)

"This sort of 'group pleading,'" however, "fails to put [TC Loan Service, TC Decision Sciences, and Tailwind Marketing] on notice of the specific allegations against [them]." *Targum v. Citrin Cooperman & Co.*, No. 12 Civ. 6909(SAS), 2013 WL 6087400, at *6 (S.D.N.Y. Nov. 19, 2013). In *Franzone v. City of New York*, No. 13-CV-5282 (NG), 2015 WL 2139121, at *7 (E.D.N.Y. May 4, 2015), the court concluded that the plaintiffs' complaint did not comply with Rule 8 because of "its collective treatment of 'defendants.'" Here, Plaintiffs' "collective treatment" of TC Loan Service, TC Decision Sciences, and Tailwind Marketing likewise fails to meet Rule 8 and put these defendants on notice of the basis of the claims asserted against them. *See Amiron Dev. Corp. v. Sytner*, No. 12-CV-3036(JS)(ETB), 2013 WL 1332725, at *5 (E.D.N.Y. Mar. 29, 2013) (dismissing claims against particular defendants where complaint only referred to actions taken by the defendants collectively as insufficient under both Rule 8 and the heightened standard of Rule 9(b)); *Zalewski v. T.P. Builders, Inc.*, No. 1:10-CV-876 (GLS/RFT), 2011 WL 3328549, at *5 (N.D.N.Y. Aug. 2, 2011) ("The court will not accept conclusory allegations, conjecture, or vague group pleading to serve as a basis for liability. The same goes for the relief and damages sought."). Such collective treatment is "especially inadequate under Rule 9(b)'s heightened pleading standard." *Targum*, 2013 WL 6087400, at *6.

Plaintiffs' individualized allegations as to TC Loan Service, TC Decision Sciences, and Tailwind Marketing serve them no better. The FAC is bereft of any explanation as to what role, if any, TC Loan Service had in the conduct challenged in the FAC. It ought to be dismissed. *See Franzone*, 2015 WL 2139121, at *7. As to TC Decision Sciences, Plaintiffs allege only that it

receives $5 per month for every account it "administers," including customer service, verification, and collections of customer accounts. (*Id.* ¶¶ 90, 152.) As to Tailwind Marketing, the FAC alleges only that Plain Green pays $100 for every approved potential borrower that Tailwind Marketing identifies for it. (*Id.* ¶¶ 89, 153.) But, as just detailed above, none of these actions provide the basis for any of Plaintiffs' claims.[5] For example, they do not allege that any aspect of Plain Green's customer service violated any law. These minimal allegations are insufficient to show that TC Loan Service, TC Decision Sciences, and Tailwind Marketing violated any law.

### C. The FAC Does Not State a Viable Civil RICO Claim.

The purpose of RICO is to "seek the eradication of organized crime in the United States." *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922, 922-23 (1970); *see also Beck v. Prupis*, 529 U.S. 494, 496 (2000) (discussing purpose of RICO). Civil RICO is widely recognized as "an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citation omitted). It has been said that "the civil provisions of [RICO] are the most misused statutes in the federal corpus of law." *Spoto v. Herkimer Cnty. Trust*, No. 99-CV-1476, 2000 WL 533293, at *1 (N.D.N.Y. Apr. 27, 2000). Because of this reality, and "[b]ecause the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman*, 167 F.R.D. at 655 (citation omitted).

In relevant part, the RICO Act provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Plaintiffs' RICO claims against the Think Defendants fail as a matter of law because Plaintiffs have not plausibly

---

[5] TC Decision Science's collection of accounts is challenged by Plaintiffs' RICO claim, but that claim fails for the reasons stated below.

alleged that: (1) defendants conducted or participated in the conduct of the enterprise; or

(2) defendants engaged in a pattern of racketeering activity or collection of unlawful debt.

1. **Plaintiffs Fail to Plead that the Think Defendants Conducted or Participated in the Conduct of the Alleged Enterprise's Affairs.**

To state a civil RICO claim, a plaintiff must allege that each defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). The Supreme Court has held that § 1962(c) requires participation in the "operation or management" of a RICO enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). A claim that "fails to charge [defendant's] involvement in the management of the alleged 'enterprise' itself" must be dismissed." *AARP v. Am. Family Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 795 (M.D.N.C. 2009). As interpreted by courts in this circuit, "the 'operation and management' test . . . is a very difficult test to satisfy." *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 274 (D. Conn. 2004) (internal quotations omitted). It is insufficient to allege merely that a defendant performed services for the enterprise; the plaintiff must show that the defendant played "some part in *directing* those affairs." *Reves*, 507 U.S. at 179 (emphasis added).

