## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF VERMONT

| | |
|---|---|
| JESSICA GINGRAS, *et. al* | Civil Action No.: 15-101 |
| Plaintiffs, | |
| v. | |
| JOEL ROSETTE, TED WHITFORD, and TIM McINERNEY, THINK FINANCE, INC., TC LOAN SERVICE, LLC, KENNETH E. REES, TC DECISION SCIENCES, LLC, TAILWIND MARKETING, LLC, SEQUOIA CAPITAL OPERATIONS, LLC and TECHNOLOGY CROSSOVER VENTURES | |
| Defendants. | |

## TRIBAL DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION, AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION


Dated: September 22, 2015

*/s/ Andre D. Bouffard*
Andre D. Bouffard, Esq.
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
802.863.2375
*and*
Jay A. Dubow (PA No. 41741) (*pro hac vice*)
Richard J. Zack (PA No. 77142) (*pro hac vice*)
Matthew B. Homberger (PA No. 317064) (*pro hac vice*)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
*Attorneys for Defendants Rosette, McInerney, and Whitford*

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF VERMONT

| | |
|---|---|
| JESSICA GINGRAS, *et. al* <br><br> Plaintiffs, <br><br> v. <br><br> JOEL ROSETTE, *et. al* <br><br> Defendants. | Civil Action No.: 15-101 <br><br> **TRIBAL DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND, or, in the alternative, TO COMPEL ARBITRATION** |

Upon the accompanying Memorandum of Law, supporting documentation, and all pleadings herein, Defendants Joel Rosette, Ted Whitford, and Tim McInerney, through the undersigned counsel, hereby move this Court for an order, pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), 12(b)(7), 8 and 9 of the Federal Rules of Civil Procedure, dismissing the First Amended Complaint in the above-referenced action in its entirety and with prejudice, or, in the alternative, compelling arbitration, and for other and further relief as this Court may deem just and proper.

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................... 1

II. BACKGROUND ........................................................................................ 2

III. ARGUMENT ............................................................................................ 4

    A. The FAC Must Be Dismissed For Lack of Subject Matter Jurisdiction ................. 4

        1. The Doctrine of Tribal Sovereign Immunity Bars This Action ................. 4

            (a) The CFPA and the FTCA Do Not Confer Private Rights of Action .......................................................................................... 7

            (b) Private Parties Are Not Entitled to Recover on Claims for Equitable Relief Under RICO ........................................................ 8

            (c) Plaintiffs' Claim Under The EFTA Is Time-Barred ...................... 9

            (d) The *Ex parte Young* Exception Applies Only to Violations of Federal Law ............................................................................. 10

        2. The Plaintiffs Lack Article III Standing ................................................. 11

            (a) Plaintiffs Have Failed to Allege Injury-in-Fact ........................... 12

            (b) Plaintiffs Have Failed to Establish Redressability ....................... 13

    B. Alternatively, the Court Should Dismiss this Matter in its Entirety, as Neither the Forum Nor Venue Are Proper ........................................................... 14

        1. The Court Should Enforce the Parties' Agreement to Arbitrate .............. 14

            (a) The Arbitration Clause ................................................................. 15

            (b) The Court Should Honor the Parties' Agreement to Arbitrate ...................................................................................... 17

        2. The Action Should be Dismissed for Improper Venue ............................ 18

    C. Alternatively, The Complaint Must Be Dismissed Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction ............................................................ 19

    D. Alternatively, the FAC Must Be Dismissed Because Plain Green and the Tribe are Necessary and Indispensable Parties .................................................... 21

    E. Alternatively, the Court Should Dismiss this Action for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)...................................................... 24

1.  The FTCA, the CFPA and RICO Do Not Confer Private Rights of Action, and the EFTA Claim is Time-Barred ........................................... 25

2.  Plaintiffs Have Failed to Allege Violations of the Statutes ..................... 26

  (a)  Plaintiffs Have Failed to Allege a Violation of the FTCA .......... 27

  (b)  Plaintiffs Have Failed to Allege a Violation of the CFPA ........... 27

  (c)  Plaintiffs Have Failed to Allege a Violation of the EFTA ........... 29

  (d)  Plaintiffs Have Failed to Allege a Violation of the VCPA .......... 30

  (e)  Plaintiffs Have Failed to Allege a Violation of RICO ................. 32

    (i)  Plaintiffs Cannot Demonstrate a Cognizable Injury ........ 32

    (ii)  Plaintiffs Cannot Establish the Required Mens Rea ........ 33

    (iii)  Plaintiffs Have Failed to Plead Predicate Acts ................. 35

      (A)  Plaintiffs Have Failed to Establish Their Mail and Wire Fraud Theories of Liability ........... 36

        (1)  Lack of Specificity ................................... 36

        (2)  Lack of Materiality ................................... 38

    (iv)  Plaintiffs Have Failed to Establish An Unlawful Debt Theory ....................................................................... 38

IV.  CONCLUSION ............................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*236 Cannon Realty, LLC v. Ziss*, No. 02–CV-6683, 2005 WL 289752 (S.D.N.Y. Feb. 8, 2005) ..............................................................................................................35

*Abbott v. Keen, Inc.*, Case No. 5:13-cv-267, 2014 U.S. Dist. LEXIS 166877 (D. Vt. May 7, 2014) ..........................................................................................................18

*Achey v. BMO Harris Bank, N.A., et al.*, 64 F. Supp. 1170 (N.D. Ill. 2014) ................17

*AG of Can. v. RJ Reynolds Tobacco Holdings*, 103 F. Supp. 2d 134 (N.D.N.Y 2000)..................8

*Allen v. Gold Country Casino*, 464 F.3d 1044 (9th Cir. 2006)........................................6

*Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629 (E.D.N.Y. 2003) ....................37

*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013) ..................................16

*AMA v. United Healthcare Corp.*, 588 F. Supp. 2d 432 (S.D.N.Y. 2008) ........................8

*Andrade v. Chojnacki*, 65 F. Supp. 2d 432 (W.D. Tex. 1999)........................................34

*Apostolidis v. JP Morgan Chase & Co.*, No 11-CV-5664 (JFB) (WDW), 2012 U.S. Dist. LEXIS 157733 (E.D.N.Y. Nov. 2, 2012)............................................................26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................24, 25, 26

*Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994).....................................................................................25, 28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................24

*Bennett v. U.S. Trust Co. of New York*, 770 F.2d 308 (2d Cir. 1985)............................34

*Booth v. BMO Harris Bank, N.A., et al.*, No. 13-5968, 2014 WL 3952945 (E.D. Pa. Aug. 11, 2014) ..................................................................................2, 15, 16, 17

*Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*, 13 CV 6804 (VB), 2014 U.S. Dist. LEXIS 142256 (S.D.N.Y. Sept. 17, 2014)................................................3

*Burlington N. & Santa Fe Ry. v. Vaughn*, 509 F.3d 1085 (9th Cir. 2007)....................10

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)........................................33

*Bynon v. Mansfield*, No. 15-00206, 2015 U.S. Dist. LEXIS 66684 (E.D. Pa. May 21, 2015) ......................................................................................................5

*Cayuga Indian Nation v. Seneca Cnty.*, 761 F.3d 218 (2d Cir. 2014) ...........................................4

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)......................................................25

*Chayoon v. Chao*, 355 F.3d 141 (2d Cir. 2004)............................................................................5

*Chun Hua Mui v. Union of Needletrades, Indus. & Textile Emples.*, 97 Civ. 7270, 1998
U.S. Dist. LEXIS 12783 (S.D.N.Y. Aug. 18, 1998) ................................................................6

*Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138 (2013) ...............................................................12

*Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543 (E.D.N.Y. 2011)............18

*Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374 (2d Cir. 2001) ..........35

*Conkling v. Turner*, 18 F.3d 1285 (5th Cir. 1994)......................................................................8, 9

*Cook v. AVI Casino Enters.*, 548 F.3d 718 (9th Cir. 2008) ..........................................................4

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005)...........................................18

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ......................................................................32

*Dernier v. Mortg. Network, Inc.*, 87 A.3d 465 (Vt. 2013)......................................................30, 31

*Dingler v. United States*, No. 1:06-CV-181, 2008 U.S. Dist. LEXIS 72934 (D. Vt. Aug.
26, 2008) ..................................................................................................................................3

*Doctor's Assocs. v. Casarotto*, 517 U.S. 681 (1996).................................................................17

*Dodge v. Cnty. of Orange*, 103 F. App'x 688 (2d Cir. 2004).....................................................11

*Dumont v. Corr. Corp. of Am.*, Civil Action No. 2:14-cv-209, 2015 U.S. Dist. LEXIS
79032 (D. Vt. Apr. 29, 2015)..............................................................................................20, 21

*Edelman v. Jordan*, 415 U.S. 651 (1974) ...................................................................................6

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ...............................................................................40

*Elder v. BMO Harris Bank, N.A., et al.*, No. JFM-13-2014, 2014 WL 1429334 (D. Md.
Apr. 11, 2014) .......................................................................................................................17

*Eric M. Berman, P.C. v. City of N.Y.*, 895 F. Supp. 2d 453 (E.D.N.Y. 2012)............................40

*Evans v. City of Chicago*, 434 F.3d 916 (7th Cir. 2006).............................................................33

*Exch. Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976) .......................................4

*Fagioli S.P.A. v. GE*, 14-CV-7055 (MN), 2015 U.S. Dist. LEXIS 73219 (S.D.N.Y. June 5, 2015) ........................................................................................................3

*Farmer v. Fed. Bureau of Prisons*, 13-CV-1255 (DLI)(CLP), 2015 U.S. Dist. LEXIS 39534 (E.D.N.Y. Mar. 27, 2015) .................................................................3

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)................................33

*Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542 (2d Cir. 1991) .................................22, 24

*Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295 (N.D.N.Y. 2003) ........................5, 6, 7, 10

*In re Fredeman Litig.*, 843 F.2d 821 (5th Cir. 1988)........................................................9

*Frooks v. Town of Cortlandt*, 997 F. Supp. 438 (S.D.N.Y. 1998)................................................34

*FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848 (C.D. Cal. 2010)................................................25

*Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76 (2d Cir. 2001)................................................25, 27

*Giammatteo v. Newton*, 452 F. App'x 24 (2d Cir. 2011)................................................4

*Gordon v. U.S. Bancorp*, No. 13-cv-3005 (D. Minn., Apr. 21, 2014)........................................17

*Graham v. BMO Harris Bank, N.A. et al.*, No. 3:12-cv-1460, 2014 WL 4090548 (D. Conn. July 16, 2014)................................................................2, 15, 17

*Gunson v. BMO Harris Bank, N.A., et al.*, 43 F. Supp. 3d 1396 (S.D. Fla. 2014) .............2, 15, 17

*Hall v. Marshall*, 479 F. Supp. 2d 304 (E.D.N.Y. 2007)................................................10

*Hardy v. Fischer*, 701 F. Supp. 2d 605 (S.D.N.Y. 2010) ............................................10

*Healy v. Beer Inst.*, 491 U.S. 324 (1989)................................................................40

*Hoekstra v. City of Arnold*, 2008 U.S. Dist. LEXIS 7465 (E.D. Mo. Feb. 3, 2009)....................34

*Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453 (S.D.N.Y. 2004)......................33

*Howard ex rel. United States v. Shosone-Paiute Tribes of the Duck Valley Indian Reservation*, No. 13-16118, 2015 U.S. App. LEXIS 10040 (9th Cir. June 15, 2015)..............7

*Illinois v. CMK Invs., Inc.*, No. 14 C 2783, 2014 U.S. Dist. LEXIS 169920 (N.D. Ill. Dec. 9, 2014) ........................................................................................28

*J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107 (2d Cir. 2004) ................................................4

*Johnson v. Collins Ent. Co.*, 199 F.3d 710 (4th Cir. 1999)................................................9

*Jordan v. Nissan N. Am., Inc.*, 176 Vt. 465 (Vt. 2004) ................................................................31

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996) *aff'd sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*, 113 F.3d 1229 (2d Cir. 1997) ...............................................................................................................................32

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ..............................................................21

*Kemph v. Reddam*, No. 13 CV 6785, 2015 U.S. Dist. LEXIS 38861 (N.D. Ill. Mar. 27, 2015) ..................................................................................................................................18

*Kerik v. Tacopina*, 64 F. Supp. 3d 542 (S.D.N.Y. 2014) ........................................................32, 33

*Kermanshah v. Kermanshah*, 08-CV-409(BSJ)(AJP), 2010 U.S. Dist. LEXIS 45896 (S.D.N.Y. May 11, 2010) .....................................................................................................22

*Kuck v. Danaher*, 822 F. Supp. 2d 109 (D. Conn. 2011) ............................................................10

*L.A. v. Lyons*, 461 U.S. 95 (1983) ...............................................................................................12

*Labajo v. First Int'l Bank & Trust, et al.*, No. EDCV 14-00627-VAP, 2014 WL 4090527 (C.D. Cal. July 9, 2014) .......................................................................................................17

*LaFlamboy v. Landek*, 587 F. Supp. 2d 914 (N.D. Ill. 2008) ....................................................34

*Lathrop v. Juneau & Assocs.*, 220 F.R.D. 330 (S.D. Ill. 2004) ..................................................34

*Levesque v. Vermont*, Case No. 5:12-cv-159, 2014 U.S. Dist. LEXIS 127916 (D. Vt. Sept. 12, 2014) .....................................................................................................................4

*Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975) .......................................................22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................................11

*Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014) .......................................................32

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) .........................................................11

*Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08-cv-6150, 2010 U.S. Dist. LEXIS 77775 (S.D.N.Y. Aug. 2, 2010) .......................................................................33

*Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299 (1978) ..............................39

*Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014) ...........................................................18

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) ..................................................33

*Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788 (D. Md. 2009) .......................................9

*Montana v. United States*, 450 U.S. 544 (1981) ...........................................................18