Here, Plaintiffs' claims fall far short of satisfying *Reves*'s exacting operation and management test. The FAC identifies Plain Green, which is a "tribal entity wholly owned by the Chippewa Cree Tribe," as the purported RICO enterprise. (FAC ¶¶ 2, 76.) None of the Think Defendants, however, are alleged to be involved in directing the operations of Plain Green. As to Think Finance, paragraph 80 of the FAC identifies the "services"—Plaintiffs' word—Think Finance provided to the alleged enterprise. Plaintiffs' chosen word of "services" hardly suggests the level management or operation required by *Reves*'s exacting test. And, as explained above, Plaintiffs' allegations based on Think Finance's alleged "control" of Plain Green, as well as on the term sheet attached to the FAC, must be set aside in the Court's evaluation of the sufficiency of Plaintiffs' allegations.

Plaintiffs' allegations regarding the other Think Defendants fare no better. Plaintiffs allege that at the direction of others, TC Decision Sciences, for a nominal fee, "provides services

12

like customer service, verifications, and collections of customer accounts for Plain Green." (*Id.* ¶¶ 90, 152.) Tailwind Marketing, again at the direction of others, is alleged to have received nominal fees for providing referral services to Plain Green. (*Id.* ¶¶ 89, 153.) The FAC lacks any description of the specific role of TC Loan Services beyond generic allegations of being associated with the purported enterprise. (*See, e.g.*, *id.* ¶ 217.)

Under the most favorable reading of the FAC, Plaintiffs allege that the Think Defendants provided *services* to the alleged enterprise. But it is black-letter law that "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998).[6]

The provision of services related to financial transactions is likewise insufficient to demonstrate that a defendant directed a RICO enterprise. In *Jubelirer v. MasterCard International Inc.*, 68 F. Supp. 2d 1049 (W.D. Wis. 1999), the plaintiff claimed that an online casino was illegal and filed a civil RICO claim against MasterCard and MBNA American Bank for participating in the transfer of funds to the casino. *Id.* at 1051. The court rejected plaintiff's claim that MasterCard and the bank participated in the operation and management of the alleged enterprise: "[T]he law is clear that merely having a business relationship with and performing services for such an enterprise, including financial, accounting and legal services, does not support RICO liability because performance of such services is not the equivalent of participation in the operation and management of the enterprise." *Id.* at 1053. The same is true of the FAC's allegations against the Think Defendants.

---

[6] *See also Azirelli v. Cohen Law Offices*, 21 F.3d 512, 521-22 (2d Cir. 1994) (holding that provision of legal services related to fraudulent real estate transaction was not management of the RICO enterprise conducting the fraudulent transaction); *Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir. 1993) (attorneys who prepared allegedly false opinion letters regarding music recording leasing program had not participated in "operation or management" of the enterprise; *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

Likewise, in *In re Agape Litigation*, 681 F. Supp. 2d 352 (E.D.N.Y. 2010), the plaintiffs' RICO claims arose out of a Ponzi scheme involving a company that purported to generate large investment returns from a corporate loan business. *Id.* at 357. The company's bank was alleged to have provided extensive financial services that facilitated the scheme, and to have had actual knowledge of the scheme itself. *Id.* at 358. The court nevertheless dismissed the claims against the bank, explaining that: "Even if the Court assumes that [the bank] consciously ignored the fraud or provided important services to aid in its commission, this would still be insufficient to show that [it] directed or operated [the] scheme." *Id.* at 369-70; *see also Walker v. Hallmark Bank & Trust, Ltd.*, 707 F. Supp. 2d 1317, 1321 (S.D. Fla. 2010) (dismissing civil RICO claims that sought to hold MasterCard liable for processing payments that benefitted a Ponzi scheme because the plaintiff "did not allege sufficient facts to show that [MasterCard] participated in the operation or management of the alleged [RICO] enterprise") (citation omitted).

Similarly here, the FAC alleges that the Think Defendants provided routine financial services in furtherance of the alleged Plain Green enterprise. Plaintiffs readily acknowledge that the alleged Plain Green enterprise "used third parties," such as the Think Defendants, "to carry out all of the *administrative* tasks." (FAC ¶ 57 (emphasis added).) Under settled law, the allegations that the Think Defendants assisted the RICO enterprise by providing "administrative tasks" and "services" are insufficient to establish that any of the Think Defendants "directed" or "managed" the alleged enterprise.