*Moss v. BMO Harris Bank, N.A., et al.*, 24 F. Supp. 3d 281 (E.D.N.Y. 2014) ............................17

*Naylor v. Case & McGrath, Inc.*, 585 F.2d 557 (2d Cir. 1978)...........................................25

*Neder v. United States*, 527 U.S. 1 (1999)...............................................................38

*Nguyen v. Ridgewood Sav. Bank*, No. 14-1058, 2015 U.S. Dist. LEXIS 64301 (E.D.N.Y. May 15, 2015)...................................................................................7, 25

*Nicosia v. Amazon.com, Inc.*, No. 14-4513, 2015 U.S. Dist. LEXIS 13560 (E.D.N.Y. Feb. 2, 2015) ...............................................................................13, 14

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .....................................................25, 36

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505 (1991) ...................4

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72 (2d Cir. 1998) .........................................17

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) .......................................10

*Population Planning Assocs. v. Life Essentials, Inc.*, 709 F. Supp. 342 (S.D.N.Y. 1989)...........21

*PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998) ..............................21

*Raines v. Byrd*, 521 U.S. 811 (1997) ....................................................................11

*Reich v. Lopez*, 38 F. Supp. 3d 436 (S.D.N.Y. 2014) ....................................................20

*Religious Technology Center v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986)..........................8, 9

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ................................................18

*Riley v. BMO Harris Bank, N.A., et al.*, No. 13-1677, 2014 WL 3725341 (D.D.C. July 29, 2014).................................................................................17

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993).......................................................13

*Rogers v. City of New York*, 359 F. App'x 201 (2d Cir. 2009).........................................34

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000).......................................................25

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978).................................................4, 5, 6, 7, 8, 9

*Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003).............................9

*Schroedel v. N.Y. Univ. Med. Ctr.*, 885 F. Supp. 594 (S.D.N.Y. 1995)................................12

*Scott v. AOL Time Warner*, 109 F. App'x 480 (2d Cir. 2004) ..........................................................7

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482 (2d Cir. 1984), *rev'd. on other grounds*, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) .......................................................8

*Sendar Co. v. Megaware Inc.*, 705 F. Supp. 159 (S.D.N.Y. 1989) ..............................................37

*Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany)*, 745 F.3d 30 (2d Cir. 2014) ..............................................................................................20

*Skylon Corp. v. Guilford Mills, Inc.*, 93-cv-5581 (LAP), 1997 WL 8889 (S.D.N.Y. Mar. 3, 1997) .........................................................................................................................37

*Spinelli v. NFL*, 13 Civ. 7398 (RWS), 2015 U.S. Dist. LEXIS 40716 (S.D.N.Y. Mar. 27, 2015) ............................................................................................................................29

*Spiro v. Healthport Techs., LLC*, 14 Civ. 2921 (PAE), 2014 U.S. Dist. LEXIS 121346 (S.D.N.Y. Aug. 29, 2014) .............................................................................................14

*Sprint Commc'ns Co. v. APCCServs., Inc.*, 554 U.S. 269 (2008) ..............................................13

*Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662 (2010) ......................................17

*Stoner v. Santa Clara Cnty. Office of Ed.*, 502 F.3d 1116 (9th Cir. 2007) ..................................7

*In re Sumitomo Copper Litig.*, 995 F. Supp. 451 (S.D.N.Y. 1998) ......................................36, 37

*Sylvester v. Pipino*, Docket No. 1:12-cv-00057 (JGM), 2012 U.S. Dist. LEXIS 164944 (D. Vt. Nov. 19, 2012) ...........................................................................................19, 20

*Trane Co. v. O'Connor Secs.*, 718 F.2d 26 (2d Cir. 1983) .........................................................8

*United States v. Autouori*, 212 F.3d 105 (2d Cir. 2000) ...........................................................38

*United States v. Mittelstaedt*, 31 F.3d 1208 (2d Cir. 1994) ......................................................38

*Upshaw v. WMB Constr.*, Case No. 2:13-cv-76, 2013 U.S. Dist. LEXIS 130285 (D. Vt. Sept. 12, 2013) ..............................................................................................................3

*Vaughn v. Consumer Home Mortg. Co.*, 297 F. App'x 23 (2d Cir. 2008) ................................12

*Village of Hotvela Traditional Elders v. Indian Health Servs.*, 1 F. Supp. 2d 1022 (D. Ariz. 1997), *aff'd* 141 F.3d 1182 (9th Cir. 1998) ...............................................................23

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000) .......................7

*Vt. Pure Holdings, Ltd. v. Descartes Sys. Grp., Inc.*, 140 F. Supp. 2d 331 (D. Vt. 2001) ............17

*W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) .........11

*Warren v. United States*, 859 F. Supp. 2d 522 (W.D.N.Y. 2012), *aff'd* 517 F. App'x 54 (2d Cir. 2013) ................................................................................................6, 7, 8

*Wheeling-Pittsburgh Steel Corp. v. Mitsu Corp.*, 221 F.3d 924 (6th Cir. 2000) ............................9

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980) ................................................39, 40

*Williams v. Lee*, 358 U.S. 217 (1959) ................................................................................18, 39

*Williams v. N.Y. State Office of Mental Health*, 2011 U.S. Dist. LEXIS 110589 (E.D.N.Y. Sept. 28, 2011) ................................................................................................13

*World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271 (N.D.N.Y. 2000) ................................................................................................3, 4, 23, 24

*Zorn v. New York*, Docket No. 1:03-cv-314, 2004 U.S. Dist. LEXIS 296 (D. Vt. Jan. 9, 2004) ................................................................................................18

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8, Cl. 3 ................................................................................................40

U.S. Const. art. III ................................................................................11, 12, 13, 14

## FEDERAL STATUTES

9 U.S.C. § 2 ................................................................................................17

9 U.S.C. § 4 ................................................................................................18

12 U.S.C. § 5481(19) ................................................................................................7

12 U.S.C. § 5517(o) ................................................................................................28

12 U.S.C. § 5531(a) ................................................................................1, 25, 27

12 U.S.C. § 5536(a) ................................................................................1, 25, 27

12 U.S.C. § 5564(a) ................................................................................................7

15 U.S.C. § 1639m(g) ................................................................................................26

15 U.S.C. § 1693a ................................................................................................7

15 U.S.C. § 1693m(g) ................................................................................................9

15 U.S.C. § 44 ................................................................................................7, 27

15 U.S.C. § 45 ................................................................................................1, 27

15 U.S.C. §1693k ....................................................................................1

18 U.S.C. § 1341 ....................................................................................35

18 U.S.C. 1343 ....................................................................................35

18 U.S.C. §1961, *et seq.* ............................... 1, 7-9, 19, 21, 32, 34, 35, 38

25 U.S.C. § 458cc(b) ..............................................................................2

28 U.S.C. § 1391(b)(2) ...........................................................................18

**VERMONT STATUTES**

9 V.S.A. §2451 ......................................................................................1

9 V.S.A. § 2451a ....................................................................................7

9 V.S.A. § 2453 ................................................................................30-31

9 V.S.A. § 2461(b) .................................................................................30

12 V.S.A. § 913(b) .................................................................................19

**FEDERAL RULES**

Fed. R. Civ. P. 8 ...................................................................................25

Fed. R. Civ. P. 9 ..................................................................24-25, 36-38

Fed. R. Civ. P. 12(b)(1) ...............................................................4, 10, 32

Fed. R. Civ. P. 12(b)(2) ..................................................................19, 21

Fed. R. Civ. P. 12(b)(3) ..................................................................18, 19

Fed. R. Civ. P. 12(b)(6) ..........................................................7, 24-26, 32

Fed. R. Civ. P. 12(b)(7) ....................................................................3, 21

Fed. R. Civ. P. 19 ............................................................................21-24

**STATE RULES**

Vermont Consumer Protection Rule 104.05 ..........................................31

**OTHER AUTHORITIES**

CFPB Supervision and Examination Manual (2d ed. 2012)...............27, 29

Cohen's Handbook of Federal Indian Law (2012 ed.) .................................................................4

Federal Trade Commission, *A Brief Overview of the Federal Trade Commission's Investigative and Law Enforcement Authority* (July 2008). ...................................................27

Restatement (Second) of Conflict of Laws...........................................................................19, 39

Williston on Contracts (4th ed.)..........................................................................................19, 39

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**</u>

Defendants Joel Rosette, Ted Whitford, and Tim McInerney (collectively "Tribal Defendants"), by their undersigned attorneys, respectfully submit this Memorandum of Law in support of their Motion to Dismiss without Leave to Amend, or, in the alternative, to Compel Arbitration, of the Class Action titled "First Amended Complaint for Declaratory and Injunctive Relief"[1] ("FAC") by named-Plaintiffs Jessica Gingras and Angela Givens ("Plaintiffs").

## I.     PRELIMINARY STATEMENT

Plaintiffs have filed the underlying FAC against three officers and directors of Plain Green, LLC ("Plain Green"), a lending entity entirely owned and operated by the Chippewa Cree Tribe of the Rocky Boy's Reservation, Montana ("the Tribe"), Think Finance, Inc. ("Think Finance"), and Kenneth F. Rees, former Chairman of the Board of Think Finance. Plaintiffs claim that these tribal officers, acting in their official capacities, violated the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a) and 5536(a); the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"); the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693k; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c).  Plaintiffs also assert claims under Vermont state law for unjust enrichment and for violation of the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A. §2451 *et seq.*

Plaintiffs' claims simply are without merit.  All but one of the federal statutes cited in the FAC deny Plaintiffs a private right of action, while the remaining federal statute – the EFTA – provides for a limited one-year statute of limitations that Plaintiffs have failed to meet given the allegations in their own amended complaint.  The FAC's state law claims are similarly

---

[1] Although Plaintiffs have retained the title of the original complaint, they now seek damages from the newly added, non-Tribal Defendants.  *See* FAC at 43.

flawed: Plaintiffs purport to proceed against the Tribal Defendants on an "official capacity," *Ex parte Young* basis, *see* FAC ¶¶ 7-9, in apparent recognition that Tribal Defendants are otherwise immune from suit. However, such suits may not be predicated on violations of state law; nor may they seek retroactive monetary relief. [*See infra* section III.A.1]

These fundamental flaws, which also were present in the original complaint, provide sufficient grounds to dismiss the FAC with prejudice. But there is more: Plaintiffs have filed their FAC in blatant disregard of an arbitration agreement that requires their claims to be litigated before a neutral arbitrator of Plaintiffs' choosing; an arbitration agreement that consistently has been upheld by federal courts around the country.[2] For these reasons, and on the basis of the additional grounds provided below, the FAC should be dismissed in its entirety.

## II.    BACKGROUND

This case concerns installment loans extended to two Vermont residents by non-party Plain Green, LLC. [FAC ¶¶ 45-71.] Plain Green is a lending entity wholly owned and operated by the Chippewa Cree Tribe of the Rocky Boy's Reservation, Montana – a federally-recognized Native American tribe. The Tribe is a sovereign nation located in the United States and, as such, is responsible for its own self-government.[3] The Tribe is governed by its Constitution and Law and Order Code, which detail the responsibilities and procedures for the "Business Committee" – the Tribe's governing body – as well as the Tribe's robust trial and appellate court system. The Tribe's court system is overseen by six trial and appellate court

---

[2] *See Gunson v. BMO Harris Bank, N.A., et al.*, 43 F. Supp. 3d 1396 (S.D. Fla. 2014); *Graham v. BMO Harris Bank, N.A. et al.*, No. 3:12-cv-1460, 2014 WL 4090548 (D. Conn. July 16, 2014); *Booth v. BMO Harris Bank, N.A., et al.*, No. 13-5968, 2014 WL 3952945 (E.D. Pa. Aug. 11, 2014).

[3] The Tribe's jurisdiction was established by an Act of the United States Congress in 1916, 39 Stat. 739, and its government was organized consistent with the Indian Reorganization Act of 1934. The Tribe is a self-governing tribe under the Tribal Self Governance Act, and as such, it is empowered to "plan, conduct, consolidate, and administer programs, services, functions, and activities, or portions thereof, administered by the Department of the Interior through the Bureau of Indian Affairs." 25 U.S.C. § 458cc(b).

judges, who manage an active docket including criminal, civil, and family law matters.  *See* Ex. A (Rosette Aff.); Ex. C (Plain Green Articles).[4]

In 2011, the Tribe's Business Committee chartered Plain Green as an "online installment lending entity" pursuant to the Committee's authority to promote the general welfare of the Tribe.  *Id.*  The Tribe intended Plain Green to operate as an economic "arm of the Tribe," and thus to serve as a means to increase Tribal revenues and to support the social, economic, educational, and health needs of the Tribe.  *See* Ex. A; Ex. C.  As an "arm of the Tribe," Plain Green and its officers share the Tribe's sovereign status.  *See, e.g., World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271, 275 (N.D.N.Y. 2000); Ex. C, at §§ 4.1, 4.2.

Plaintiffs are repeat customers of Plain Green.  [*See* FAC ¶¶ 45-49; 59-63.] Indeed, since 2011, Plaintiffs have voluntarily taken out – and paid off – many Plain Green installment loans.  [*Id.*]  Despite their apparent longstanding satisfaction with Plain Green's loan products, Plaintiffs now bring the instant putative class action suit, alleging that Plain Green's entire lending model is unlawful.  [*See generally* FAC.]  For the reasons set forth below, Plaintiffs' allegations fail as a matter of law and their FAC must be dismissed.