## 2. The FAC Fails to Allege that the Think Defendants Committed RICO Predicate Acts.

Plaintiffs' RICO claims should be dismissed for a second reason: the FAC fails to allege that the Think Defendants committed any RICO predicate acts. Plaintiffs allege that Think Finance committed predicate acts of mail fraud and wire fraud, but they have not pleaded sufficient facts to state a claim under those theories. Plaintiffs also fail to plead facts sufficient to state a claim against each of the Think Defendants for the unlawful collection of debt.

14

### a. Plaintiffs Do Not Plausibly Allege that Think Finance Committed Mail and Wire Fraud.

Plaintiffs fail to plead a plausible mail or wire fraud claim against Think Finance.[7] At a threshold level, courts should be "especially cautious" in finding the existence of a pattern of racketeering activity when the predicate acts involved in a RICO claim are mail and wire fraud, as "'[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice.'" *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians,* 155 F.3d 500, 506 (4th Cir. 1998) (quoting *Int'l Data Bank, Ltd. v. Zepkin,* 812 F.2d 149, 154-55 (4th Cir. 1987)). To plead mail or wire fraud as RICO predicate acts, Plaintiffs must allege (1) the existence of a scheme to defraud, (2) each defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme. *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir. 1996). To establish the second of these elements, Plaintiffs must plead facts supporting a "strong inference" that each separate defendant acted with "fraudulent intent." *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991).

Plaintiffs fail to allege specific facts supporting a strong inference that Think Finance had fraudulent intent. Under Rule 9(b), courts should disregard "speculation and conclusory allegations" of fraudulent intent for the purposes of a motion to dismiss. *Id.* (internal quotations omitted). Once conclusory allegations in the FAC are stripped away, the remaining allegations fail to support a "strong inference" of fraudulent intent.

Plaintiffs allege that the Think Finance had a "plan or scheme to defraud thousands of people in financially challenged positions by extending loans at illegally high and extortionate interest rates . . . ." (FAC ¶ 101.) This conclusory allegation ignores that Plaintiffs' loan agreements with Plain Green are governed by tribal law—a term to which Plaintiffs voluntarily agreed—which imposes no interest rate cap. Thus, Think Finance's provision of services to Plain Green is entirely consistent with legal conduct. It is well settled that the opportunity to

---

[7] Plaintiffs' RICO claim predicated upon mail and wire fraud is alleged only against Rees, Think Finance, and the Plain Green Defendants.

earn "normal compensation for professional services" does *not* support an inference of fraudulent intent. *MLSMK Invs., Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143 (S.D.N.Y. 2010) (citation and quotations omitted) ("[T]he Second Circuit has repeatedly found that routine benefits derived in the ordinary course of business do not constitute the type of 'concrete benefit' necessary to establish fraudulent intent . . . .").

Plaintiffs' FAC fails to allege fraudulent intent for another reason: It fails to identify with the specificity required by Rule 9(b) the conduct of each defendant in relation to the alleged scheme to defraud. Count Five alleges that Think Finance and defendants Rees, Rosette, Whitford, and McInerney "committed multiple acts of wire fraud . . . and mail fraud. . . ." (FAC ¶ 210.) "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). It is not enough to "vaguely attribute[] the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) ("[L]umping the defendants into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required."); *Zito v. Leasecomm Corp.,* No. 02 Civ.8074(GEL), 2003 WL 22251352, at *10 (S.D.N.Y. Sept. 30, 2003) ("[T]o state a cause of action against any particular defendant, a complaint under § 1962(c) must charge each named defendant with engaging in specific racketeering acts."); *Schmidt v. Fleet Bank*, No. 96 Civ. 5030(AGS), 1998 WL 47827, at *5 (S.D.N.Y. Feb 4, 1998) ("In cases with multiple defendants, Rule 9(b) requires that the complaint allege facts that specify each defendant's connection to the fraud.").

Plaintiffs make what amounts to a number of collective allegations against Think Finance and the individual defendants. Plaintiffs routinely use the phrase "Defendants Rees and Think Finance and Defendants Rosette, Whitford, and McInerney" to describe conduct attributable to the defendants. (*See, e.g.*, FAC ¶¶ 208, 210, 212, 213.) That Plaintiffs list each defendant by name rather than using the collective term "defendants" is of no matter. General allegations

attributed to a list of defendants fail to identify the individual conduct of each defendant and fail to provide individualized allegations concerning what each defendant knew, when it acquired this knowledge, or how it did so. Where, as here, the FAC fails to allege facts that specify each defendant's connection to the alleged fraud, Plaintiffs' RICO claim against Think Finance predicated on mail and wire fraud should be dismissed. *Schmidt*, 1998 WL 47827, at *5.