---

[4] For the purposes of this Motion to Dismiss, the Defendants have attached the following: Defendants' affidavits, Plain Green's Articles of Organization, and the loan Agreements referenced in the Complaint.  The Court may properly consider these documents when assessing subject matter jurisdiction, *see Dingler v. United States*, File No. 1:06-CV-181, 2008 U.S. Dist. LEXIS 72934, at *3 (D. Vt. Aug. 26, 2008) ("When resolving a jurisdictional question, the Court may consider materials outside the pleadings"); personal jurisdiction, *see Upshaw v. WMB Constr.*, Case No. 2:13-cv-76, 2013 U.S. Dist. LEXIS 130285, at *5 (D. Vt. Sept. 12, 2013) ("When considering a motion to dismiss for lack of personal jurisdiction, a district court may consider matters outside the pleadings."); joinder, *see Fagioli S.P.A. v. GE*, 14-CV-7055 (MN), 2015 U.S. Dist. LEXIS 73219, at *8-9 (S.D.N.Y. June 5, 2015) (conducting thorough analysis of Second Circuit case law approving consideration of matters outside the pleadings when deciding a Rule 12(b)(7) motion, as it "would be very difficult in many instances for a movant under Rule 12(b)(7) to satisfy its burden if it were forced to rely solely on the allegations contained in the plaintiff's complaint," which "is made all the more obvious by the fact that the failure to name the required and indispensable party in the complaint is often by design"); venue, *see Farmer v. Fed. Bureau of Prisons*, 13-CV-1255 (DLI)(CLP), 2015 U.S. Dist. LEXIS 39534, at *18 (E.D.N.Y. Mar. 27, 2015) ("A court may also consider materials outside the pleadings" when resolving venue challenge); and arbitration clauses, *see Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*, 13 CV 6804 (VB), 2014 U.S. Dist. LEXIS 142256, at *3 n.2 (S.D.N.Y. Sept. 17, 2014) ("Courts may consider documents outside the pleadings when deciding a motion to compel arbitration.").

### III.    ARGUMENT

#### A.    The FAC Must Be Dismissed For Lack of Subject Matter Jurisdiction

An action must be dismissed when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists."  *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011).  Given this burden of proof, a plaintiff opposing a motion to dismiss "cannot rest on the mere assertion that factual issues may exist."  *See Exch. Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976).  Indeed, while a court reviewing a Rule 12(b)(1) motion to dismiss "must accept as true all material factual allegations in the complaint … it is not to draw inferences from the complaint favorable to plaintiff."  *Levesque v. Vermont*, Case No. 5:12-cv-159, 2014 U.S. Dist. LEXIS 127916, at *6 (D. Vt. Sept. 12, 2014) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (quotation marks and alterations omitted)). For the reasons that follow, Plaintiffs' action should be dismissed.

##### 1.    The Doctrine of Tribal Sovereign Immunity Bars This Action

As sovereign governments, federally recognized tribes are entitled to the "common-law immunity from suit traditionally enjoyed by sovereign powers."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).  It is thus widely recognized that suits seeking either damages or equitable relief "against Indian tribes are . . . barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation."  *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991); *Cayuga Indian Nation v. Seneca Cnty.*, 761 F.3d 218, 220 (2d Cir. 2014); *Cohen's Handbook of Federal Indian Law* § 7.05[1][a] (2012 ed.). A tribe's immunity extends to the entities that the tribe wholly owns and operates.  *See, e.g., World Touch Gaming, Inc.*, 117 F. Supp. 2d at 275 (N.D.N.Y. 2000); *Cook v. AVI Casino Enters.*, 548 F.3d 718, 725 (9th Cir. 2008) (noting that "tribal corporations acting as an arm of

the tribe enjoy the same sovereign immunity granted to a tribe itself"). The tribe's immunity also protects tribal officers and employees acting within the scope of their official authority from damages claims. *See, e.g., Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) (noting that plaintiff "cannot circumvent tribal immunity by merely naming officers or employees of the Tribe when the complaint concerns actions taken in defendants' official or representative capacities and the complaint does not allege they acted outside the scope of their authority"); *see also, e.g. Bynon v. Mansfield*, No. 15-00206, 2015 U.S. Dist. LEXIS 66684, at *3 (E.D. Pa. May 21, 2015) (explaining that a tribe's immunity extends to its "subordinate economic entities and to tribal officials who are acting in their official capacity and within the scope of their authority," and dismissing entire consumer lending action seeking damages against the "manager" in charge of the "day-to-day operations" of a tribal lending entity).

By analogy to *Ex parte Young*, however, the United States Supreme Court has signaled that private plaintiffs may, in limited circumstances, seek prospective equitable relief against tribal officials to remedy an ongoing violation of *federal law*. *Santa Clara Pueblo*, 436 U.S. at 59 (noting that a tribal officer is not protected by the tribe's immunity from suit in a claim for injunctive and declaratory relief under the federal Indian Civil Rights Act); *Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 310-11 (N.D.N.Y. 2003) ("Although *Ex Parte Young* offers a limited exception to the general principle of state sovereign immunity and has been extended to tribal officials acting in their official capacities, it only allows an official acting in his official capacity to be sued in a federal forum to enjoin conduct that violates **federal law**") (bold font in original). The Second Circuit has expressly articulated two additional requirements for the application of this limited *Ex parte Young* exception in the tribal context: "First, the law under which the plaintiff seeks injunctive relief must apply substantively to the tribe, agency, or

corporation, and, second, the plaintiff must have a private cause of action to apply the substantive rule." *Warren v. United States*, 859 F. Supp. 2d 522, 542 (W.D.N.Y. 2012), *aff'd* 517 F. App'x 54 (2d Cir. 2013) (citation omitted).

Plaintiffs seemingly appreciate some of the principles laid out above, as their "First Amended Complaint for Declaratory and Injunctive Relief" largely[5] seeks equitable relief against individual tribal officers, and conspicuously fails to name either Plain Green – the entity that actually made the loans about which Plaintiffs now complain – or the Tribe, which wholly owns and operates Plain Green [*See generally* FAC.] Ultimately, however, Plaintiffs do not meet *all* of the criteria for applying *Ex parte Young*, as each of the statutes on which they predicate their FAC fail to meet one or more of the requirements necessary to invoke this limited exception. That is, Plaintiffs predicate their *Ex parte Young* suit on statutes that lack a private

---

[5] Plaintiffs do make a veiled attempt to recover retroactive money damages from the Tribal Defendants in the form of a request for an "[e]quitable surcharge seeking return of all interest charged above a reasonable rate and any financial charges associated with the loan," "[a] constructive trust over funds obtained illegally," and, under their "Unjust Enrichment" count, the "return[]" of "funds" received from Plain Green's borrowers, notwithstanding the characterization of the FAC as one for only "Declaratory and Injunctive Relief." [*See* FAC, pp. 1, 42-43.]. None of the statutes cited in Plaintiffs' Complaint provide for the remedy of a "constructive trust" or an "equitable surcharge," itself a sufficient basis for denying the first two forms of requested relief. *See Santa Clara Pueblo*, 436 U.S. at 72 (refusing to imply a cause of action for injunctive relief against a tribal official where the statute in question made provision only for a cause of action for habeas corpus); *see also Chun Hua Mui v. Union of Needletrades, Indus. & Textile Emples.*, 97 Civ. 7270, 1998 U.S. Dist. LEXIS 12783, at *17 (S.D.N.Y. Aug. 18, 1998) (finding that court lacked jurisdiction to impose a constructive trust when statute conferring jurisdiction "provides only prospective injunctive relief").

More generally, however, money damages against tribal officials operating within the scope of their authority are impermissible as a matter of law given that such an award would run directly against the sovereign tribe. *See, e.g., id.* at 59; *Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 310-11; *cf., e.g., Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (extending sovereign immunity to Tribe's casino, as tribal sovereign immunity protects the "sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general"). Plaintiffs' efforts to characterize their request for money damages as "equitable" does not affect the analysis. *Edelman v. Jordan*, 415 U.S. 651, 666 (1974) (reversing a Court of Appeals' decision to award "equitable restitution" of unlawfully withheld state benefits: "We do not read *Ex parte Young* or subsequent holdings of this Court to indicate that any form of relief may be awarded … so long as the relief may be labeled 'equitable' in nature"). Indeed, the requested damages are doubly barred in the sense that Plaintiffs seek *retroactive* monetary relief; that is, the return of or compensation for the interest and fees charged by Plain Green on loans taken out by Plaintiffs between 2000 and 2013. [FAC p. 43.] The *Ex parte Young* doctrine, however, applies only to *prospective* relief. *See Edelman*, 415 U.S. at 678.

right of action or remedy (FTCA, CFPA, and RICO), impose a statute of limitations requirement that Plaintiffs cannot meet (EFTA),[6] or are the product of state law (VCPA, unjust enrichment). *See Santa Clara Pueblo*, 436 U.S. at 72 (denying injunctive relief against a tribal official under the Indian Civil Rights Act because the Act does not provide a private cause of action for such relief); *Frazier*, 254 F. Supp. 2d at 310-11 (holding *Ex parte Young* to be "inapplicable" to tribal official because "the amended complaint only asserts violations of state law").

Given these legal deficiencies, Plaintiffs' *Ex parte Young* action must fail.[7]

<blockquote>

(a)     **The CFPA and the FTCA Do Not Confer Private Rights of Action**

</blockquote>

It is well-settled that neither the CFPA nor the FTCA – the statutes underlying Counts One and Two – confer a private right of action. *See, e.g., Nguyen v. Ridgewood Sav. Bank*, No. 14-1058, 2015 U.S. Dist. LEXIS 64301, at *35 (E.D.N.Y. May 15, 2015) (finding no private right of action under the CFPA)[8]; *Scott v. AOL Time Warner*, 109 F. App'x 480, 481 (2d Cir. 2004) (noting that the FTCA does not "provide for a private cause of action"). Accordingly,

---

[6] Plaintiffs' failure to comply with the statute of limitations provision of the EFTA, and the absence of private rights of action under the FTCA, the CFPA and RICO, also support dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *See infra* Section III.E.1.

[7] Additionally, Plaintiffs are unable to show that the statutes apply "substantively" to the Tribe such that they may be extended to the Defendants. *See Warren v. United States*, 859 F. Supp. 2d at 542. None of the statutes at issue are enforceable against tribal sovereigns, which are not expressly included among the "persons" or entities subject to these Acts. *See* 15 U.S.C. § 44 (FTCA); 12 U.S.C. § 5481(19) (CFPA); 15 U.S.C. § 1693a (EFTA); 9 V.S.A. § 2451a (VCPA); 18 U.S.C. §§ 1962, 1961(3) (RICO). There is a "longstanding interpretive presumption that 'person' does not include the sovereign." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000) (finding that the term "person" in the False Claims Act does not include states). Plain Green – a sovereign arm of the Tribe – similarly is insulated from the statutes' reach. *See Stoner v. Santa Clara Cnty. Office of Ed.*, 502 F.3d 1116, 1122 (9th Cir. 2007) (construing "person" under [the False Claims Act] in a way that "avoids suits against 'state instrumentalities' that are effectively arms of the state immune from suit"). *See also Howard ex rel. United States v. Shosone-Paiute Tribes of the Duck Valley Indian Reservation*, No. 13-16118, 2015 U.S. App. LEXIS 10040, at *2 (9th Cir. June 15, 2015) (explaining that "the Tribe, like a state, is a sovereign that does not fall within the definition of a 'person' under the [False Claims Act]"). Accordingly, these statutes are wholly inapplicable to the Tribe and thus, by extension, to the Defendants. *Warren v. United States*, 859 F. Supp. 2d at 542.

[8] Indeed, the CFPA expressly provides that "[i]f any person violates a Federal consumer financial law, the *[Consumer Financial Protection] Bureau* may . . . commence a civil action against such person". 12 U.S.C. § 5564(a) (emphasis added).

Counts One and Two plainly fail to support an *Ex parte Young* claim for injunctive relief against the Tribal Defendants. *Santa Clara Pueblo*, 436 U.S. at 72; *Warren*, 859 F. Supp. 2d at 542 (to seek injunctive relief against a tribal official, a plaintiff "must have a private cause of action…").

      (b)      **Private Parties Are Not Entitled to Recover on Claims for Equitable Relief Under RICO**

Plaintiffs' RICO claim similarly fails to support Plaintiffs' attempt to invoke the *Ex Parte Young* exception, as numerous courts have held that RICO's civil remedies provision, 18 U.S.C. § 1964, allows private parties to recover monetary damages *only* – not equitable relief. *See, e.g., Religious Technology Center v. Wollersheim*, 796 F.2d 1076, 1085-86 (9th Cir. 1986) (finding no injunctive relief available for private litigants); *Conkling v. Turner*, 18 F.3d 1285, 1296 (5th Cir. 1994) (collecting cases). While the Second Circuit has not expressly ruled on this issue, it has consistently expressed great doubt as to the availability of such relief under RICO. *See, e.g., Trane Co. v. O'Connor Secs.*, 718 F.2d 26, 28-9 (2d Cir. 1983) ("[I]t should be noted that courts which have confronted the issue have expressed serious doubt concerning the propriety of granting injunctive relief under any circumstances to private parties….We have the same doubts as to the propriety of private party injunctive relief…") (citations omitted); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482, 489 n.20 (2d Cir. 1984), *rev'd. on other grounds*, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) (finding that "§ 1964(c) as it now stands was not intended to provide private parties injunctive relief") (citations omitted); *see also AMA v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 446 (S.D.N.Y. 2008) ("Based upon the weight of Second Circuit authority and Congress's failure to address the issue within the statutory language itself, this Court will not infer that the right to injunctive and declaratory relief exists for private litigants under Section 1964 of RICO. Defendants' motion to dismiss these claims is hereby granted"); *AG of Can. v. RJ Reynolds Tobacco Holdings*, 103 F. Supp. 2d 134, 155 (N.D.N.Y

2000) ("Canada also seeks various forms of injunctive relief. Section 1964(c) limits private plaintiffs to damages and does not provide a basis upon which it may seek injunctive relief").