### b. Plaintiffs Fail to Allege that the Think Finance Defendants Collected Unlawful Debt.

The RICO statute assigns liability to defendants that conduct or participate in the affairs of an enterprise through the collection of unlawful debt. 18 U.S.C. § 1962(c). RICO does not define "collection," but one federal court of appeals has turned to an analogous definition in the Extortionate Credit Transaction Statute, 18 U.S.C. § 891(5), which defines "[t]o collect an extension of credit" as "to induce in any way any person to make repayment thereof." *United States v. Pepe*, 747 F.2d 632, 674 (11th Cir. 1984) (concluding this to be "a proper definition of the term 'collection' in RICO"). "The 'collection of unlawful debt' portion of section 1962(c) specifically targets loansharking and usurious lending." *Arrington v. Colleen, Inc.*, No. CIV. AMD 00-191, 2000 WL 34001056, at *7 (D. Md. Aug. 7, 2000) (citing *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 249-50 (2d Cir. 1985)).

To prove an unlawful debt, the plaintiff must show: (1) that the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (2) that the debt was incurred in connection with "the business of lending money at a usurious rate," and (3) that the usurious rate was at least twice the enforceable rate. *See* 18 U.S.C. § 1961(6); *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 590 (D. Md. 2013). To survive a motion to dismiss, a plaintiff must allege that *each defendant* was lending money at a rate that is usurious under state or federal law, and that *each defendant* was in the business of doing so. *See United States v. Persico*, No. 10-CR-147 (SLT), 2011 WL 2433728, at *2 (E.D.N.Y. June 14, 2011); *see also Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008) (a plaintiff that fails to

attribute the alleged predicate acts to particular defendants or other individuals or entities fails to adequately allege a violation of 18 U.S.C. § 1962(c)).

Here, Plaintiffs allege that defendants Rees, Think Finance, TC Loan Services, TC Decision Sciences, Tailwind Marketing, Sequoia Capital Operations, LLC, Technology Crossover Ventures, Rosette, Whitford, and McInerney collectively engaged in the unlawful collection of debt.[8] (FAC ¶ 216.) None of those defendants is alleged to be in the "business of lending money at a usurious rate." Plaintiffs' unlawful debt collection claim against the Think Defendants fails for this reason alone.[9]

In addition, Plaintiffs' complaint is devoid of allegations that any of the Think Defendants "induced" payment of an unlawful debt. Plaintiffs identify numerous loan payments they willfully remitted to Plain Green, but fail to allege that these payments were induced by any of the defendants. (FAC ¶¶ 47-49, 60-63.) Instead, as Plaintiffs concede, they authorized Plain Green to collect payment through the ACH system when they entered into the loan agreements. (*Id.* ¶¶ 52, 65.) These withdrawals were automatic; there was no inducement by any of the Think Defendants. The FAC fails to identify a single communication from any of the Think Defendants to the Plaintiffs, let alone one that could plausibly be characterized as an inducement.

Finally, Plaintiffs' claim fails because they insufficiently plead that any debts, lawful or unlawful, were collected by the Think Defendants. RICO requires that the defendant "participate . . . in the conduct of [an] enterprise's affairs *through . . . collection of unlawful debt.*" 18 U.S.C. § 1962(c) (emphasis added). The FAC alleges that "Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney withdrew money from [Gingras's] account in Vermont by ACH withdrawal."[10] (FAC ¶ 54.) As discussed above, courts routinely hold that unembellished allegations of control do not state a plausible claim, (*see*

---

[8] As explained above, this conclusory allegation alone is insufficient to state a claim against TC Loan Services and Tailwind Marketing. (*See supra* at Part III.B.)

[9] The only entity alleged to be engaged in the business of lending money at a usurious rate is the alleged RICO enterprise, and non-party, Plain Green. (FAC ¶ 220.)

[10] The FAC makes an identical allegation with respect to Plaintiff Given. (*See* FAC ¶ 69.)

Part III.A), and the FAC provides no support for the conclusory allegation of control regarding ACH withdrawal.