The majority of federal courts around the country share the Second Circuit's doubts regarding the availability of injunctive relief to private litigants under RICO. *See, e.g., In re Fredeman Litig.*, 843 F.2d 821, 830 (5th Cir. 1988) ("Congress indeed had several opportunities to give express authorization to private injunctive actions but chose not to do so, apparently because it hesitated in the face of the ramifications of that remedy."); *Johnson v. Collins Ent. Co.*, 199 F.3d 710, 726 (4th Cir. 1999) (expressing "substantial doubt whether RICO grants private parties . . . a cause of action for equitable relief," which is "especially acute in light of the fact that Congress has declined to authorize injunctive remedies for private parties"); *Wheeling-Pittsburgh Steel Corp. v. Mitsu Corp.*, 221 F.3d 924, 927 n.2 (6th Cir. 2000) ("[O]nly treble damages, attorneys' fees and costs are afforded to private parties under RICO."); *Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 795 (D. Md. 2009) (same); *see also Religious Technology Center*, 796 F.2d at 1085-86; *Conkling*, 18 F.3d at 1296.[9]

Without a right to injunctive relief, Plaintiffs cannot sustain an *Ex parte Young* exception to the Tribal Defendants' sovereign immunity. *Santa Clara Pueblo*, 436 U.S. at 58.

(c)  **Plaintiffs' Claim Under The EFTA Is Time-Barred**

The EFTA dictates that any action must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. 1693m(g). Plaintiffs' allegations involving the EFTA, however, clearly place any possible violation far outside this one-year limitations period. The FAC alleges that Defendants violated the EFTA by "conditioning the extension of credit on

---

[9] That RICO lacks a private right to injunctive relief is also the official position of the United States government. *See* Brief for United States at 6, *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003) (Nos. 01-1118 and 01-1119).

recurring preauthorized electronic fund transfers." [FAC ¶187.] A plain reading of the FAC reveals that the most recent alleged violation occurred no later than July 17, 2013, when Angela Given last obtained a payday loan. [*See* FAC ¶ 63.] Plaintiffs did not file their initial Complaint until May 13, 2015 [*see* ECF No. 1] – well beyond the one-year limitations period imposed by the EFTA. Accordingly, Plaintiffs' claim under the EFTA is indisputably time-barred[10] and Count Three of Plaintiffs' FAC cannot support the imposition of injunctive relief against the Tribal Defendants under an *Ex parte Young* theory.

(d) **The *Ex parte Young* Exception Applies Only to Violations of Federal Law**

It is long settled that the *Ex parte Young* doctrine may be applied to enjoin only violations of federal – not state – law. Indeed, where a "complaint only asserts violations of state law … the *Ex parte Young* exception is inapplicable." *Frazier*, 254 F. Supp. 2d at 310. *See also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (concluding that *Ex parte Young* is inapplicable to state law claims). As such, all of Plaintiffs' state law claims fall flat.

For the foregoing reasons, Plaintiffs have failed to properly invoke the limited *Ex parte Young* exception to Defendants' immunity, this Court is without subject matter jurisdiction over this case, and the action must be dismissed. *See* Fed. R. Civ. P. 12(b)(1).[11]

---

[10] It is of no matter that Plaintiffs purport to represent a class of hypothetical individuals, as at least one named plaintiff must adequately state a claim for relief. *Hardy v. Fischer*, 701 F. Supp. 2d 605, 611 n.5 (S.D.N.Y. 2010) (to survive a motion to dismiss, "the allegations of at least one named plaintiff must state a claim for relief").

[11] Even if Plaintiffs were otherwise able to find support for their ability to bring injunctive relief against Defendants on an *Ex parte Young* theory, their FAC fails to establish that each Tribal Defendant has a connection to the allegedly unlawful acts such that he has the authority to perform the injunctive relief sought– this lapse is fatal to Plaintiffs' action. *See, e.g., Burlington N. & Santa Fe Ry. v. Vaughn*, 509 F.3d 1085, 1093 (9th Cir. 2007) (declining to apply *Ex parte Young* to tribal official, as plaintiff failed to allege that the tribal official was "in any way responsible for enforcing the [allegedly unlawful] tax"); *see also, e.g., Kuck v. Danaher*, 822 F. Supp. 2d 109, 141 (D. Conn. 2011) (finding that "*Ex parte Young* only applies where the official sued has some connection with the enforcement of the [allegedly unconstitutional act]") (alterations in original; quotation marks omitted). Plaintiffs have not established that any of the Tribal Defendants have authority to unilaterally provide the remedy sought in the FAC. *See, e.g., Hall v. Marshall*, 479 F. Supp. 2d 304, 318 (E.D.N.Y. 2007) (declining to extend *Ex parte*

(continued...)

## 2.    The Plaintiffs Lack Article III Standing

Article III of the United States Constitution limits the jurisdiction of this Court to the resolution of "cases" and "controversies." U.S. Const. art. III. "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012).

The plaintiff bears the burden of demonstrating standing for each cause of action and form of relief sought. *See id.* at 64. To establish standing, a plaintiff must demonstrate: (1) an injury in fact (a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (a "'fairly . . . trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant"); and (3) redressability (that it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotations omitted). Significantly, this standard applies equally to the named plaintiffs of class actions. *See Dodge v.*

---

*Young* where plaintiff failed to allege that defendants had "authority to unilaterally correct [the allegedly unlawful conduct]"). Indeed, Plaintiffs repeatedly allege that the Tribal Defendants in fact have *no control* over the allegedly unlawful conduct. The allegations underlying each and every one of Plaintiffs' claims provide that "Rees and Think Finance, through their control over Rosette, Whitford, and McInerney [committed the allegedly unlawful acts]." [*See, e.g.,* FAC ¶¶ 31-35.] Thus, Plaintiffs wholly fail to attribute the allegedly unlawful conduct to the Tribal Defendants. Similarly, Plaintiffs seek injunctive relief "barring Defendants from "providing, collecting on, and servicing illegal loans" and from "conditioning loans on agreeing to ACH withdrawals" [*see* FAC p. 43.] However, there is no allegation that each of the Tribal Defendants has the authority to perform the injunctive relief sought. Indeed, Plaintiffs' FAC necessitates the exact opposite conclusion – that the Tribal Defendants have *no control* over the allegedly unlawful conduct. [*See, e.g.,* FAC ¶ 69, "Defendants Rees and Think Finance, through their control over Defendants Rosette, Whitford, and McInerney withdrew money from Ms. Given's account in Vermont by ACH withdrawal"; FAC ¶ 70, "Defendants Rees and Think Finance through their control over Defendants Rosette, Whitford, and McInerney negotiated the purported and fraudulent contract with Ms. Given in Vermont."] Accordingly, Plaintiffs' attempted *Ex parte Young* action against the Tribal Defendants plainly fails.

*Cnty. of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004) ("the named plaintiffs in this action must themselves have standing to seek injunctive relief").

(a)    <strong>Plaintiffs Have Failed to Allege Injury-in-Fact</strong>

With regard to the injury requirement, the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013) (citation, internal quotation marks, and alterations omitted; emphasis in original). And to demonstrate an "injury in fact" when seeking equitable relief – as is the case here – a plaintiff "must demonstrate that a defendant's conduct is causing irreparable harm." *Schroedel v. N.Y. Univ. Med. Ctr.*, 885 F. Supp. 594, 598 (S.D.N.Y. 1995). "This requirement cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again." *Id.* Thus, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Vaughn v. Consumer Home Mortg. Co.*, 297 F. App'x 23, 25 (2d Cir. 2008) (quotation marks and citation omitted); *L.A. v. Lyons,* 461 U.S. 95, 105-06 (1983).

As an initial matter, Plaintiffs have not demonstrated a certain and irreparable "injury in fact" sufficient to establish Article III standing to bring its FAC. Rather, Plaintiffs articulate nothing more than speculative, unspecified harm that is plainly insufficient to establish standing. *See*, *e.g.*, FAC ¶¶ 50, 66 (claiming as '"irreparable injury" that "*if* [the Plaintiff] pays off the loan, she *is likely* to never see her funds returned from Defendants because they have claimed and *likely* will claim tribal immunity") (emphasis added). Hypothetical statements – involving multiple layers of contingency – do not establish the ongoing, irreparable and concrete harm required to establish Article III standing to bring a claim for injunctive or declaratory relief. *Clapper*, 133 S.Ct. at 1147 ("allegations of possible future injury are not sufficient").

Plaintiffs also attempt to manufacture "irreparable injury" by stating that the named-Plaintiffs have experienced reputational harm because some unidentified entity and/or the non-Tribal Defendants report their loans to credit rating agencies and "[t]his reporting negatively impacts [their] ability to obtain financing from other lenders." [*See* FAC ¶¶ 35, 50, 51, 66, 67.] Again, these statements fail to establish an injury sufficient to make out Article III standing. There is no allegation *when* these loans were allegedly reported or to which credit bureaus these loans were reported; no description of the extent to which Plaintiffs' credit rating was negatively affected (for example, the impact on their FICO score); nor is there any reference to Plaintiffs' attempts – *and failures* – to obtain financing from other lenders such that they could show a *concrete* and particularized harm. By failing to do so, Plaintiffs' claimed "irreparable injury" in this regard is merely hypothetical and must be rejected. *See, e.g., Williams v. N.Y. State Office of Mental Health*, 2011 U.S. Dist. LEXIS 110589, at *9 (E.D.N.Y. Sept. 28, 2011) (finding plaintiff's purported Article III injury 'did not provide standing, as the claimed injury amounted to nothing more than a "subjective fear of a potential violation of [the plaintiff's] due process rights," particularly given that "[t]he threat of injury in fact is merely hypothetical, and [the plaintiff] has failed to show that it is concrete and particularized").

### (b)     Plaintiffs Have Failed to Establish Redressability

To establish standing, a plaintiff must also show redressability – namely, that it is "likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Nicosia v. Amazon.com, Inc.*, No. 14-4513, 2015 U.S. Dist. LEXIS 13560, *36 n.11 (E.D.N.Y. Feb. 2, 2015) (quoting *Sprint Commc'ns Co. v. APCCServs., Inc.*, 554 U.S. 269, 273-74 (2008)). In this sense, "the injury alleged must be capable of being redressed through injunctive relief 'at that moment.'" *Nicosia*, 2015 U.S. Dist. LEXIS 13560, *33 (quoting *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993)).

Plaintiffs fail to demonstrate redressability because the alleged irreparable injuries – that each Plaintiff is "likely to never see her funds returned" and "her loan continues to be reported to credit rating agencies" which "negatively impacts her ability to obtain financing from other lenders" [*see* FAC ¶¶ 50, 66] – would not be redressed by the injunctive relief sought, as Plaintiffs seek injunctions unrelated to these purported injuries, barring Defendants from "providing, collecting on, and servicing illegal loans" and from "conditioning loans on agreeing to ACH withdrawals" [FAC p. 43.]. *See, Nicosia*, 2015 U.S. Dist. LEXIS 13560, at *36-39 n.11 (concluding that Plaintiff would lack standing under the redressability prong because his alleged injury would not be redressed by the sought injunction, which sought to change packaging, enjoin future sales, and notify other past purchasers of dietary supplements" because redressability "requires that it be likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit") (citations and internal quotation marks omitted).  Because there is absolutely no connection between Plaintiffs' claimed "irreparable injury" and the relief sought to remedy the injury, Plaintiffs have wholly failed to establish Article III standing.[12]

**B.    Alternatively, the Court Should Dismiss this Matter in its Entirety, as Neither the Forum Nor Venue Are Proper**

**1.    The Court Should Enforce the Parties' Agreement to Arbitrate**

Each of the named-Plaintiffs agreed to resolve the claims they have raised in their complaint before a neutral arbiter.  Neither has done so.  Plain Green's arbitration provisions are

---

[12] Again, as discussed *supra* n.10, it is of no consequence that Plaintiffs purport to represent a class of similarly situated individuals, some of whom may hypothetically be harmed, as the named-Plaintiffs *themselves* must demonstrate the irreparable harm necessary to confer standing.  *See Spiro v. Healthport Techs., LLC*, 14 Civ. 2921 (PAE), 2014 U.S. Dist. LEXIS 121346, at *22-23 (S.D.N.Y. Aug. 29, 2014) (dismissing with prejudice plaintiffs' class action complaint where complaint "fail[ed] to plead a plausible claim that the named plaintiffs face a real or immediate threat of being wronged again") (quotation marks omitted).

standard-issue, consumer-friendly, and regularly enforced by the federal courts.  *See Gunson*, 43

F. Supp. 3d 1396 (after a thorough review of Plain Green's arbitration provision, granting motion

to compel arbitration of borrower's RICO claim); *Graham*, No. 3:12-cv-1460, 2014 WL

4090548 (same); *Booth*, No. 13-5968, 2014 WL 3952945 (same).  Plaintiffs are no doubt aware

that courts routinely enforce Plain Green's arbitration agreements – indeed, Plaintiffs explicitly

reference Ms. Booth and Mr. Graham in their complaint, apparently as additional members of

their purported class and notwithstanding the dismissals of the *Booth* and *Graham* actions.  *See*

FAC ¶¶ 72-73.  Not surprisingly, then, they strenuously argue that the agreements are

"unconscionable" and "fraudulent."  *Id.* at ¶ 119, *et seq.*  As discussed below, however, these

arbitration clauses are perfectly valid, which is why they have sustained repeated review by

multiple federal judges under similar circumstances.

(a)    <strong>The Arbitration Clause</strong>

The Consumer Loan Agreements ("Agreements")[13] clearly inform the consumer,

in **BOLD AND CAPITALIZED** font, that they include a "**WAIVER OF JURY TRIAL AND

ARBITRATION**" provision.  *See* Ex. B.  Before even detailing the arbitration provision, the

Agreements inform borrowers, again in **BOLD AND CAPITALIZED FONT**, that they have a

**RIGHT TO OPT OUT** of arbitration, and describe how a borrow exercises that opt-out

option.[14]  *Id.*  Neither named-Plaintiff elected to opt out of binding arbitration and Plaintiffs are

therefore bound to arbitrate the present dispute.  *See* Ex. A (Rosette Aff.).