The only other Think Defendant allegedly involved in the collection of unlawful debt is TC Decision Sciences. While Plaintiffs allege TC Decision Sciences completed "collections of customer accounts" for Plain Green, (FAC ¶ 90), the FAC does not identify a single payment collected by TC Decision Sciences from either Plaintiff. [11] Instead, Plaintiffs are clear that their payments were collected by "Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney." This allegation, as just explained, is inadequate. (*Id.* ¶¶ 54, 69.) As the FAC fails to sufficiently plead the collection of debt by any of the Think Defendants, Plaintiffs' RICO claim predicated upon that act should be dismissed.

### D. The Think Defendants Join And Incorporate The Plain Green Defendants' Motion to Dismiss.

To avoid burdening the Court with duplicative briefing, the Think Defendants incorporate by reference the authorities and legal arguments cited in the Plain Green Defendants' Motion to Dismiss regarding Plaintiffs' failure to state a claim, failure to join an indispensable party, and lack of standing for injunctive and declaratory relief.

The Plain Green Defendants' Motion to Dismiss outlines the reasons that Plaintiffs' CFPA, FTCA, EFTA, and VCFA claims fail as a matter of law under Rule 12(b)(6). Those reasons are equally applicable to the Think Defendants. Plaintiffs' CFPA and FTCA claims must be dismissed because they do not provide a private right of action. (*See* Plain Green Defs.' Mem. at 7-8.) Plaintiffs have also failed to allege any unfair methods of competition under the FTCA, (*see id.* at 27), or any unfair, deceptive, or abusive act or practice under the CFPA, (*see id.* at 27-29). Plaintiffs' EFTA claim fails because it is time-barred and because, contrary to Plaintiffs' allegations, the loan agreements show that Defendants did not condition the extension

---

[11] Count Six seeks to include TC Loan and Tailwind Marketing; however, the FAC contains zero specific allegations regarding TC Loan's conduct, and the only conduct Tailwind Marketing is alleged to have engaged in is collection of *referral fees* directly from Plain Green. (FAC ¶¶ 89, 153.) Beyond Plaintiff's conclusory allegations, neither party is alleged to be involved in the collection of debt.

of credit to consumers on their preauthorization of electronic fund transfers. (*See id.* at 29.) Plaintiffs' VCPA cause of action fails because Plaintiffs did not allege that they relied on any allegedly unfair or deceptive acts and insufficiently alleged that Defendants engaged in any unfair or deceptive acts. (*See id.* at 30-31.)

The Plain Green Defendants' Motion to Dismiss also explains why Plaintiffs lack standing to seek injunctive and declaratory relief from the Think Defendants, as Plaintiffs have failed to allege that this relief will remedy an injury that they will likely suffer in the future. (*See id.* at 12-14.)

Finally, the Plain Green Defendants' Motion to Dismiss sets forth why Plaintiffs' claims should be dismissed under Rules 12(b)(7) and 19 for failure to join their lender, Plain Green, and the Chippewa Cree Tribe, which are an indispensable parties. (*See id.* at 21-24.)

## IV.    CONCLUSION

For all the foregoing reasons, the Think Defendants respectfully urge the Court to dismiss the Plaintiffs' First Amended Complaint in its entirety.

Dated:  September 22, 2015                     Respectfully submitted,

By:    /s/ Ritchie E. Berger, Esq.
Ritchie E. Berger
DINSE, KNAPP, & MCANDREW, P.C.
P.O. Box 988
Burlington, VT 05402-0988
Telephone: (802) 864-5751
rberger@dinse.com

James McGuire (*pro hac vice*)
Lauren Wroblewski (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
jmcguire@mofo.com

*Attorneys for Defendants Think Finance, Inc., TC Loan Service, LLC, TC Decision Sciences, LLC, and Tailwind Marketing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Andre D. Bouffard, Esq.
Jonathan P. Boughrum, Esq.
Matthew B. Byrne, Esq.
Richard C. Carroll, Esq.
Jay A. Dubow, Esq.
Stephen D. Ellis, Esq.
Daniel M. Glosband, Esq.
Matthew B. Homberger, Esq.
Justin E. Kolber, Esq.
James R. McGuire, Esq.
Richard L. Scheff, Esq.
Lauren L. Wroblewski, Esq.
Richard J. Zack, Esq.

/s/Ritchie E. Berger, Esq.
Ritchie E. Berger
Dinse, Knapp & McAndrew, P.C.
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751
rberger@dinse.com

For Defendants Think Finance, Inc., TC Loan
Service, LLC, TC Decision Sciences, LLC,
and Tailwind Marketing, LLC