---

[13] The Plain Green loan Agreements cited in the FAC are materially identical and have all been attached hereto as Exhibit B.  For ease of reference, this memorandum refers to the Agreements collectively as "Exhibit B."

[14] Each of the arbitration clauses specify, in materially identical terms, that the borrower may opt out by:  "**ADVIS[ING] US IN WRITING EITHER BY . . . A LETTER . . . OR [] BY EMAIL**" no later than  "**60 DAYS FOLLOWING THE ORIGINATION DATE**"  *See* Ex. B.  The clauses specify that if borrowers opt out, "**ANY DISPUTES SHALL [] BE GOVERNED UNDER THE LAWS OF THE CHIPPEWA CREE TRIBE AND MUST BE BROUGHT WITHIN THE COURT SYSTEM THEREOF.**"  *Id.*

After advising potential borrowers of their right to opt out, the Agreements' arbitration provision advises borrowers to "**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY**" and explains that "[u]nless you exercise your right to opt-out of arbitration in the manner described above, any dispute you have with Lender or anyone else under this Agreement will be resolved by binding arbitration." *See* Ex. B.[15]  The arbitration clause broadly defines "dispute" as "any claim or controversy *of any kind* between you and us," where "us" is defined as the "Lender . . . and [its] respective agents, representatives, *employees, officers, directors . . .*" *Id.* (emphasis added).  It also provides that "the term Dispute is to be given its broadest possible meaning," and covers disputes "based on any legal or equitable theory . . . regardless of the type of relief sought." *Id.*  Thus, the arbitration clause expressly covers Plaintiffs' purported declaratory and injunctive relief claims against the Tribal Defendants, who are all officers and directors of Plain Green.  [FAC ¶¶ 6, 7, 8.][16]

Pursuant to the arbitration clause, the Plaintiffs may elect to arbitrate before the American Arbitration Association, JAMS, or before a mutually-agreed upon private party, and the arbitration "will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes." Ex. B.  When resolving the dispute, "[t]he arbitrator will apply the laws of the Chippewa Cree Tribe and the terms of this Agreement." *Id.*  The arbitration provision provides significant convenience for the Plaintiffs as it affords them the option of arbitrating within thirty miles of their homes or on the Reservation. *Id.*  Furthermore,

---

[15] Significantly, the Agreements contain a class action waiver, which Plaintiffs have violated by bringing this class action lawsuit.  Defendants reserve the right to enforce the class action waiver in any court or arbitration. *See, e.g., Am. Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2309 (2013) (upholding class action waiver and instructing courts to "rigorously enforce arbitration agreements according to their terms") (internal quotation marks omitted).

[16] Notably, this "Agreement to Arbitrate survives any termination, amendment, expiration, or performance of any transaction between you and us." Ex. B.

the provision charges Plain Green with "pay[ing] the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the arbitration." *Id.*

### (b) The Court Should Honor the Parties' Agreement to Arbitrate

The Court should defer to the parties' binding arbitration clause, which mandates arbitration of Plaintiffs' action. "There is a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998). The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Indeed, the "central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotation marks and citation omitted). Consistent with these fundamental principles, courts routinely enforce arbitration agreements in the consumer lending context.[17]

Here, because Plaintiffs declined to opt out of the Agreements' arbitration provisions, they are bound to arbitrate their disputes before a neutral arbitrator.[18] Accordingly, the Court should dismiss the FAC in its entirety, affording Plaintiffs the opportunity to pursue arbitration, *see, e.g., Vt. Pure Holdings, Ltd. v. Descartes Sys. Grp., Inc.,* 140 F. Supp. 2d 331, 336 (D. Vt. 2001) (granting defendants' 12(b)(3) motion to dismiss for improper venue where

---

[17] *See, e.g., Gunson*, 43 F. Supp. 3d 1396; *Achey v. BMO Harris Bank, N.A., et al.*, 64 F. Supp. 1170 (N.D. Ill. 2014); *Booth*, No. 13-5968, 2014 WL 3952945; *Riley v. BMO Harris Bank, N.A., et al.*, No. 13-1677, 2014 WL 3725341 (D.D.C. July 29, 2014); *Graham*, No. 3:12-cv-1460, 2014 WL 4090548; *Labajo v. First Int'l Bank & Trust, et al.*, No EDCV 14-00627-VAP, 2014 WL 4090527 (C.D. Cal. July 9, 2014); *Moss v. BMO Harris Bank, N.A., et al.*, 24 F. Supp. 3d 281 (E.D.N.Y. 2014); *Elder v. BMO Harris Bank, N.A., et al.*, No. JFM-13-2014, 2014 WL 1429334 (D. Md. Apr. 11, 2014); *Gordon v. U.S. Bancorp*, No. 13-cv-3005 (D. Minn., Apr. 21, 2014) (Docs. # 36 & 39).

[18] Plaintiffs may avoid binding arbitration only by demonstrating that a valid contract law defense allows them to bypass their obligation to arbitrate. *See, e.g., Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). No such defense is available here.

the arbitration clause was "sufficiently broad" to cover all claims against defendants),[19] or,

alternatively, should compel arbitration in accordance with the terms of the parties' arbitration

agreement. *See* 9 U.S.C. § 4; *see also Abbott v. Keen, Inc.,* Case No. 5:13-cv-267, 2014 U.S.

Dist. LEXIS 166877, at *23 (D. Vt. May 7, 2014) (granting defendants' motion to compel

arbitration pursuant to parties' arbitration agreement and dismissing case).[20]

## 2.     The Action Should be Dismissed for Improper Venue

"On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(3), a plaintiff bears

the burden of demonstrating proper venue." *Zorn v. New York*, Docket No. 1:03-cv-314, 2004

U.S. Dist. LEXIS 296, *3 (D. Vt. Jan. 9, 2004).  Plaintiffs, however, cannot show that "a

substantial part of the events or omissions giving rise to the claim" occurred in this judicial

district, as required by 28 U.S.C. § 1391(b)(2). [*See* FAC ¶ 20.]  In the Second Circuit, venue

inquiries under section 1391(b)(2) focus on where the *Defendants'* acts took place, not where a

Plaintiff may have felt harm. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d

Cir. 2005); *see also Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 558-

59 (E.D.N.Y. 2011).

---

[19] And, in any event, the Agreements expressly delegate questions of arbitrability to the arbitrator.  It is well established that "parties can agree to arbitrate 'gateway' questions of arbitrability." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  Here, the Agreements expressly provide that "any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate" shall be submitted to arbitration. *See* Ex. B.  Accordingly, as an initial matter, any questions regarding arbitrability are properly delegated to the *arbitrator* – not the Court – requiring this entire action to be dismissed in favor of arbitration. *See, e.g., Kemph v. Reddam*, No. 13 CV 6785, 2015 U.S. Dist. LEXIS 38861, *1 (N.D. Ill. Mar. 27, 2015) (compelling arbitration of Plaintiffs' consumer lending claims and gateway questions of arbitrability before an arbitrator applying the law of the Cheyenne River Sioux Tribe, and dismissing Plaintiffs' putative class action lawsuit in its entirety).

[20] If the Court declines to enforce the binding arbitration agreement contained in the Agreements, the Defendants move the Court to enforce the Agreements' forum selection clause and dismiss this case on the basis of *forum non conveniens*.  Here, the parties expressly designated the Chippewa Cree Tribal Court as the appropriate forum for any in-court dispute resolution. *See* Ex. B.  There is a "strong federal public policy supporting the enforcement of forum selection clauses." *Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014).  Moreover, the Tribe has a longstanding right to adjudicate civil disputes pursuant to the laws it has established for itself and it is well established that in doing so, it may exercise jurisdiction over non-members, as would be the case here. *See, e.g, Montana v. United States*, 450 U.S. 544 (1981); *Williams v. Lee*, 358 U.S. 217 (1959) (recognizing that tribal jurisdiction extended to a non-member based on an on-reservation transaction).

Here, venue plainly does not lie in the District of Vermont, as no "significant events" underlying Plaintiffs' claims occurred in Vermont.  The FAC fails to establish that any of the Tribal Defendants affirmatively did anything in this district, and alleges only that Defendants are officers and directors of Plain Green (which is located on the Tribe's Reservation in Montana, not in Vermont) and that they acted under the control of Defendants Rees and Think Finance.  [FAC ¶¶ 2, 6-8, 32-35.]  And while Plaintiffs' FAC arises out of the loan Agreements that Plaintiffs entered into with *non-party* Plain Green, these loan Agreements were formed on the Chippewa Cree Tribe's Reservation – not in Vermont.  *See* Ex. A (Rosette Aff.); Restatement (Second) of Conflict of Laws, § 188 cmt. e (1971) (noting that the "place of contracting is the place where occurred the last act necessary . . . to give the contract binding effect"); 2 Williston on Contracts § 6:62 (4th ed.) ("[T]he place of the contract is the place where the last act necessary to the completion of the contract was done.").  Accordingly, Vermont is not the site of "a substantial part of the events" underlying Plaintiffs' action, warranting dismissal of this action. Fed. R. Civ. P. 12(b)(3).[21]

### C.    Alternatively, The Complaint Must Be Dismissed Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction

The Court does not have personal jurisdiction over the Tribal Defendants; as such, Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).  Plaintiffs bear the burden of establishing that the Court can properly exercise personal jurisdiction over the Defendants.  *See Sylvester v. Pipino*, Docket No. 1:12-cv-00057 (JGM), 2012 U.S. Dist. LEXIS 164944, at *4 (D. Vt. Nov. 19, 2012).  Because Vermont's long-arm statute, 12 V.S.A. § 913(b), extends personal jurisdiction to the full extent permitted by the Due Process Clause, the analysis

---

[21] As discussed *infra* at footnote 24, Plaintiffs' claim for relief under RICO, which provides an additional means of establishing venue and personal jurisdiction, *see* 18 U.S.C. § 1965, does not affect this analysis.

in this case involves only a single step: whether personal jurisdiction comports with due process. *Dumont v. Corr. Corp. of Am.*, Civil Action No. 2:14-cv-209, 2015 U.S. Dist. LEXIS 79032, at *7 (D. Vt. Apr. 29, 2015), *report and recommendation adopted in its entirety by* 2015 U.S. Dist. LEXIS 78193 (D. Vt. June 17, 2015).  This due process analysis "requires courts to consider: (1) whether the defendant has sufficient 'minimum contacts' with the forum state, and (2) if such contacts exist, whether jurisdiction based on such contacts is reasonable under the circumstances of the particular case."  *Sylvester*, 2012 U.S. Dist. LEXIS 164944, at *4.[22]

In making its analysis, "the court need not draw argumentative inference in Plaintiff's favor, nor should the court accept as true a legal conclusion couched as a factual allegation."  *Dumont*, 2015 U.S. Dist. LEXIS 79032 at *6 (quotation marks and citation omitted).

Here, Plaintiffs' FAC fails to demonstrate that the Defendants have sufficient "minimum contacts" with Vermont to establish personal jurisdiction.  Indeed, the FAC fails to allege *any* contact that Defendants Joel Rosette, Tim McInerney, and Ted Whitford *personally* had and/or have with Vermont.  [*See generally* FAC.]  Nor could it, as the Defendants in fact have no connection to the state.[23]  The only allegations that even arguably tie the Defendants to Vermont are those allegations related to their roles as officers and directors of non-party Plain Green, [*see* FAC ¶¶ 6, 7, 8.], but these allegations are insufficient to confer personal jurisdiction.

---

[22] The "minimum contacts" inquiry contemplates two types of jurisdiction: "specific" and "general."  General jurisdiction exists when the defendants' affiliations with the forum state are so "continuous and systematic as to render them essentially at home in the forum State.  *Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany)*, 745 F.3d 30, 38 (2d Cir. 2014) (quotation marks and citation omitted).  Here, there is no basis for asserting "general jurisdiction" over the Tribal Defendants, as none are domiciled in Vermont.  *See, e.g., Reich v. Lopez,* 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) ("Only on truly 'exceptional' occasions may general jurisdiction extend over individuals who are 'at home' in a state that is not otherwise their domicile.").  Nor is there a basis for specific jurisdiction since, as described below, the Defendants have not "purposely availed" themselves of Vermont so as to establish the requisite "minimum contacts."  *Dumont*, 2015 U.S. Dist. LEXIS 79032, at *8-9.

[23] None of the Tribal Defendants reside in Vermont, own property in Vermont, or, to their knowledge, ever have set foot in Vermont.  *See* Ex. A (Rosette Aff.; Whitford Aff.; McInerney Aff.).   Plaintiffs thus have failed to establish Defendants' "minimum contacts" with Vermont, necessitating dismissal of the Complaint.  *See Dumont*, 2015 U.S. Dist. LEXIS 79032 at *10 (finding corporate officers' contacts with the forum to be "weak" when "[n]one of them live or have ever lived in Vermont" and "none own property in Vermont," and granting motion to dismiss).

Even if Plaintiffs sufficiently alleged that non-party Plain Green has sufficient "minimum contacts" with Vermont, it is well settled that individual officers and employees of a company are not automatically subject to the same personal jurisdiction as their employer. *See Dumont*, 2015 U.S. Dist. LEXIS 79032, at *10-11 (D. Vt. Apr. 29, 2015) (concluding that "Defendants' status as 'high level managers' or 'officers' of [the company] . . . is therefore not a sufficient basis for concluding that they are subject to the same personal jurisdiction as their employer" and dismissing claims against these individuals). *See also, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (noting that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him"). Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.* at 781 n.13.

Plaintiffs' FAC thus fails to establish that any of the Defendants has "minimum contacts" with Vermont, requiring its dismissal under Fed. R. Civ. P. 12(b)(2).[24]

### D. Alternatively, the FAC Must Be Dismissed Because Plain Green and the Tribe are Necessary and Indispensable Parties

The FAC should also be dismissed for its failure to join Plain Green and the Tribe, both of which are necessary and indispensable parties under Federal Rule of Civil Procedure 19. Fed. R. Civ. P. 12(b)(7), 19. Courts apply a two-step inquiry when determining

---

[24] Based on the foregoing, RICO's separate grant of jurisdiction, section 1965(a), which authorizes the commencement of a RICO action in a district court in which a defendant "resides, is found, has an agent, or transacts his own affairs," also is unavailing. *See* section III.C; *see also Population Planning Assocs. v. Life Essentials, Inc.*, 709 F. Supp. 342, 344 n.12 (S.D.N.Y. 1989) (in concluding that trips and mailings to the state in question were insufficient to establish jurisdiction, defining the 'transacting affairs' prong as "*regularly* conducting business of a *substantial and continuous character*") (emphasis retained) (citations omitted). Nor is there a basis to assert jurisdiction over the Tribal Defendants via section 1965(b), which permits a RICO action to be brought "in a district court where personal jurisdiction … is established as to at least one defendant" when the "ends of justice so require." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998). The remaining Defendants offer even less of a connection to Vermont; moreover, the "ends of justice" are not met so as to justify an exercise of section 1965(b), as all Defendants can be joined in suit in an arbitration proceeding to be held near Plaintiffs' residences. *Id.* n. 5 (not reaching the issue, but noting that the District Court found that the amenability of all defendants' to suit in Pennsylvania entailed that the "ends of justice" did not require the extension of personal jurisdiction in New York under section 1965(b)).

whether to dismiss an action for failure to join a necessary and indispensable party under Fed. R. Civ. P. 19. *See Kermanshah v. Kermanshah*, 08-CV-409(BSJ)(AJP), 2010 U.S. Dist. LEXIS 45896, at *5 (S.D.N.Y. May 11, 2010). First, the court assesses whether the absent party belongs in the lawsuit – *i.e.* whether the absent party is "necessary." Fed. R. Civ. P. 19(a). A party is "necessary" when, for example, "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may[,] as a practical matter[,] impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a). If a party is "necessary," the court then determines whether joinder of the party is feasible and, if not, whether the party is "indispensable," requiring dismissal of the action. Fed. R. Civ. P. 19(b).

Both Plain Green and the Tribe are "necessary" parties under Rule 19. Plaintiffs entered into the allegedly unlawful loan Agreements with *Plain Green* – not the named Defendants. *See* Exhibit B. It is well established that in an action involving the validity of an agreement, all parties who may be affected by the determination of the action hold such an interest that they are necessary parties to the action under Fed. R. Civ. P. 19(a). *See e.g., Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) (concluding that Seneca Nation was a necessary party because, "[a]s a party to an Agreement negotiated for over two decades, the Nation's interest in the validity of the lease agreement is significant").[25]

Plaintiffs purport to represent a class comprising "[a]ll persons who took out payday loans from Defendants." [FAC ¶ 156.] In reality, however, the Plaintiffs entered into the loan Agreements at issue with *Plain Green* – not the individual Defendants. Moreover, at heart,

---

[25] *See also, e.g., Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) (noting that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable," and affirming dismissal of action where tribe was necessary but joinder was infeasible because of the tribe's inherent sovereign immunity).

Plaintiffs' claims concern the content and validity of these Agreements. As the party to the very Agreements at the center of this matter, Plain Green undoubtedly has an "an interest relating to the subject of the action" and accordingly is a necessary party. *See, e.g. World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271, 277 (N.D.N.Y. 2000) (concluding that tribal Casino was necessary party to action concerning Casino's Lease and Sales Agreements).

Further, Plaintiffs' action threatens Plain Green's existence, which undoubtedly renders both Plain Green and the Tribe necessary parties to this action. As described above, the Tribe wholly owns and operates Plain Green as an economic arm of the Tribe. *See supra* Section II. Plaintiffs contend that Plain Green's entire lending model is unlawful and seek various declarations to this effect, as well as an injunction preventing the named Officers and Directors of Plain Green from "providing, collecting on, and servicing" all of Plain Green's allegedly unlawful loans. [*See* FAC p. 43.] In short, Plaintiffs seek to terminate Plain Green as a going concern, a result which would devastate not only Plain Green and its employees, but also the thousands of Chippewa Cree tribal members who depend on Plain Green's revenues. Clearly, Plain Green and the Tribe maintain a significant interest in this action.[26]

Although both Plain Green and the Tribe are necessary parties to this action, joinder of these parties is infeasible under Fed. R. Civ. P. 19(b) due to their shared sovereign immunity, a fact that Plaintiffs tacitly acknowledge by failing to name them in the FAC. Indeed, absent a clear and unequivocal waiver of immunity from Congress or the Tribe itself, the Tribe

---

[26] *See, e.g., Village of Hotvela Traditional Elders v. Indian Health Servs.*, 1 F. Supp. 2d 1022, 1026 (D. Ariz. 1997), *aff'd* 141 F.3d 1182 (9th Cir. 1998) (tribe was a necessary party to a suit challenging water and sewer facilities, because as the "future owner of the completed water and sewer facilities, the Tribe has an obvious legal interest in the action" and because the construction project bore on "the interest of the Tribe in providing for the general tribal welfare through receipt or generation of funds and the expenditure of funds for public purposes").

and its entities – here, Plain Green – enjoy immunity from suit. *See, e.g., World Touch Gaming, Inc.*, 117 F. Supp. 2d at 275 (a tribe's immunity "extends to tribal enterprises").

In light of these entities' sovereign immunity, the Court should dismiss Plaintiffs' FAC in its entirety. Rule 19(b) directs that when it is infeasible to join a necessary party, the court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) lists certain factors for a court to consider when making this determination; however, the Second Circuit has explained that "when an indispensable party is immune from suit, there is very little room for balancing of other factors set out in rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (internal citations and quotation marks omitted). Indeed, cases involving tribal sovereign immunity do not pose a mere "procedural defect" requiring dismissal; rather, "the dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." *Id.*

Based on the foregoing, the Court should find that Plain Green and the Tribe are necessary and indispensable parties that cannot be joined, and dismiss this action in its entirety.

### E. Alternatively, the Court Should Dismiss this Action for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[27] Thus, "threadbare recitals of the elements of a cause of

---

[27] As Plaintiffs' causes of action under the FTCA, CFPA, EFTA, VCPA, and its RICO mail and wire fraud theories sound in fraud, they should be analyzed under the heightened pleading standard established by Federal Rule of Civil
(continued...)

action, supported by mere conclusory statements, do not suffice." *Id.* For the purposes of a 12(b)(6) motion to dismiss, a complaint includes "any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Relevant here, if "the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994), *aff'd*, 43 F.3d 1458 (2d Cir. 1994). As discussed below, Plaintiffs' FAC must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[28]

### 1. The FTCA, the CFPA and RICO Do Not Confer Private Rights of Action, and the EFTA Claim is Time-Barred

As described at length above, neither the FTCA nor the CFTA provides a private right of action. *See, e.g., Nguyen*, 2015 U.S. Dist. LEXIS 64301, at *35 (finding no private right of action under Sections 5531 and 5536 of the CFPA and dismissing with prejudice Plaintiffs' CFPA claims regarding alleged unfair and abusive practices); *Naylor v. Case & McGrath, Inc.,*

---

Procedure 9(b). *See, e.g., FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) (applying the heightened pleading standard to a claim brought by the FTC which "sounds in fraud because it alleges a unified course of conduct and relies entirely on that course of conduct as the basis of its claims"); *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (noting that a complaint alleging a mail and/or wire fraud theory of RICO must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), which requires that party alleging fraud to "state with particularity the circumstances constituting the fraud"). Claims evaluated under this standard must be dismissed where they "fail[] to allege the 'who, what, when, where, and how of the Defendants' course of conduct." *FTC v. Lights of Am., Inc.*, at 854. This Rule 9 pleading standard should apply to Plaintiffs' allegations; yet, as described below, Plaintiffs cannot survive even the more forgiving Rule 8 standard.

[28] Each of the arguments under this section separately serves to defeat subject matter jurisdiction under the Plaintiffs' *Ex parte Young* theory. *See supra* Section III.A.1; *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 88 (2d Cir. 2001) (noting that injunctive relief against a tribal official is available only when the "law under which [plaintiff] seeks injunctive relief …appl[ies] substantively to the [tribal] agency").

585 F.2d 557, 561 (2d Cir. 1978) ("it is clear that no private right of action arises under [the Federal Trade Commission Act]").  Plaintiffs similarly cannot state a claim for equitable relief under RICO.  [*See supra* section III.A.1.b.]  Finally, Plaintiffs' allegations involving the EFTA are plainly time-barred, as the most recent alleged violation occurred in 2013 [*see* FAC ¶ 63], placing Plaintiffs well outside the one-year limitations period imposed by statute.  *See* 15 U.S.C. 1639m(g); *see also Apostolidis v. JP Morgan Chase & Co.*, No 11-CV-5664 (JFB) (WDW), 2012 U.S. Dist. LEXIS 157733, at *15 (E.D.N.Y. Nov. 2, 2012) (applying one-year limitations period and dismissing EFTA claim with prejudice).  Accordingly, Counts One, Two, Three, Five and Six of Plaintiffs' FAC should be dismissed in their entirety under Rule 12(b)(6).

### 2. Plaintiffs Have Failed to Allege Violations of the Statutes

Plaintiffs also have failed to allege the statutory violations necessary to articulate claims for relief under Rule 12(b)(6).  As an initial matter, Plaintiffs bring only general allegations against the "Defendants" or the Tribal Defendants collectively as "Defendants Rosette, Whitford, and McInerney," relying on perfunctory, conclusory statements.  The FAC thus wholly fails to offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," as required to properly state a claim. *Iqbal*, 556 U.S. at 678.  Instead, Plaintiffs' statements amount to nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.*  Compounding matters, as noted below, Plaintiffs' conclusory allegations fail to articulate violations of the statutes cited in the FAC.

(a)     **Plaintiffs Have Failed to Allege a Violation of the FTCA**

Plaintiffs allege that the FTCA "bars the use of unfair methods of competition" [*see* FAC ¶ 174] and contend that Defendants violated the "unfair methods of competition"[29] prong of the FTCA in a variety of ways.  [*See* FAC ¶¶ 173-180.][30]  However, Plaintiffs have not alleged any concerns remotely related to *competition* that would give rise to liability under this prong.  [*See generally* FAC.]  Indeed, Plaintiffs are not *competitors* of the Defendants or non-party Plain Green; rather, they are *borrowers*.  Accordingly, Plaintiffs have failed to allege that Defendants have engaged in "unfair methods of competition" so as to violate the FTCA.[31]

(b)     **Plaintiffs Have Failed to Allege a Violation of the CFPA**

Plaintiffs likewise have failed to allege a violation of the CFPA.  Plaintiffs assert that Defendants engaged in conduct constituting an "unfair, deceptive, or abusive act or practice," in violation of Sections 5531(a) and 5536(a) of the CFPA.  [*See* FAC ¶¶ 166, 167, 169, 170.]  But a careful review of the FAC reveals that Plaintiffs have failed to state a violation:

---

[29] The FTCA provides:  "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45.  Thus, there are two distinct prongs of the FTCA – the "unfair methods of competition" prong related to the Federal Trade Commission's enforcement of antitrust laws through its Bureau of Competition and the "unfair or deceptive acts or practices" prong related to consumers.  *See, e.g.,* Federal Trade Commission, *A Brief Overview of the Federal Trade Commission's Investigative and Law Enforcement Authority* (July 2008), *available at* https://www.ftc.gov/about-ftc/what-we-do/enforcement-authority.

[30] Plaintiffs also make two claims under the FTCA that Defendants' conduct is "deceptive."  [*See* FAC ¶¶ 177, 178.]  Plaintiffs make identical claims under the CFPA.  [*See* FAC ¶¶ 169, 170.]  Because the CFPA borrowed from the FTCA, the standards for evaluating allegedly "deceptive" conduct are analogous under both statutes.  *See, e.g.,* CFPB Supervision and Examination Manual at 174 n.2 (2d ed. 2012), *available at* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.   As such, for the sake of brevity, the alleged "deceptive" behavior assessed at one time under the CFPA analysis below.

[31] Defendants further preserve the following argument.  The FTCA is inapplicable to the Tribal Defendants in light of the fact that Plaintiffs have sought to sue them in their official capacity – i.e., as officers of and directors of Plain Green – for equitable relief intended to run as a functional matter against Plain Green.  [FAC ¶ 2.]  Plain Green, however, is a not-for-profit tribal corporation created exclusively for the purpose of generating funds for the Chippewa Cree people and, as such, is not subject to the FTCA.  *See* 15 U.S.C. § 45 (empowering the Federal Trade Commission to bring FTCA actions against "corporations"); § 44 (deeming a corporation to include a "company … which is organized to carry on business for its own profit or that of its members").  Because the FTCA does not apply to Plain Green, it cannot be the basis for injunctive relief against Defendants.  *See Garcia*, 268 F.3d at 88.

- ***FAC ¶ 166***: Plaintiffs' allegation that Defendants extended credit without examining the Plaintiffs' ability to repay fails to state a violation of the CFPA, as the Consumer Financial Protection Bureau ("CFPB") imposes no applicable requirement that lenders examine a borrower's ability to repay. This allegation is also contradicted by Plaintiffs' separate allegation that Defendants Rees and Think Finance provided Plain Green with sophisticated underwriting software designed to verify Plaintiffs' ability to repay their loans. [FAC ¶ 117.]

- ***FAC ¶ 167***: Also unavailing is Plaintiffs' allegation that the interest rates imposed in connection with Plaintiffs' loans, *combined with* Plain Green's purported "automatic access" to their bank accounts, violated the CFPA. It is well established that the CFPA does not extend to claims regarding allegedly usurious interest rates, as the CFPB has no authority to "establish a usury limit applicable to an extension of credit."12 U.S.C. § 5517(o); *see also Illinois v. CMK Invs., Inc.*, No. 14 C 2783, 2014 U.S. Dist. LEXIS 169920, at *26 n.5 (N.D. Ill. Dec. 9, 2014) (finding that plaintiff could not bring a usury challenge because the CFPB had no authority in that area). And, as described more fully below, the plain language of the Agreements cited in the FAC demonstrates that Plain Green does not have "automatic" access to a consumer's bank account; as such, this allegation should be disregarded. *See, e.g., Barnum,* 850 F. Supp. at 1232-33 (if "the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint").

- ***FAC ¶¶ 169, 177***: Plaintiffs' claim that "Defendants' representations of the loans as short term emergency loans is deceptive" is likewise contradicted by the Agreements themselves, which demonstrate that Plain Green provided extensive details about the loans, including a detailed loan repayment schedule. *See id.*; Ex. B.

- **_FAC ¶¶ 170, 178_**: Plaintiffs' claim that "Defendants' representation of the loans as legitimate loans to credit rating agencies is deceptive" fails to establish a violation, as this claim alleges that _the credit rating agencies_ – and not the Plaintiffs/consumers – were deceived. A "deceptive" representation is one that "misleads or is likely to mislead _the consumer_." _See_ CFPB Supervision and Examination Manual at 178 (2d ed. 2012) (emphasis added).[32]

Given the foregoing, Plaintiffs have failed to articulate a violation of the CFPA.

### (c)     Plaintiffs Have Failed to Allege a Violation of the EFTA

Plaintiffs claim that Defendants violated the EFTA when, "in connection with offering payday loans to consumers, Defendants [] conditioned the extension of credit on recurring preauthorized electronic fund transfers." [FAC ¶ 187.] However, this allegation is patently untrue. The Agreements afford borrowers the option of authorizing electronic withdrawals _or_ "mail[ing] to us a check or money order as payment for this Loan." _See_ Ex. B. Indeed, to complete the loan application process, the borrower must affirmatively request the option of repaying the loan electronically rather than by postal mail. _See_ Ex. B. Thus, Plaintiffs' allegations that Plain Green "required" the borrowers to agree to electronic transfers, [_see_ FAC ¶¶ 30, 52, 65], are entirely contradicted by the plain text of the Agreement, requiring dismissal of the EFTA claim in its entirety. _See, e.g., Spinelli v. NFL_, 13 Civ. 7398 (RWS), 2015 U.S. Dist. LEXIS 40716, at *117-18 (S.D.N.Y. Mar. 27, 2015) (dismissing plaintiffs' breach of contract claim when plaintiffs' "conclusory allegations as to the terms of the contracts" were "contradicted by the plain language of their own [Agreements]").

---

[32] A practice is "deceptive" if: "(1) The representation, omission, act, or practice misleads or is likely to mislead the consumer; (2) The consumer's interpretation of the representation, omission, act, or practice is reasonable under the circumstances; and (3) The misleading representation, omission, act, or practice is material." CFPB Supervision and Examination Manual at 178 (2d ed. 2012).

**Plaintiffs Have Failed to Allege a Violation of the VCPA**

Plaintiffs assert only bare allegations that do not amount to a cognizable claim under the VCPA.  The VCPA prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce," 9 V.S.A. § 2453(a), and provides a private right of action to consumers who show "either (1) reliance on a deceptive act in contracting for goods or services or (2) damages or injury from an unfair or deceptive act."  *Dernier v. Mortg. Network, Inc.*, 87 A.3d 465, 481 (Vt. 2013) (citing 9 V.S.A. § 2461(b)).  Under Vermont law, if a plaintiff "either fails to allege facts that meet the definitions of an unfair or deceptive act under 9 V.S.A. § 2453 or fails to demonstrate the prerequisites to a private action . . . under 9 V.S.A. § 2461(b), the case is properly dismissed."  *Dernier*, 87 A.3d at 481 (finding that plaintiffs failed to establish the prerequisites for a private action and affirming dismissal of VCPA claim).  Here, the Plaintiffs have wholly failed to meet either of these requirements.

The Plaintiffs allege VCPA violations by stating merely that "Defendants are not licensed lenders in Vermont," that "Defendants "charge interest in excess of the statutory maximum," that "Defendants' lending practices also violate the [VCPA's] bar on deceptive and unfair business practices," in various unspecified ways, that "Defendants have falsely reported the status of consumers' illegal debts…," and that Defendants misrepresented the loans as short-term emergency loans to borrowers and as legitimate loans to credit rating agencies.  [*See* FAC ¶¶ 198, 201-205.]  However, these allegations are insufficient, as Plaintiffs fail to plausibly articulate how either of them relied on these allegedly "deceptive acts" and, for the vast bulk of the purportedly unlawful practices, how they caused Plaintiffs injury.  [*See generally* FAC.][33]

---

[33] For example, even were Plain Green required to be licensed in Vermont to extend loans from the Tribe's Reservation, the FAC contains no allegation that: (i) Plaintiffs were aware of that licensing obligation; (ii) believed Plain Green to be so licensed; and (iii) relied on that licensure in entering into a loan with the company.  Similarly,

(continued...)

Moreover, to the extent the lending practices referenced in the VCPA count mirror those described in the FTCA count, they similarly fail to state a claim. The Vermont Legislature, in enacting the VCPA, instructed courts to interpret the VCPA consistent with the manner in which federal courts construe the FTCA. *See* 9 V.S.A. § 2453(b) ("It is the intent of the Legislature that in construing subsection (a) of this section, the courts of this State will be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States"). As such, the FTCA/VCPA claims rise – and in this case fall – together.

Finally, Plaintiffs' claim that Defendants charged interest in excess of Vermont's "legal rates" similarly fails to establish a violation of Consumer Protection Rule 104.05, [*see* FAC. ¶199], given that the Rule actually approves the collection of interest that is "expressly authorized by the agreement creating the obligation and is legally chargeable to the debtor" regardless of whether it is "legally chargeable under state law." Rule CP 104.05. Here, the loan Agreements expressly detail and authorize the collection of interest, *see* Ex. B, and these loans are entirely legal under Tribal law.

In short, Plaintiffs have failed to "demonstrate the prerequisites to a private action," necessitating dismissal of the VCPA count. *See Dernier*, 87 A.3d at 481.

---

there is no allegation that Plain Green's lack of licensure caused Plaintiffs any injury or damages. Plaintiffs also make no effort to plausibly allege their reliance on the various acts and practices they cite, their materiality to Plaintiffs' decision to obtain loans, *see Jordan v. Nissan N. Am., Inc.*, 176 Vt. 465, 468 (Vt. 2004), or that the acts and practices they cite were the cause of their injuries. *Dernier*, 87 A.3d at 481. For example, the purported use of a "front company to shield the true managers … from liability" [FAC ¶ 205] hardly caused Plaintiffs to accept a loan from Plain Green, or caused them injury.

(e)     **Plaintiffs Have Failed to Allege a Violation of RICO**

Because the "mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) *aff'd sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*, 113 F.3d 1229 (2d Cir. 1997) (alterations omitted).  Here, even if the Court could entertain Plaintiffs' RICO claims for injunctive relief against the Tribal Defendants, which, as laid out at length in section III.A.1.b, it cannot, the Court must dismiss Plaintiffs' RICO claims in their entirety for failure to establish a violation of the statute.  Standing under RICO requires a plaintiff to show: (1) a violation of §1962; (2) an injury to business or property; and (3) that the injury was caused by the violation.  *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001).[34]  Plaintiffs do not establish these basic requirements.

(i)     *Plaintiffs Cannot Demonstrate a Cognizable Injury*

As an initial matter, Plaintiffs are wholly unable to demonstrate that they have suffered a cognizable "injury to business or property" in order to maintain this suit.  Plaintiffs claim that they are experiencing reputational harm resulting from the reporting of their defaulted loans to unspecified credit rating agencies.  [*See* FAC ¶¶ 51, 67 (alleging that their "credit" is being "defamed").]  It is well established, however, that reputational harm does not constitute "an injury to business or property" sufficient to sustain a RICO claim.  Rather, to establish a RICO violation, the "plaintiff must allege injury that is to his property, <u>and not, for example, physical, emotional or reputational harm</u>."  *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560

---

[34] A challenge to Plaintiffs' standing under RICO is properly brought pursuant to Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 12(b)(1).  *See, e.g., Mackin v. Auberger,* 59 F. Supp. 3d 528, 539 (W.D.N.Y. 2014).

(S.D.N.Y. 2014) (emphasis added) (citation, internal quotation marks, and alterations omitted). That is, the plaintiff must allege an "actual, quantifiable injury." *Id.* (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008) (emphasis in original)*, abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008)); *see also, e.g., Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 458 (S.D.N.Y. 2004) (a RICO plaintiff "must allege facts demonstrating both that plaintiff's injury is to his business or property – and not physical, emotional or reputational harm or any economic aspect of such harm – and that plaintiff's injury is proximately caused by the acts constituting the RICO violation"). Further, courts have required a showing of "concrete financial loss" in order to demonstrate an injury under RICO. *See Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08-cv-6150, 2010 U.S. Dist. LEXIS 77775, at *37-41 (S.D.N.Y. Aug. 2, 2010) (citing *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006)). Accordingly, Plaintiffs' inability to quantify any financial loss resulting from the alleged "defamation" of their credit is fatal to their RICO claim.

Additionally, to the extent that Plaintiffs also claim some form of injury in the sense that "if [Plaintiff] pays off the loan, she is likely to never see her funds returned from Defendants because they have claimed and likely will claim tribal immunity," [*see* FAC ¶¶ 50, 66,] this doubly conditional "injury" is hardly concrete and thus cannot support Plaintiffs' RICO cause of action. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769-70 (2d Cir. 1994) (finding a "risk of loss" unripe to support an injury for a RICO claim).

As Plaintiffs have wholly failed to articulate a cognizable injury under RICO, the Court should dismiss Plaintiffs' RICO claims in their entirety.

(ii)     *Plaintiffs Cannot Establish the Required* Mens Rea

Plaintiffs' RICO claims also fall flat because they cannot establish the required *mens rea* as a matter of law. Plaintiffs have sued Rosette, Whitford, and McInerney in their

*official capacities* as officers and directors of Plain Green – a sovereign arm of the Chippewa Cree Tribe. [FAC ¶¶ 6-8.] By suing these individuals in their *official capacities*, Plaintiffs have functionally sued *Plain Green*[35] (and *the Tribe*). *See, e.g., Hoekstra v. City of Arnold*, 2008 U.S. Dist. LEXIS 7465, at *36 (E.D. Mo. Feb. 3, 2009) ("a lawsuit against the individual defendants who are City officials, sued in their official capacities, is properly considered a suit against the city"); *LaFlamboy v. Landek*, 587 F. Supp. 2d 914, 937 (N.D. Ill. 2008) ("official capacity suits are merely a way of pleading an action against a municipality that cannot be held liable under a respondent superior theory"). However, government entities – such as Plain Green and the Tribe – cannot be held liable under RICO because these entities are incapable of forming the requisite criminal intent to violate the statute. *Rogers v. City of New York*, 359 F. App'x 201 (2d Cir. 2009) (affirming dismissal of RICO claim against a city defendant and holding that "there is no municipal liability under RICO"); *Andrade v. Chojnacki*, 65 F. Supp. 2d 432, 449 (W.D. Tex. 1999) ("government entities are not capable of forming the criminal intent necessary to support the predicate RICO offenses").

Because Plain Green cannot form the requisite *mens rea*, Plaintiffs' claims against the Tribal Defendants in their official capacity fail as a matter of law. *See Lathrop v. Juneau & Assocs.*, 220 F.R.D. 330, 335 (S.D. Ill. 2004) ("Because the [city] cannot be held liable under RICO … the suit against the governmental officials in their 'official capacity' also cannot be maintained"); *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998) ("because

---

[35] In doing so, Plaintiffs' RICO theory violates the "distinctiveness" requirement of RICO. Courts interpret the text of section 1962(c), which prohibits any "person employed by or associated from any enterprise" from conducting the affairs of that enterprise through a pattern of racketeering, to mean that a party cannot be both the defendant "person" and the enterprise, but rather must represent two distinct entities. *Bennett v. U.S. Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir. 1985). Designating Plain Green as both the RICO defendant and enterprise is accordingly fatal to Plaintiffs' RICO theory.

the Town cannot be held liable under RICO as a matter of law, neither may the Town employees in their official capacities").[36]

(iii)     *Plaintiffs Have Failed to Plead Predicate Acts*

Even were Plaintiffs to adequately allege that they suffered a cognizable injury or establish that the Tribal Defendants could have acted with the required *mens rea*, Plaintiffs have nevertheless failed to establish any RICO violation.

Section 1962(c) makes it unlawful for a person associated with an enterprise to conduct or participate in the conduct of such enterprise's affairs "through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The RICO statute sets forth a list of acts which constitute a "racketeering activity" under the statute, including violations of 18 U.S.C. §§ 1341, 1343 (mail and wire fraud). 18 U.S.C. § 1961(1)(B). Here, the FAC purports to advance two different theories of §1962(c) liability, one for a pattern of racketeering activity through mail and wire fraud and another for the collection of unlawful debt. Plaintiffs have failed to establish a violation under either theory.

---

[36] And even were the Court to reject the fundamental principle regarding official capacity suits outlined above and instead find that Tribal Defendants Rosette, Whitford, and McInerney could form requisite *mens rea* while being sued in their official capacities, the Plaintiffs' FAC nonetheless fails to adequately plead *mens rea* as required to otherwise sustain a RICO claim. Indeed, Plaintiffs must plead and establish that *each defendant* intended to engage in the conduct with actual knowledge of the illegal activities. *Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 487 (2d Cir. 2001); *236 Cannon Realty, LLC v. Ziss*, No. 02 –CV-6683, 2005 WL 289752, at *5-9 (S.D.N.Y. Feb. 8, 2005). In the RICO section of their FAC, Plaintiffs reference over 70 paragraphs alleging the acts by the Defendants purportedly constituting mail and wire fraud. [FAC ¶ 210.] Nowhere in those over 70 paragraphs do they allege that Rosette, Whitford, and McInerney intended to defraud the Plaintiffs as required by the mail and wire fraud statutes. [*See* FAC ¶¶ 45 – 71, 85, 92, 105, 110, 112, 118 – 131.]

Furthermore, the FAC itself acknowledges that Rosette, Whitford, and McInerney lacked the requisite *mens rea* for the predicate RICO acts. In their RICO section, Plaintiffs allege that "*Defendants Rees and Think Finance* agreed to and did conduct and participate in the conduct of the enterprises affairs through a pattern of racketeering activity and for the unlawful purpose of *intentionally* defrauding Plaintiffs. Defendant Rees and Think Finance agreed with the *predecessors* of Rosette, Whitford, and McInerney, official representatives of Plain Green and the Chippewa Cree Tribe." FAC at ¶ 209 (emphasis added). Here, Plaintiffs make allegations with respect to the other Defendants and the *predecessors* of the Tribal Defendants, but wholly fail to establish the Tribal Defendants' individual *mens rea*.

*Plaintiffs Have Failed to Establish Their Mail and Wire Fraud Theories of Liability*

A valid claim of mail or wire fraud must establish (1) a plan or scheme to defraud; (2) an intent to defraud; (3) reasonable foreseeability that the mail or wires will be used; and (4) actual use of the mail or wires to further the scheme. *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998). Plaintiffs do not properly allege all of the required elements.

(1) *Lack of Specificity*

Plaintiffs' RICO claims against the Tribal Defendants must be dismissed in their entirety as Plaintiffs have failed to state RICO violations with the requisite specificity. As mentioned above, a complaint alleging fraud, such as mail and wire fraud, must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). In order to satisfy Rule 9(b), allegations of the predicate mail and wire fraud should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent. *Novak*, 216 F.3d at 306 (quoting *Shields*, 25 F.3d at 1128).

The FAC fails to satisfy Rule 9(b) as to the "who, what, when, where, and why" of the allegedly fraudulent statements in connection to the wire fraud claims. First, Plaintiffs do not identify *who* spoke the alleged misrepresentations. Many of Plaintiffs' enumerated "misrepresentations" wholly fail to identify an individual [*see, e.g.*, FAC ¶ 106 ("the website also makes a number of misrepresentations")], while the remainder identify parties other than the Tribal Defendants as the ultimate source of the misrepresentation. [*See, e.g.*, FAC ¶¶ 34, 35].

Second, the FAC fails to satisfy Rule 9(b)'s "*when*" requirement. As to the alleged wire fraud, the FAC merely states that the misrepresentations "started in or around March 2001 and [] continued to present. Plain Green has used the above-described ACH system and website for over four years." [FAC ¶ 113.] This vague allegation does not suffice.

Numerous courts in this Circuit have found allegations that the purported misrepresentations occurred within a time period of *months* too vague to meet 9(b)'s specificity requirement. *See Skylon Corp. v. Guilford Mills, Inc.*, 93-cv-5581 (LAP), 1997 WL 88894, at *2 (S.D.N.Y. Mar. 3, 1997) ("Although plaintiff outlines a four-month window during which all of the misrepresentations occurred, this does not satisfy the pleading standard of Rule 9(b)."); *Sendar Co. v. Megaware Inc.*, 705 F. Supp. 159, 161 (S.D.N.Y. 1989) (dismissing a fraud claim for lack of particularity where plaintiff "merely alleg[ed] that statements were made some time during a two month period."); *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 641 (E.D.N.Y. 2003) (dismissing a fraud claim where amended complaint alleged that fraudulent statements were made between May 1997 and August 1997, in part, because a "vague four-month period of time is insufficient to satisfy the pleading standards of Rule 9(b)"). If a time period of months is insufficient to meet the particularity standards of Rule 9(b), it is unquestionable that broad reference to a time period of four years is inadequate.

Finally, the FAC wholly fails to establish the Tribal Defendants' liability under a mail fraud theory. The FAC states merely that the Defendants Rees and Think Finance "us[ed] the mail to collect payments and communicat[ed] with other parts of the Plain Green enterprise" and that the Tribal Defendants acted as "intermediaries . . . to initiate . . . mailings." [FAC ¶ 100 – 101.][37] The FAC plainly fails to allege that the Tribal Defendants had any affirmative role in

---

[37] Furthermore, the FAC fails to state how the mails were used to further the scheme to defraud. *See In re Sumitomo Copper Litig.*, 995 F. Supp. at 455 (noting that a plaintiff must allege how the mails were used to further the scheme to defraud in order to plead a mail fraud claim). Although the FAC alleges that the mails were used to "collect payments," it is clear from Plaintiffs' own Complaint that payments were collected through the ACH system; indeed, Plaintiffs' entire EFTA claim is predicated on allegations that the named-Plaintiffs made their payments via the ACH system rather than through the mail. [*See* FAC ¶¶ 181-195]. Finally, because the mails were used only to "communicat[e] with other part of the Plain Green enterprise" and thus not in furtherance of the alleged scheme to defraud, the mail fraud theory of RICO should be dismissed.

the purported mail fraud scheme, and further fails to establish ***what*** the communications said, ***when*** they took place, and ***why*** they were fraudulent.

Because the FAC fails to meet the heightened requirements of Rule 9(b), Plaintiffs' mail and wire fraud claims against the Tribal Defendants must be dismissed.

### (2) *Lack of Materiality*

Plaintiff's mail and wire fraud theories fail for the additional reason that the purported misrepresentations were immaterial as a matter of law. In articulating the alleged scheme to defraud, a plaintiff must establish the materiality of the purported misrepresentations. *Neder v. United States*, 527 U.S. 1, 25 (1999); *United States v. Autouori*, 212 F.3d 105, 115 (2d Cir. 2000). "To be material, the information withheld either must be of some independent value or must bear on the ultimate value of the transaction." *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994). Representations comparing the loan to other loans or fees [FAC ¶¶ 106 – 107], about whether the loans were for emergency purposes [FAC ¶ 34], who the lender is [FAC ¶ 124], or the governing law [FAC ¶¶ 125 – 126] do not "bear on the ultimate value of the transaction." *See Mittelstaedt*, 31 F.3d at 1217. These immaterial representations therefore cannot form the basis of a mail or wire fraud theory.

### (iv) *Plaintiffs Have Failed to Establish An Unlawful Debt Theory*

Plaintiff's final RICO theory, that Defendants engaged in the collection of unlawful debt, also fails as a matter of law. Section 1961(6) defines "unlawful debt" to include debts that are (i) unenforceable due to state or federal laws prohibiting usury, which were (ii) incurred in connection 'with the business of lending money at a "usurious" rate defined as twice the applicable enforceable rate. Plaintiffs argue that the loans taken out with Plain Green constitute "unlawful debt" under § 1961(6), in part, because "[t]he interest rates on the debt that

they incurred exceed the Vermont limit under 9 V.S.A. § 41(a)" and the interest charged "was more than twice the interest rate allowed under Vermont law. [FAC ¶ 145; *see also* FAC ¶ 146 (listing other states' usury limits).] However, because the Agreements provide that the governing law is the law of the Tribe, which imposes no interest rate cap, Plaintiffs' focus on Vermont and other state law is inappropriate.

Further, Vermont and other state usury laws cannot be enforced against the Defendants, as doing so would amount to an improper state regulation of on-reservation activity in contravention of well-established preemption and infringement principles. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980); *Williams*, 358 U.S. 217. Here, Plaintiffs' action arises out of their loan Agreements, all of which were formed on the Tribe's Reservation. It is hornbook law that the "place of contracting is the place where occurred the last act necessary . . . to give the contract binding effect." Restatement (Second) of Conflict of Laws, § 188 cmt. e (1971); 2 Williston on Contracts § 6:62 (4th ed.) ("[T]he place of the contract is the place where the last act necessary to the completion of the contract was done."). In signing their Agreements, the Plaintiffs acknowledged that their loans formed on the Reservation, as Plain Green "do[es] not have a presence in Montana or any other state of the United States of America." *See* Ex. B. *Cf. Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299 (1978) (rejecting the argument that the location of the bank should depend on the location of the borrower in considering whether a national bank could charge its out-of-state customers an interest rate permitted by the bank's home state, but higher than that sanctioned by the borrowers' state, for "[i]f the location of the bank were to depend on the whereabouts of each … transaction, the meaning of the term 'located' would be so stretched as to throw into confusion the complex system of modern interstate banking," noting that the Minnesota borrowers "were always free to

visit Nebraska and receive loans in that State," and ultimately finding the bank to be "located" in

Nebraska, where it makes its credit and finance charge assessments, such that Nebraska's usury

law should govern). Thus, application of the state usury laws to this on-reservation matter would

be an affront to the "tradition of Indian sovereignty over the reservation" that is "reflected and

encouraged in a number of congressional enactments demonstrating a firm federal policy of

promoting tribal self-sufficiency and economic development." *See Bracker*, 448 U.S. at 143.[38]

Because only Chippewa Cree law applies to the loans, and because Cree law

contains no limit on interest rates, Plaintiffs' unlawful debt RICO theory fails as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully urge the Court to dismiss the

Plaintiffs' First Amended Complaint in its entirety or, in the alternative, to compel arbitration.

Respectfully Submitted,

September 22, 2015

/s/ Andre D. Bouffard
Andre D. Bouffard, Esq.                     Jay A. Dubow (PA No. 41741) (*pro hac vice*)
Downs Rachlin Martin PLLC                   Richard J. Zack (PA No. 77142) (*pro hac vice*)
199 Main Street                             PEPPER HAMILTON LLP
P.O. Box 190                                3000 Two Logan Square
Burlington, VT 05402-0190                   Eighteenth & Arch Streets
802.863.2375                                Philadelphia, PA 19103-2799
                                            215.981.4000
*and*                                       *Attorneys for Defendants Rosette, McInerney, and Whitford*

---

[38] In a similar vein, the "Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642-643 (1982)). *See also, e.g., Eric M. Berman, P.C. v. City of N.Y.*, 895 F. Supp. 2d 453, 474 (E.D.N.Y. 2012) (explaining that "a statute will be invalid per se if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question") (quotation marks and citation omitted). Relevant here, "if the transaction is consummated out of state, a state may not regulate it without violating the dormant Commerce Clause." *Id.* at 483. Accordingly, application of the state usury laws to this matter – which arises from purely on-reservation conduct – would contravene long-established preemption / infringement principles and violate the Commerce Clause. Defendants further preserve this argument as it applies to Plaintiffs' state law claims, neither of which may be enforced against Defendants in light of federal law prohibiting state regulation of on-reservation activity.

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF VERMONT**

| | |
|---|---|
| JESSICA GINGRAS, *et. al*<br><br>        Plaintiffs,<br><br>        v.<br><br>JOEL ROSETTE, TED WHITFORD, and TIM McINERNEY, THINK FINANCE, INC., TC LOAN SERVICE, LLC, KENNETH E. REES, TC DECISION SCIENCES, LLC, TAILWIND MARKETING, LLC, SEQUOIA CAPITAL OPERATIONS, LLC and TECHNOLOGY CROSSOVER VENTURES<br><br>        Defendants. | Civil Action No.:  15-101 |

## CERTIFICATE OF SERVICE

I, Andre D. Bouffard, hereby certify that on September 22, 2015, I electronically

filed with the Clerk of the Court a true and correct copy of the foregoing "Tribal Defendants'

Motion to Dismiss Without Leave To Amend, Or, In The Alternative, To Compel Arbitration,

and Memorandum of Law In Support of Their Motion," along with accompanying exhibits and

proposed order, using the CM/ECF system.  The CM/ECF system will provide service of such

filing via Notice of Electronic Filing (NEF) to the following NEF parties:

- Matthew B. Byrne, Esq., Gravel & Shea, PC (*for Plaintiffs*)

- James R. McGuire, Esq. and Lauren L. Wroblewski, Esq., Morrison and Foerster LLP;

  Ritchie E. Berger, Esq., Dinse, Knapp & McAndrew, P.C. (*for Defendants Think Finance,

  TC Loan Service, LLC, TC Decision Sciences, LLC, Tailwind Marketing, LLC)*

- Jonathan P. Boughrum, Esq. and Richard L. Scheff, Esq., Montgomery McCracken Walker

  & Rhoads; Stephen D. Ellis, Esq., Ellis Boxer & Blake PLLC (for *Defendant Kenneth Rees*),

- Daniel M. Glosband, Esq. Goodwin Procter LLC; Richard C. Carroll, Esq., Phillips, Dunn, Shiver & Carroll, P.C. *(for Defendant Sequoia Capital Operations, LLC)*, and,

- Justin E. Kolber, Esq., State of Vermont (*Amicus*)

Respectfully Submitted,

Dated: September 22, 2015

*/s/ Andre D. Bouffard*
Andre D. Bouffard , Esq.
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
802.863.2375
*and*
Jay A. Dubow (PA No. 41741) (*pro hac vice*)
Richard J. Zack (PA No. 77142) (*pro hac vice*)
Matthew B. Homberger (PA No. 317064) (*pro hac vice*)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
215.981.4000
*Attorneys for Defendants Rosette, McInerney, and Whitford.*